Terry E. Welch (5819)
Bentley J. Tolk (6665)
Michael S. Wilde (14366)
**PARR BROWN GEE & LOVELESS**
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Telephone: (801) 532-7840
Facsimile: (801) 532-7750
twelch@parrbrown.com
btolk@parrbrown.com
mwilde@parrbrown.com

*Attorneys for Plaintiff Millrock Investment Fund 1, LLC*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| MILLROCK INVESTMENT FUND 1, LLC, <br><br> Plaintiff, <br><br> v. <br><br> HEALTHCARE SOLUTIONS MANAGEMENT GROUP, INC.; HEALTHCARE SOLUTIONS HOLDINGS INC.; LANDES CAPITAL MANAGEMENT, LLC; LANDES AND COMPAGNIE TRUST PRIVE KB; JOSHUA CONSTANTIN; and JUSTIN SMITH, <br><br> Defendants. | **COMPLAINT AND JURY DEMAND** <br><br> Civil No. 2:23-cv-000157 <br><br> Judge |

Plaintiff Millrock Investment Fund 1, LLC, through its undersigned counsel of record, hereby brings this Complaint against Defendants Healthcare Solutions Management Group, Inc., Healthcare Solutions Holdings Inc., Landes Capital Management, LLC, Landes and

Compagnie Trust Prive KB, Joshua Constantin, and Justin Smith (sometimes collectively referred to hereinafter as "Defendants"), and alleges and states as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Millrock Investment Fund 1, LLC ("Millrock") is a Utah limited liability company with its principal place of business in Salt Lake City, Utah.

2. Defendant Healthcare Solutions Management Group, Inc. ("HSMG") is a Delaware corporation with its principal place of business in Glen Cove, New York.

3. Upon information and belief, Defendant Healthcare Solutions Holdings Inc. ("HSH") is a Delaware Corporation with its principal place of business in Glen Cove, New York, and is a wholly owned subsidiary of HSMG.

4. Upon information and belief, Defendant Joshua Constantin ("Constantin") is a resident of Louisiana.

5. Upon information and belief, Defendant Justin Smith ("Smith") is a resident of New York.

6. Landes Capital Management, LLC is a Wyoming limited liability company. Upon information and belief, Smith is the sole member of this entity.

7. Upon information and belief, Landes and Compagnie Trust Prive KB is a Wyoming partnership of unknown type. Upon information and belief, Smith controls this partnership and/or has an ownership interest therein.

8. This Court has jurisdiction under 28 U.S.C. § 1332(a)(1), because the matter in controversy exceeds $75,000 and the parties are citizens of different states.

9. Venue is proper under 28 U.S.C. § 1391, including § 1391(b)(2), because a

2

substantial part of the events or omissions giving rise to the claims occurred in this judicial district, and a substantial part of the property that is the subject of this action is situated in this judicial district.

## GENERAL ALLEGATIONS

10. On April 25, 2013, a federal court in New York found Constantin and his related brokerage firm jointly and severally liable for $2.49 million, and Constantin and his related holding company jointly and severally liable for over $760,000. The court issued an opinion finding Constantin liable for fraud; noted that Constantin and his colleague had made a "litany of misrepresentations" to clients; found that Constantin had "diverted" investor funds "to his own purposes"; and found that Constantin had "provided clients with misleading documents to cover up the fraudulent nature of [his] investment scheme."

11. Since November 27, 2013, Constantin has been indefinitely barred by the United States Securities and Exchange Commission from acting as a broker or investment adviser, or from associating with any broker, dealer, investment adviser, municipal securities dealer, municipal advisor or transfer agent.

12. Millrock is an investment and development fund that buys and sells commercial properties and then divides and sells its fee simple title to various tenant-in-common owners (the "TIC Owners").

13. On or about July 29, 2018, Jameson, LLC d/b/a American Development Partners ("ADP") entered into a multi-unit development agreement with HSMG and Advance Care Medical, Inc. to develop ambulatory surgical centers and advance care medical centers throughout the country.

14. ADP and HSMG would select the locations for the ACM Centers and the Surgical Centers. HSMG or its affiliated entity would then sign a long-term lease with ADP or ADP's affiliated entity, after which Millrock would sell the package to the TIC Owners.

15. Millrock, through its association with ADP, purchased various commercial properties located in Naperville, Illinois; Romeoville, Illinois; Pine Bluff, Arkansas; Blytheville, Arkansas; Alpharetta, Georgia; and Kennesaw, Georgia (the "ACM Centers").

16. HSMG or its subsidiaries, as the lessee, entered into long-term leases to operate the ACM Centers as urgent care centers under HSMG's brand, "Advance Care Medical."

17. Millrock, through its association with ADP, also purchased commercial properties located in Draper, Utah and Keller, Texas. Millrock and ADP entered into agreements, on or about November 20, 2020 (for Draper) and on or about September 24, 2021 (for Keller), to construct two surgical centers for HSMG or its subsidiaries to lease and operate at the Draper, Utah location (the "Draper Project") and at the Keller, Texas location (the "Keller Project") (collectively, the "Surgical Centers").

18. HSMG or its affiliated entities, as the lessee, signed the leases for the Surgical Centers. When one of HSMG's affiliated entities (as opposed to HSMG) signed the lease for one of the ACM Centers or the Surgical Centers, HSMG acted as the guarantor of its affiliated entity's obligations under the lease.

19. HSMG or its affiliated entities entered into lease agreements for properties located at 3327 S. Division Street, Blytheville, Arkansas (the "Blytheville Lease"), 13775 South Pony Express Road, Draper, Utah (the "Draper Lease") and 1220 Keller Parkway, Keller, Texas (the "Keller Lease"), among other leases.

4885-8807-8676 v.1

20. Specifically, the Draper Lease is set forth in an Ambulatory Surgery Center Lease Agreement between ADP, as the landlord, and SARC by HSI – DRAPER, UT Inc., as the tenant, entered into on or about November 12, 2020. Smith signed the Draper Lease on behalf of SARC by HSI – DRAPER, UT Inc.

21. While Smith purportedly entered into the Draper Lease on behalf of SARC by HSI – DRAPER, UT Inc., upon information and belief, no such entity exists.

22. HSMG was the guarantor for the Draper Lease, and Smith also signed the Guaranty on behalf of HSMG.

23. Under the Draper Lease, SARC by HSI – DRAPER, UT Inc. was obligated to make certain rent payments to ADP or to ADP's assignor or successor.

24. The Draper Lease contains an attorneys' fees provision.

25. On or about November 20, 2020, ADP executed a written assignment of all of its rights, interests, and obligations in the Draper Lease to SARC Draper, LLC.

26. On or about January 22, 2021, SARC Draper, LLC assigned all of its rights, interests, and obligations in the Draper Lease to Millrock.

27. On or about April 6, 2022, Millrock assigned all of its rights, title, and interest in the Draper Lease to certain of the TIC Owners.

28. The Keller Lease is set forth in an Ambulatory Surgery Center Lease Agreement between Millrock, as the landlord, and SARC by HSI – KELLER, TX Inc., as the tenant, entered into as of November 18, 2020. Smith signed the Keller Lease on behalf of SARC by HSI – KELLER, TX Inc.

29. While Smith purportedly entered into the Keller Lease on behalf of SARC by HSI

– KELLER, TX Inc., upon information and belief, no such entity exists.

30. HSMG was the guarantor for the Keller Lease, and Smith also signed the Guaranty on behalf of HSMG.

31. Under the Keller Lease, SARC by HSI – KELLER, TX Inc. was obligated to make certain rent payments to Millrock or to Millrock's assignor or successor.

32. The Keller Lease contains an attorneys' fees provision.

33. From on or about November 19-20, 2020, Millrock assigned its rights and interest in the Keller Lease (and certain associated purchase agreement rights in the Keller Project) to certain of the TIC Owners.

34. In connection with construction of the Surgical Centers, Millrock was required to pay ADP $2.55 million for the Draper Project and $2.55 million for the Keller Project as an equipment allowance (collectively the "Equipment Allowance") to equip each Surgical Center, and ADP was then required to transfer the Equipment Allowance to HSMG, which HSMG was then required to use to purchase the necessary equipment for each Surgical Center. ADP would submit draw requests for the Equipment Allowance at various points throughout the development process, and ADP would immediately transfer those draws to HSMG.

35. Millrock, ADP and HSMG each knew and understood that the Equipment Allowance could only be used to purchase the equipment that would be needed for the Draper and Keller Surgical Centers, and that the Equipment Allowance was required to be itemized as FF&E (furniture, fixtures, and equipment).

36. Millrock paid ADP a total of at least $4,642,000 in draws for the Equipment Allowance, then ADP immediately transferred each of those draws directly to HSMG.

4885-8807-8676 v.1

37. After becoming suspicious of HSMG, Constantin and Smith's business activities and of how they were using the Equipment Allowance, Millrock withheld the last equipment draw for both the Draper Project and the Keller Project.

38. The Surgical Centers never opened and the Keller Project never received a certificate of occupancy. Although the Keller, Texas project was almost completed, HSMG failed to provide the medical equipment specifications to the contractor, even though the contractor had spent numerous months requesting the equipment specifications from HSMG. With regard to the Draper, Utah project, Constantin, Smith and HSMG came up with various excuses for not completing the project.

39. On or about August 5, 2022, and in light of HSMG's failure to comply with its lease obligations, Millrock and HSMG entered into a Loan Agreement and Promissory Note (the "Millrock/HSMG Agreement").

40. Smith executed the Millrock/HSMG Agreement on behalf of HSMG.

41. The Millrock/HSMG Agreement states that Millrock and HSMG contemplated securitizing the Draper Lease, the Keller Lease, and the other leases at issue "in the event of a default through certain bonds" that had been issued or would be issued by Lloyd's of London (the "Bonds").

42. When HSMG failed to pay its portion of the rent obligations under the Keller Lease, Millrock had paid HSMG's portion of the rent obligations starting around December 2021.

43. As set forth above, Millrock or its affiliate has assigned its interests in the Draper Lease and the Keller Lease to approximately 70 TIC Owners.

44. Each of the TIC Owners has contracted with CAMS Realty, which is located in Pleasant Grove, Utah, to act as property manager and/or lease administrator for the Draper Lease and the Keller Lease.

45. HSMG incurred certain late fees or other penalties under some of the Leases, and those late fees or penalties were due and owing to the TIC Owners. As a result, CAMS Realty sent a Revised Notice of Lease Commencement letter and Commencement Date Agreement to HSMG acknowledging a July 19, 2022 lease commencement date on the Draper Lease with prorated rent of $43,387.57 due on the Lease, along with late fees of $2,169.38 and interest penalties of $683.35.

46. The Millrock/HSMG Agreement contemplated that through the Agreement, Millrock would provide HSMG with cash flow relief and assist HSMG with its obligations under the Leases.

47. Pursuant to the Millrock/HSMG Agreement, Millrock loaned HSMG the principal amount of $350,000.

48. The term of the loan to HSMG under the Millrock/HSMG Agreement began on August 5, 2022 and was to end on December 1, 2024.

49. Under the Millrock/HSMG Agreement, HSMG's loan repayment was to begin on November 1, 2022 and to continue on the first day of each month thereafter for a total of twenty-four months.

50. Pursuant to the Millrock/HSMG Agreement, HSMG also agreed that within ten days of August 5, 2022, it would cause the Leases to be secured by the Bonds.

51. HSMG, Constantin and Smith, however, never took action to secure the bonds.

52. The parties also agreed in the Millrock/HSMG Agreement that HSMG would be solely responsible for any payments due under the Keller Lease as of October 1, 2022.

53. Under the Millrock/HSMG Agreement, Millrock and HSMG agreed that if any obligation under the Agreement were not timely met, the remaining unpaid principal balance and interest would become due immediately at Millrock's option. Thus, if HSMG were to fail to make any payment or to perform any obligation under the Millrock/HSMG Agreement, the Promissory Note under the Agreement and any other obligations of HSMG would become due immediately without demand or notice.

54. The Millrock/HSMG Agreement contains an attorney fees provision whereby if any obligation under the Agreement "is not timely fulfilled, the breaching party promises to pay all costs associated with said breach, including reasonable attorney fees to the prevailing party."

55. The Millrock/HSMG Agreement contains a provision stating that it "shall be construed in accordance with the laws of the State of Utah," and that "[a]ny dispute arising hereunder may only be brought within the State of Utah."

56. In or about September 2022, HSMG or its subsidiaries stopped making lease payments under each of their lease agreements at the ACM Centers and the Surgical Centers.

57. On November 30, 2022, Kevin Long (the manager of the managing member of Millrock, and the manager of Millcreek) and Brent Smith (a Millcreek executive) traveled to Chicago, Illinois to inspect the Naperville and Romeoville ACM Centers.

58. On the morning of November 30, 2022, Mr. Long and Brent Smith had a conference call (the "Call") with Manny Butera of ADP and with Constantin of HSMG to discuss HSMG's late rents across all the properties. During the Call, the focus turned to the

4885-8807-8676 v.1

Draper Lease and to who the lessee was—HSMG or a subsidiary company. Mr. Long expressed his opinion to Constantin that HSMG was either the lessee or a guarantor but was equally obligated and liable regardless. It became apparent to Mr. Long during the Call that Constantin was seeking to negotiate free rent for a year for each of the Surgical Centers. Mr. Long pushed back and indicated that the TIC Owners would not be inclined to give free rent and that they were more likely to pursue the corporate guarantee. In response, Constantin stated the following, whether precisely or in effect: "That has not kicked in yet. You need to tell the owners they need to work with me or I will empty the corporate shell and they will have nothing to come after. This is what I do, I am very good at it."

59. During the Call, Mr. Long and Brent Smith brought up the Equipment Allowance associated with the Draper Surgical Center and discussed that Millcreek would be filing a UCC-1 against the equipment that had been purchased with the Equipment Allowance. In response, Constantin stated that he would do whatever it took to make sure that HSMG's assets, including equipment, were impossible to get to if Millrock intended to file UCC-1 filings on any equipment purchased with the Equipment Allowance. Constantin further stated during the Call that HSMG's single purpose subsidiary entities were set up in such a way as to make it very difficult to recover assets.

60. During a meeting with the TIC Owners about the Draper Surgical Center (the "Draper Meeting") during December 2022, Constantin falsely claimed that the Equipment Allowance was paid to him as a "development fee" or "project development income" that Constantin could use as he sees fit. He also stated, again falsely, that any equipment purchased with the Equipment Allowance belongs to HSMG. Constantin further represented during the

10

Draper Meeting that SARC-Draper, and not HSMG, owes money to the TIC Owners. He also represented that HSMG is a minority investor in SARC-Draper.

61. During a meeting with the TIC Owners about the Keller Surgical Center (the "Keller Meeting") during December of 2022, Constantin implied that HSH possesses and controls the Equipment Allowance as "project development income" that it can use as it sees fit. Constantin also represented that any equipment purchased with the Equipment Allowance belongs to Constantin and/or one of the entities that Constantin controls. Constantin further implied during the Keller meeting that Equipment Allowance money was pooled with money from approximately forty other projects in a general strategic reserve account containing over $80M in cash or cash equivalents.

62. On December 14, 2022, Millrock's attorney mailed a Notice of Default and Acceleration of Debt (the "Notice of Default") to HSMG via Certified Mail.

63. The Notice of Default stated that HSMG had defaulted on the following obligations under the Millrock/HSMG Agreement: (1) obtaining the Bonds; (2) executing a Commencement Date Agreement on the Draper Lease; (3) making lease payments on the Keller Lease on and after October 1, 2022; (4) reimbursing Millrock for certain rents and other payments made on behalf of HSMG (or a related entity) relating to the Blytheville Lease before November 1, 2022; and (5) making loan payments under the Millrock/HSMG Agreement's amortization schedule.

64. Pursuant to the Notice of Default, Millrock exercised its right to accelerate the debt and demanded immediate payment of all unpaid principal and interest.

65. The Notice of Default stated that as of December 14, 2022, (1) the total

outstanding principal and interest due under the loan memorialized in the Millrock/HSMG Agreement was $329,820.13, with a per diem rate of $53.30; (2) the total outstanding balance and interest due under the Blytheville Lease was $559,094.13, with a per diem rate of $151.43; and (3) the combined total of those amounts was $888,914.26.

66. The Notice of Default sent to HSMG's address in Glen Cove, NY was returned as "NOT DELIVERABLE AS ADDRESSSED – UNABLE TO FORWARD."

67. According to news reports from December 2022 and January 2023, employees of Advance Care Medical (HSMG's brand) in Clarksville, TN and Chattanooga, TN have reported that Advance Care Medical failed to pay them their wages for a period of months.

68. Upon information and belief, HSMG has defaulted on every operating lease in its portfolio. This number approaches 15 properties. Multiple owners will be bringing claims against the company. Monetary damages being sought under these actions could exceed $5,000,000.

69. Upon information and belief, there are at least four ACM centers that were built for HSMG but never opened. In each of these cases the developer paid HSMG a $500,000 Equipment allowance. In each of these cases the equipment was never delivered to the property. HSMG has defaulted on each of these leases.

70. HSMG is a publicly-traded company subject to SEC reporting requirements.

71. On or around February 14, 2023, HSMG filed a Form 8-K with the SEC indicating that Smith was removed as a member of the board effective immediately. As part of Smith's separation with the company, HSMG agreed to pay Landes Capital Management, LLC and Landes and Compagnie Trust Prive KB $93,933,345.48 in exchange for 1 million shares of HSMG.

72.     Based on HSMG's most recent filing disclosing the same, the company had 92,076,638 shares outstanding, $659,194 in cash, $93,129,332 in total assets, and $14,484,751 in total liabilities.

73.     Landes Capital Management, LLC was named as a defendant in a lawsuit styled Commodity Futures Trading Commission v. Financial Tree et al., case no. 2:20-cv-01184 in the United States District Court for the Eastern District of California. In this action, Financial Tree was found liable on claims of Commodity Option Fraud in Violation of 7 U.S.C. § 6c(b), Forex Fraud in violation of 7 U.S.C. § 6(b)(2)(A)-(C), among other claims. In this same action, Landes Capital Management, LLC was found liable on a claim of disgorgement for having received ill-gotten funds for which Landes did not provide legitimate services and to which Landes did not have a legitimate claim.

## COUNT I – BREACH OF CONTRACT

74.     Plaintiff incorporates by reference the preceding allegations of the Complaint.

75.     Plaintiff and HSMG entered into the Millrock/HSMG Agreement on August 5, 2022.

76.     As set forth in the Notice of Default, HSMG breached the Millrock/HSMG Agreement by failing to do the following: (1) obtain the Bonds; (2) execute a Commencement Date Agreement on the Draper Lease; (3) make lease payments on the Keller Lease on and after October 1, 2022; (4) reimburse Millrock for certain rents and other payments made on behalf of HSMG (or a related entity) relating to the Blytheville Lease before November 1, 2022; and (5) make loan payments under the Millrock/HSMG Agreement's amortization schedule.

77.     Plaintiff performed all of its obligations under the Millrock/HSMG Agreement.

78. HSMG's breaches have caused Plaintiff damages in an amount to be proved at trial.

## COUNT II – IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

79. Plaintiff incorporates by reference the preceding allegations of the Complaint.

80. Plaintiff and HSMG entered into the Millrock/HSMG Agreement on August 5, 2022.

81. As part of this agreement, each promised not to intentionally do anything to injure the other party's right to receive the benefits of the contract.

82. As described above, HSMG breached this implied covenant by: (1) repeatedly taking actions to prevent Plaintiff from realizing its expected benefits from the Millrock/HSMG Agreement; (2) when pressed on HSMG's liability on the Draper and Keller Leases, threatening to empty the corporate shell; (3) when confronted with the possibility of a UCC filing on equipment purchased with the Equipment Allowance, threatening to make the funds unrecoverable through single purpose subsidiary entities; and (4) in apparent financial distress, apparently transferring all of its assets and none of its liabilities – to entities owned and/or controlled by insider Smith – in exchange for around 1% of its outstanding shares.

83. HSMG's breaches have caused Plaintiff damages in an amount to be proved at trial.

## COUNT III – CONVERSION

84. Plaintiff incorporates by reference the preceding allegations of the Complaint.

85. Plaintiffs contracted with ADP for the development/construction of the Surgical Centers.

4885-8807-8676 v.1

86. The contracts for construction/development of the Surgical Centers provided for $2,550,000 worth of furniture, fixtures and equipment for each Surgical Center.

87. Plaintiff paid $4,642,000 in draws specifically identified, and to be used exclusively, for furniture, fixtures and equipment.

88. Defendants received the $4,642,000 intended to be used exclusively for furniture, fixtures and equipment.

89. Defendants did not purchase equipment with those funds (the Equipment Allowance), but have instead characterized them as income. Defendants have communicated that they may do whatever they want with the Equipment Allowance funds.

90. Defendants' receipt and retention of the funds is wrongful.

91. Plaintiff is therefore entitled to return of the funds or an equivalent judgment.

## COUNT IV – UNJUST ENRICHMENT

92. Plaintiff incorporates by reference the preceding allegations of the Complaint.

93. Plaintiff conferred a benefit on Defendants in the form of the $4,642,000 in Equipment Allowance draws that were intended to be used to purchase equipment for the Surgical Centers.

94. Defendant HSMG received the funds and has acknowledged the same.

95. Although the funds were paid for the express purpose of purchasing equipment for the Surgical Centers, Defendants have denied the same; have not purchased equipment with the funds; and have stated that they may do as they wish with the funds.

96. Retention of the funds under these circumstances is wrongful. Plaintiff is therefore entitled to return of the funds or an equivalent judgment.

4885-8807-8676 v.1

## COUNT V – VOIDABLE TRANSFER

97. Plaintiff incorporates by reference the preceding allegations of the Complaint.

98. On or around February 9, 2023, HSMG transferred $93,933,345.48 to Landes Capital Management, LLC and Landes and Compagnie Trust Prive KB in exchange for 1 million shares of HSMG.

99. The transfer was made with actual intent to hinder, delay, or defraud a creditor.

100. The transfer was to Smith, an insider of HSMG.

101. Before the transfer was made, HSMG had been threatened with suit.

102. The transfer was of substantially all of HSMG's assets.

103. Upon information and belief, Landes Capital Management, LLC and Landes and Compagnie Trust Prive KB have or intend to abscond with and/or remove the assets.

104. The transfer was made without reasonably equivalent value of the asset transferred.

105. Upon information and belief, HSMG is insolvent, and was so at the time of the transfer.

106. HSMG's payment of $93,933,345.48 is therefore a voidable transfer, and Plaintiff is entitled to void the transfer, and/or attach no less than $4,642,000 of the funds to satisfy Plaintiff's claims.

## COUNT VI – ALTER EGO

107. Plaintiff incorporates by reference the preceding allegations of the Complaint.

108. Upon information and belief, Smith is the sole member of Landes Capital Management, LLC ("Landes").

109. Upon information and belief, Landes and Compagnie Trust Prive KB are controlled by Smith and/or he has an ownership interest therein.

110. In HSMG's last disclosed report, Smith is listed as a beneficial owner even though the underlying shares appear to be legally owned by Landes and Compagnie Trust Prive KB.

111. With respect to HSMG's last disclosed report, Smith is indicated as having "voting and dispositive control" of the shares held by Landes and Compagnie Trust Prive KB.

112. As part of Smith's separation as a board member and CEO of HSMG, Smith and HSH entered into a separation agreement wherein the sum of $93,933,345.48 was transferred to Landes Capital Management, LLC and Landes and Compagnie Trust Prive KB.

113. Upon information and belief, Landes Capital Management, LLC and Landes and Compagnie Trust Prive KB have failed to observe corporate formalities, lack other officers or directors, are undercapitalized, and lack corporate records.

114. Smith has used Landes Capital Management, LLC and Landes and Compagnie Trust Prive KB as a façade for his personal operations, to siphon funds to himself, and/or to promote fraud or injustice by siphoning funds away from HSMG to avoid its obligations under the leases and contracts detailed above.

115. As such, Landes Capital Management, LLC and Landes and Compagnie Trust Prive KB are the alter egos of Smith, and the Court should disregard the corporate or partnership structures of these entities. The Court should also rule that Smith is liable for the conduct, actions, liabilities, and any judgments awarded herein against Landes Capital Management, LLC and Landes and Compagnie Trust Prive KB.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff requests judgment against Defendants as follows:

A. For the imposition of a constructive trust on the $4,642,000 paid by Millrock and received by Defendants for the Equipment Allowance funds;

B. In the alternative, that judgment be entered against Defendants in the amount of $4,642,000 for the Equipment Allowance funds;

C. For a temporary restraining order and preliminary injunction requiring Defendants to pay the Equipment Allowance funds into the Court pending final adjudication of right and title to the funds;

D. For a permanent injunction against Defendants from transferring or disposing of the Equipment Allowance funds;

E. For a pre-judgment writ of attachment entitling Plaintiff to seize money from Defendants in the amount of the Equipment Allowance funds;

F. For avoidance of the transfer to Landes Capital Management, LLC and Landes and Compagnie Trust Prive KB;

G. For a finding that Landes Capital Management, LLC and Landes and Compagnie Trust Prive KB are the alter egos of Smith and disregarding the corporate separateness of these entities, and that Smith is liable for the conduct, actions, liabilities, and any judgments awarded herein against Landes Capital Management, LLC and Landes and Compagnie Trust Prive KB.

H. For an order appointing a receiver pursuant to Rule 66;

I. For an order appointing a receiver pursuant to Utah Code Ann. § 78B-21-101 et seq.;

J. For an order appointing a receiver pursuant to Utah Code Ann. § 25-6-303(1)(c)(ii);

K. For an award of damages in an amount to be determined at trial;

L. For attorney's fees;

M. For costs; and

N. For such other relief as the Court may deem necessary and appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated this 2nd day of March, 2023.

        PARR BROWN GEE & LOVELESS

        By: /s/ Bentley J. Tolk
         Terry E. Welch
         Bentley J. Tolk
         Michael S. Wilde

        Attorneys for Plaintiff

4885-8807-8676 v.1