Terry E. Welch (5819) twelch@parrbrown.com
Bentley J. Tolk (6665) btolk@parrbrown.com
Rodger M. Burge (8582) rburge@parrbrown.com
C. Chase Wilde (17546) cwilde@parrbrown.com
**PARR BROWN GEE & LOVELESS**
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Telephone: (801) 532-7840
Facsimile: (801) 532-7750

*Attorneys for Plaintiff Millrock Investment Fund 1, LLC*

---

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MILLROCK INVESTMENT FUND 1, LLC, <br><br> Plaintiff, <br><br> v. <br><br> HEALTHCARE SOLUTIONS MANAGEMENT GROUP, INC.; HEALTHCARE SOLUTIONS HOLDINGS INC.; LANDES CAPITAL MANAGEMENT, LLC; LANDES AND COMPAGNIE TRUST PRIVE KB; JOSHUA CONSTANTIN; JUSTIN SMITH; STUART MCMAHEN; and BLACK LABEL SERVICES, INC., <br><br> Defendants. | **RULE 56(d) MOTION TO DEFER OR DENY DEFENDANTS JOSHUA CONSTANTIN AND STUART MCMAHEN'S MOTION FOR SUMMARY JUDGMENT** <br><br> Case No. 2:23-CV-00157-RJS-DAO <br><br> Chief District Judge Robert J. Shelby <br><br> Magistrate Judge Daphne A. Oberg |

Pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, Plaintiff Millrock Investment Fund 1, LLC ("Millrock") hereby files this Motion to Defer or Deny Defendants Joshua Constantin and Stuart McMahen's Motion for Summary Judgment.

## RELIEF SOUGHT AND GROUNDS IN SUPPORT

Millrock moves the Court under Rule 56(d) of the Federal Rules of Civil Procedure to deny or defer Joshua Constantin and Stuart McMahen's Motion for Summary Judgment (*see* ECF No. 95 (the "Summary Judgment Motion")) to allow Millrock to take the fact discovery specified below. The grounds for the requested relief are that (1) due to the recently dismissed bankruptcy of Defendant Healthcare Solutions Management Group, Inc. ("HSMG"), fact discovery has just begun in this case, and the amended January 17, 2025 fact discovery cutoff in this case is more than five and a half months away; (2) Millrock needs to take discovery to respond fully and fairly to the Summary Judgment Motion; (3) the information that Millrock needs to obtain through that discovery is in the exclusive control of Joshua Constantin ("Constantin") and Stuart McMahen ("McMahen"); and (4) Millrock has been prevented from taking the discovery referenced in this Motion because, among other reasons, this case has been stayed until recently.

## STATEMENT OF FACTS

1. In its operative Second Amended Complaint in this case, Millrock alleges, in part, that HSMG owes Millrock millions of dollars but that instead of paying Millrock what it is owed, HSMG transferred that money to several individuals and entities to avoid having to pay Millrock. (*See* ECF No. 28 (the "Second Amended Complaint"), ¶¶ 106–120.)

2. Among those transfers, Millrock alleges that HSMG transferred $2,235,923 to Constantin and $465,000 to McMahen via its subsidiary Healthcare Solutions Holdings, Inc ("HSH"). (*See id.*, ¶ 77.)

3. Millrock alleges those specific transfer amounts because HSMG stated in an 8-K filing with the Securities and Exchange Commission (the "SEC") that HSMG entered into settlement agreements with Constantin and McMahen for those amounts around the same time that

this lawsuit commenced. (*See* Summary Judgment Motion, Exs. B and E.)

4.      Also, before Millrock commenced this suit, Constantin had a phone call with two representatives of Millrock—Kevin Long and Brent Smith. On that phone call, Constantin told them that he (Constantin) would do whatever it took to make sure that HSMG's assets would be impossible to get to if Millrock tried to collect a debt from it. (*See* Ex. A ("Smith Declaration"), ¶ 5; *see also* Ex. B ("Long Declaration"), ¶ 27.)

5.      On that same call, Constantin explained that HSMG's subsidiaries, such as HSH, had been set up for the sole purpose of making it difficult for creditors like Millrock to recover assets and even bragged that he was "very good at" hiding assets. (*See* Smith Declaration, ¶¶ 4–5; *see also* Long Declaration, ¶¶ 26–27.)

6.      As a result of the publicly disclosed settlement agreements and Constantin's comments, Millrock brought claims of voidable transfer against Constantin and McMahen. (*See* Second Amended Complaint, pp. 17–23.)

7.      On July 17, 2023, Constantin and McMahen answered the Second Amended Complaint, (*see* ECF Nos. 47–48), and the Court entered a scheduling order on August 1, 2023 that set the close of fact discovery for May 23, 2024. (*See* ECF No. 51, p. 2.)

8.      Prior to and after Constantin and McMahen answered the Second Amended Complaint, Millrock worked on a petition for involuntary bankruptcy against HSMG. (*See* Ex. C ("Bentley Declaration"), ¶¶ 9–10; *see also* docket for Case No. 23-11458 in United States Bankruptcy Court, District of Delaware ("Bankruptcy Docket").) After a significant amount of work, which included, among other things, coordinating with eight other petitioning creditors, Millrock filed a petition for involuntary bankruptcy against HSMG. (*See* Bentley Declaration, ¶¶ 9–10.) The Bankruptcy Court granted that petition on December 19, 2023. (*See id.*, ¶ 11.)

9.      On March 15, 2024, Constantin and McMahen filed their Summary Judgment Motion. In the motion, Constantin and McMahen admit that they entered into settlement agreements with HSMG for the amounts alleged in the Second Amended Complaint—$2,235,923 to be paid to Constantin and $465,000 to McMahen. (Summary Judgment Motion, Statement of Undisputed Facts, ¶¶ 9–10.)

10.     They argue, however, that those amounts were never transferred to them and that, as a result, "no claim for voidable transfer can be maintained." (*Id.*, p. 2.) Constantin and McMahen point to several exhibits attached to their Summary Judgment Motion as evidence that the transfers never occurred, such as self-serving declarations from each of them, bank records from HSH (but not HSMG), and judgements that Constantin and McMahen secured against HSMG and HSH. (*See, generally*, ECF No. 96.)

11.     Constantin and McMahen assert in their Summary Judgment Motion that Millrock has not produced any evidence that the alleged transfers actually happened. (*See* Summary Judgment Motion, p. 10.) Thus, according to Constantin and McMahen, summary judgment should be entered against Millrock on the voidable transfer claims as to them at the onset of discovery proceedings because "Millrock has failed to produce any evidence whatsoever to support its claim." (*Id.*, p. 11.)

12.     Meanwhile, in the bankruptcy proceeding, the petitioners in the bankruptcy proceeding, including Millrock, prepared and filed proofs of claim. (*See* Bankruptcy Docket, Claim 6.) Also, the trustee filed a motion to compel HSMG to file schedules of assets and liabilities. (*See id.* ECF No. 30.)

13.     On the same day that Constantin and McMahen filed their Summary Judgment Motion, this Court stayed this case for two months "in light of the HSMG's bankruptcy case" to

"help clarify the status of the claims in this case." (ECF No. 97.)

14.     After that stay, this Court stayed this case again until July 31, 2024. (*See* ECF No. 110.) During the second stay, however, the bankruptcy proceeding was dismissed. As a result, this Court lifted the stay on June 24, 2024 and ordered the parties to file a proposed amended scheduling order and briefing deadlines for pending motions within fourteen days. (*See* ECF No. 114.)

15.     Consistent with that order, the parties filed a stipulated motion with a proposed order that sets the close of fact discovery as January 17, 2025 and set a deadline of July 31, 2024 for Millrock to respond to the Summary Judgment Motion. (*See* ECF No. 115-1.) Millrock's deadline to respond to the Summary Judgment Motion was then extended to August 8, 2024. (ECF No. 118.) Other than serving their initial disclosures, Millrock, Constantin, McMahen, and HSMG have not engaged in any discovery in this matter.

16.     In sum, Millrock has not had a fair opportunity to conduct discovery in this case until now. (*See, generally*, Bentley Declaration.)

## ARGUMENT

Under Rule 56(d), in response to a motion for summary judgment, if a nonmovant has not had an opportunity to obtain facts essential to oppose the motion for summary judgment, then a court may defer or deny the motion for summary judgment, give the non-moving party additional time to conduct discovery, or issue any other appropriate order. Fed. R. Civ. P. 56(d). Indeed, the Supreme Court has held that "summary judgment should be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Ellis v. J.R.'s Country Stores, Inc*., 779 F.3d 1184, 1205–06 (10th Cir. 2015) (cleaned up) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 n. 5, (1986)).

Rule 56(d) motions are, therefore, favored if the nonmovant shows via affidavit or declaration "(1) the probable facts not available, (2) why those facts cannot be presented currently, (3) what steps have been taken to obtain these facts, and (4) how additional time will enable the party to obtain those facts and rebut the motion for summary judgment." *Gutierrez v. Cobos*, 841 F.3d 895, 908 (10th Cir. 2016) (cleaned up); *see also Adams v. C3 Pipeline Constr. Inc*., 30 F.4th 943, 968 (10th Cir. 2021) (explaining that the "general rule is that summary judgment should not be entered where the nonmoving party has not had the opportunity to discover information that is essential to his opposition"). District courts have a broad "degree of discretion" when adjudicating Rule 56(d) motions "to render a decision based upon what is fair in the circumstances and guided by the rules and principles of law." *Adams*, 30 F.4th 943, 968 (10th Cir. 2021) (cleaned up).

Here, the Court should defer or deny the Summary Judgment Motion because Millrock meets all the requirements of Rule 56(d), which is supported by the attached declarations. (*See*, *e.g.,* Bentley Declaration.)

## I.     There Are Probable Facts Necessary to Prove the Voidable Transfer Claim That Are Not Available to Millrock.

The probable facts necessary for Millrock to prove its voidable transfer claims against Constantin and McMahen are (i) that a transfer took place, (ii) that at the time of the transfer HSMG was insolvent or made insolvent because of the transfer, (iii) that the transfer was made with intent to hinder, delay, or defraud Millrock, and (iv) that HSMG did not receive a reasonably equivalent value in exchange for the transfer (collectively the "Probable Facts"). None of the Probable Facts are available to Millrock.

The Summary Judgment Motion focuses exclusively on Probable Fact (i)—whether a transfer took place. But that fact is not available to Millrock, because no discovery has happened in this case yet and because that fact is in the exclusive control of the Defendants, specifically

HSMG, Constantin, and McMahen. Constantin and McMahen point out that the alleged transfers are not reflected in the bank records of HSMG's subsidiary, HSH. But they have not volunteered financial records from any other source that could also evidence the alleged transfers.

For example, the transfers to Constantin and McMahen are likely reflected in HSMG's financial records or the personal records of Constantin and McMahen. Also, based on Constantin's own words, he intended to use HSMG and its many subsidiaries as shell companies to move and hide assets to make it difficult for creditors like Millrock to recover legitimate debts. So it is probable that Constantin has taken steps to hide facts evidencing the transfers. After all, Constantin has already been found guilty of similar fraud at least once before. *See SEC v. Joshua Constantin et al.*, 11-CV-4642 (S.D.N.Y).

In other words, in addition to the financial records of HSMG, and the personal financial records of Constantin and McMahen, there are potentially additional records from "shell" entities that evidence the transfers. Constantin and McMahen have volunteered what's beneath only one shell, but Millrock is entitled to investigate the other shells and their related documents before the Summary Judgment Motion is adjudicated. Of course, Millrock does not have access to any of those documents; they are in the exclusive control of HSMG, Constantin, and McMahen. *See Adams*, 30 F.4th 943, 968–69 (10th Cir. 2021) (explaining that "sufficient time for discovery is especially important when relevant facts are exclusively in control of the opposing party").

## II.    The Probable Facts Cannot Currently be Presented.

The Probable Facts, specifically the fact that the transfers took place, cannot be presented currently by Millrock for similar reasons that the Probable Facts are not available to Millrock; that is, they are in the exclusive control of parties other than Millrock and because Millrock has not had a fair chance to conduct discovery yet.

Initially, Millrock allocated a significant amount of its time and resources to the bankruptcy proceeding. Specifically, Millrock and eight other petitioning creditors prepared and filed a petition for involuntary bankruptcy against HSMG, which was granted. It would have made little sense to take significant steps to advance this case when the lead defendant in this case, HSMG, was currently the subject of a bankruptcy proceeding that had the potential to effect the claims in this case, and which raised issues regarding the scope of the automatic stay and its effect on this case.

It was for that very reason that this Court stayed this case, which prohibited Millrock from conducting any discovery during the stay. Importantly, this case was stayed on the same day the Summary Judgment Motion was filed. The case was then stayed again after the first stay ended, and the second stay was only recently lifted. As a result, because the fact discovery cutoff was initially scheduled for May 23, 2024, the deadline for discovery came and went while the case was stayed, and the parties conducted no discovery other than exchanging initial disclosures. Thus, Millrock has not had any opportunity to conduct discovery since the Summary Judgment Motion was filed.

Recognizing the need for new deadlines, the Court directed the parties to file a new proposed scheduling order. The parties did so and have proposed a new fact discovery deadline of January 17, 2025. Thus, the parties agree that discovery is still needed in this case and that they need several additional months to conduct that discovery. It would, therefore, be unfair given the circumstances for the Court to render a decision on the Summary Judgment Motion before Millrock has an opportunity to use the time between now and January 17, 2025 to conduct discovery into the Probable Facts.

### III.    Millrock Has Taken Steps to Obtain the Probable Facts.

Millrock has taken steps to obtain the Probable Facts. First, as a preliminary matter, Millrock made significant efforts in putting together the petition of involuntary bankruptcy and getting that petition granted against HSMG. Millrock hoped the trustee would obtain the Probable Facts through the bankruptcy proceedings, but the bankruptcy court dismissed the bankruptcy after HSMG (through its agents Constantin and Smith) failed to comply with a court order to file a schedule of assets and liabilities or a statement of financial affairs.

Since the Court lifted the stay, Millrock promptly proceeded with discovery in this case. Specifically, on July 24, 2024, Millrock served its First Set of Interrogatories, Requests for Production of Documents, and Requests for Admissions to Defendants Joshua Constantin and Stuart McMahen. (*See* Ex. D (the "Discovery Requests").) Millrock has also served notices for depositions of Constantin, McMahen, and Justin Smith. (*See* Ex. E (the "Notices").) These depositions are currently scheduled for September 2024. Millrock also intends to depose Jonathan Loutzenhiser and Emanuel Butera. Finally, once Millrock receives responses to the Discovery Requests, it anticipates serving subpoenas on entities and financial institutions identified in the responses, and potentially conducting additional depositions of the entities and additional persons revealed through discovery.

In sum, Millrock has not been idle since it commenced this suit. Instead, it has attempted to obtain the Probable Facts through various methods. Despite these efforts, however, Millrock has not yet had a fair opportunity to conduct discovery in this case.

### IV.    Millrock Will be Able to Obtain the Probable Facts if the Summary Judgment Motion is Deferred or Denied.

If the Summary Judgment Motion is deferred or denied, then Millrock could obtain the Probable Facts through discovery because Millrock will have until the new discovery deadline to

complete discovery, including the discovery described in Section III above.

Through the Discovery Requests' interrogatories, Millrock will learn, among other things, (i) the identity of all business entities and trusts that McMahen and Constantin have an ownership interest in or otherwise control, have been employed as an officer/director/manager of, or in which they are a trustor/trustee/beneficiary; (ii) for these entities and trusts, the financial institutions at which banking, investment, brokerage, and similar accounts are or have been maintained, together with account numbers; and (iii) the corporate structure, including subsidiaries and affiliates, of HSMG and HSH. This discovery will help identify the pathways through which McMahen and Constantin may have "hid" the assets of HSMG/HSH, including the settlement payments and the approximately $80 million dollars in publicly reported assets of HSMG/HSH.

Similarly, through the Discovery Requests' document requests, Millrock will obtain (i) financial statements for HSMG, HSH, and entities identified in the interrogatories; (ii) account statements for entities identified in the interrogatories; (iii) corporate minutes, resolutions and records for HSMG/HSH; (iv) HSMG's bank records; (v) Constantin and McMahen's personal financial records; (vi) correspondence among HSMG, Constantin, and McMahen regarding the alleged transfers; (vii) invoices, receipts, and other records that could evidence the alleged transactions; and (viii) communications between HSMG/HSH/Constantin/McMahen, on the one hand, and Emanuel Butera and American Development Partners, on the other. These documents are expected to demonstrate where HSMG/HSH's assets, including the settlement payments, were transferred.

As stated above, Millrock has noticed the depositions of Constantin, McMahen, and Justin Smith in this case, to probe their explanation of the settlement payments that allegedly never came to fruition as well as the surrounding details. Further, Millrock intends to depose Jonathan

Loutzenhiser and Emanuel Butera as well. These depositions are expected to reveal information regarding the settlement payments that Constantin and McMahen claim never occurred, and possible pathways these funds, as well as other assets, were transferred. Additionally, through the Discovery Requests and depositions, Millrock anticipates serving subpoenas for documents and/or depositions of third parties, the identities of whom are expected to be learned through said discovery, to further ascertain where the settlement funds were transferred.

In sum, Millrock will use all formal discovery tools available to it under the Federal Rules of Civil Procedure over the next several months to obtain the Probable Facts before discovery is closed in this matter. Importantly, these Probable Facts are necessary to rebut the Summary Judgment Motion because that motion argues that Millrock has not shown the Probable Facts.

Specifically, Millrock needs to obtain the fact that the transactions occurred in order to rebut the argument that the transactions never took place. As a result, Millrock's request for the opportunity to conduct discovery before this Court adjudicates the Summary Judgment Motion is crucial for Millrock's ability to rebut the Summary Judgment Motion. *See Gutierrez v. Cobos*, 841 F.3d 895, 909 (10th Cir. 2016) (implying that a Rule 56(d) motion may be granted if the requested discovery would assist the nonmovant in overcoming summary judgment).

## **CONCLUSION**

Because discovery would allow Millrock to obtain facts needed to rebut the Summary Judgment Motion, and for the reasons above, the Court should grant this Motion and either deny the Summary Judgment Motion without prejudice or defer it until after the close of fact discovery.

DATED August 7, 2024.

PARR BROWN GEE & LOVELESS

By: /s/Chase Wilde
       Terry E. Welch

Bentley J. Tolk
Rodger M. Burge
C. Chase Wilde

*Attorneys for Plaintiff Millrock Investment Fund 1,
LLC*

**EXHIBIT A**

**EXHIBIT A**

**EXHIBIT A**

Terry E. Welch (5819)
Bentley J. Tolk (6665)
Michael S. Wilde (14366)
**PARR BROWN GEE & LOVELESS**
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Telephone: (801) 532-7840
Facsimile: (801) 532-7750
twelch@parrbrown.com
btolk@parrbrown.com
mwilde@parrbrown.com

*Attorneys for Plaintiff Millrock Investment*
*Fund 1, LLC*

---

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| MILLROCK INVESTMENT FUND 1, LLC, | **DECLARATION OF BRENT SMITH** |
| Plaintiff, | Case No. 2:23-cv-000157-JNP |
| v. | Judge Jill N. Parrish |
| HEALTHCARE SOLUTIONS MANAGEMENT GROUP, INC.; HEALTHCARE SOLUTIONS HOLDINGS INC.; LANDES CAPITAL MANAGEMENT, LLC; LANDES AND COMPAGNIE TRUST PRIVE KB; JOSHUA CONSTANTIN; and JUSTIN SMITH, | |
| Defendants | |

1.      I am over the age of 18 and if called to testify could testify truthfully to the matters stated herein.

2.      I have worked for 6 years in commercial real estate.  After working with Rosco

Capital for 18 months, I pivoted efforts to co-found Millrock Investment Fund 1, LLC, which has obtained and divided $150 million dollars in commercial real estate investments for its clients.

3.      I am a Limited Partner of Millrock Investment Fund 1, LLC.

4.      On November 30, 2022, I participated in a phone call with Josh Constantin and Kevin Long.  Mr. Long stated that HSMG was either the lessee or a guarantor of the lease payments and therefore liable on the leases.  During the meeting, Mr. Constantin sought to negotiate a year of free rent for each of the surgical centers.  Mr. Long pushed back and indicated the TIC Owners would not be inclined to give free rent and were more likely to pursue the corporate guarantee against HSMG.  In response, Mr. Constantin said, in effect: "That has not kicked in yet.  You need to tell the owners they need to work with me or I will empty the corporate shell and they will have nothing to come after.  This is what I do, I am very good at it."

5.      During the Call, we discussed the Equipment Funds associated with the Draper Surgical Center, discussing Millcreek filing a UCC-1 against any equipment that had been purchased with the Equipment Funds.  In response, Constantin stated that he would do whatever it took to make sure that HSMG's assets, including equipment, were impossible to get to if Millrock intended to file UCC-1 filings on any equipment purchased with the Equipment Funds.  Constantin further stated during the call that HSMG's single purpose subsidiary entities were set up in such a way as to make it very difficult to recover assets.

I declare under penalty of perjury the foregoing is true and correct.

2

4869-9946-6312

Dated this day __6th__ of March, 2023.

By:_____
Brent R. Smith

**EXHIBIT B**

**EXHIBIT B**

**EXHIBIT B**

Terry E. Welch (5819)
Bentley J. Tolk (6665)
Michael S. Wilde (14366)
**PARR BROWN GEE & LOVELESS**
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Telephone: (801) 532-7840
Facsimile: (801) 532-7750
twelch@parrbrown.com
btolk@parrbrown.com
mwilde@parrbrown.com

*Attorneys for Plaintiff Millrock Investment
Fund 1, LLC*

---

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| MILLROCK INVESTMENT FUND 1, LLC, | **DECLARATION OF KEVIN G. LONG** |
| Plaintiff, | Case No. 2:23-cv-00157-JNP |
| v. | |
| HEALTHCARE SOLUTIONS MANAGEMENT GROUP, INC.; HEALTHCARE SOLUTIONS HOLDINGS INC.; LANDES CAPITAL MANAGEMENT, LLC; LANDES AND COMPAGNIE TRUST PRIVE KB; JOSHUA CONSTANTIN; and JUSTIN ~~SMITH~~ | Judge Jill N. Parrish |
| Defendants. | |

1.     I am over the age of 18 and if called to testify could testify truthfully to the

matters stated herein.

2.      I have worked for 34 years in commercial real estate.  I have a Utah Real Estate Brokers License.   After working with Colliers International and being the founding Principal Broker of its predecessor CBC Advisors for 25 years, I left to found Millcreek Commercial, which has obtained and divided $150 millions of dollars in commercial real estate investments for its clients.

3.      I am the Manager of Millrock Investment Fund 1 Management, LLC, which is the managing member of Millrock Investment Fund 1, LLC ("Millrock").

4.      Millrock is an investment and development fund that buys and sells commercial properties and then divides and sells its fee simple title to various tenant-in-common owners (the "TIC Owners").

5.      Millrock contracted with non-party ADP to construct two surgical centers for HSMG or its subsidiaries to lease and operate in Draper, Utah ("Draper Project") and Keller, Texas ("Keller Project") (collectively, the "Surgical Centers").  Attached hereto as Exs. 1 and 2 are copies of the agreements for the construction of the Surgical Centers.

6.      In connection with construction of the Surgical Centers, Millrock was required to pay ADP $2.55 million for the Draper Project and $2.55 million for the Keller Project as an equipment allowance (collectively the "Equipment Allowance") to equip each Surgical Center, and ADP was then required to transfer the Equipment Allowance to HSMG. ADP would submit draw requests for the Equipment Allowance at various

2

points throughout the development process, and ADP would transfer those draws to HSMG. Attached hereto as Ex. 3 is a copy of the Draper construction budget. Attached hereto as Ex. 4 is a copy of the Keller construction budget.

7.    The building for the Draper Project was purchased under the budget for $4,475,460.00. During the construction of the Draper Project, total draws for the project were made in the amount of $9,539,776.89, of which $2,310,000 was designated as an Equipment Allowance under the budget. Attached hereto as Ex. 5 are copies of the Draper location settlement statement and draws.

8.    During the construction of the Keller Project, draws for the Equipment was made in the amount of $2,332,000. Attached hereto as Ex. 6 are copies of the Keller settlement statement and draws.[1]

9.    HSMG or its affiliated entities, as the lessee, signed the leases for the Surgical Centers. When one of HSMG's affiliated entities (as opposed to HSMG) signed the lease for one of the ACM Centers or the Surgical Centers, HSMG acted as the guarantor of its affiliated entity's obligations under the lease.

10.    Specifically, the Draper Lease is set forth in an Ambulatory Surgery Center Lease Agreement between ADP, as the landlord, and SARC by HSI – DRAPER, UT Inc., as the tenant, entered into on or about November 12, 2020. Smith signed the

---

[1] In the process of preparing this filing, I discovered that Millrock appears to have mistakenly been double billed on certain amounts relating to the Keller Project. Millrock and ADP are working together to remedy the problem. Consequently, Millrock paid more than the contract price, however, both Millrock and ADP agree that $2,332,000 of the total payments were for Equipment.

3

4869-9946-6312

Draper Lease purportedly on behalf of SARC by HSI – DRAPER, UT Inc. Ex. 7. Upon

information and belief, SARC by HSI – DRAPER, UT Inc. was intended to be an entity

owned or controlled by HSMG or one of its subsidiaries of affiliates, however we have

subsequently been unable to find any entity by this name.

11.    On or about November 20, 2020, ADP executed a written assignment of all of its

rights, interests, and obligations in the Draper Lease to SARC Draper, LLC. Attached

hereto as Ex. 8 is a copy of this assignment relating to the Draper surgical center.

12.    On or about January 12, 2021, SARC Draper, LLC assigned all of its rights,

interests, and obligations in the Draper Lease to Millrock. Attached hereto as Ex. 9 is

sample of this assignment to the TIC Owners.

13.    On or about April 6, 2022, Millrock assigned all of its rights, title, and interest in

the Draper Lease to certain of the TIC Owners. Attached hereto as Ex. 10 is a copy of

this assignment.

14.    HSMG was the guarantor for the Draper Lease, and Smith also signed the

Guaranty on behalf of HSMG. Ex. 7.

15.    The Keller Lease is set forth in an Ambulatory Surgery Center Lease Agreement

between Millrock, as the landlord, and SARC by HSI – KELLER, TX Inc., as the

tenant, entered into as of November 18, 2020. Smith signed the Keller Lease on behalf

of SARC by HSI – KELLER, TX Inc. Attached hereto as Ex. 11 is a copy of this lease.

Upon information and belief, SARC by HSI – Keller, TX Inc. was intended to be an

entity owned or controlled by HSMG or one of its subsidiaries of affiliates, however we
have subsequently been unable to find any entity by this name.

16.    HSMG was the guarantor for the Keller Lease, and Smith also signed the
Guaranty on behalf of HSMG.  Ex. 11.

17.    Around November 19-20, 2020, Millrock assigned its rights and interest in the
Keller Lease (and certain associated purchase agreement rights in the Keller Project) to
certain of the TIC Owners.  Because these interests were sold to various owners in many
different instruments, attached hereto as Ex. 12 is a sample of one of the assignments to
a TIC owner, however other TIC Owners purchased the balance of the interest in like
manner.

18.    Millrock sold its interests in the Surgical Centers to approximately 70 TIC
Owners.

19.    The TIC Owners owning the interests in the Surgical Centers consist of a variety
of investors, however, a substantial portion of the TIC Owners invested in the Surgical
Centers using retirement funds as a means of providing cash flow in retirement.

20.    The Surgical Centers, however, never opened and the Keller Project never
received a certificate of occupancy. Although the Keller, Texas project was almost
completed, HSMG failed to provide the medical equipment specifications to the
contractor, even though the contractor spent numerous months requesting the equipment
specifications from HSMG. With regard to the Draper, Utah project, Constantin, Smith

5

4869-9946-6312

and HSMG came up with various excuses for not installing equipment and thus completing the project.

21.     Starting around December 2021, HSMG failed to pay its rent obligations under the Draper or Keller Leases.

22.     HSMG represented to Millrock that its difficulties in making the lease payments were the result of COVID related delays and cash flow issues. Millrock worked with HSMG to rectify these cash flow issues, up to and including paying the lease payments.

23.     On or about August 5, 2022, Millrock and HSMG entered into a Loan Agreement and Promissory Note (the "Millrock/HSMG Agreement") to provide HSMG cash flow to meet its rent obligations for the Draper and Keller Surgical Centers. Attached hereto as Ex. 13 is a copy of this agreement.

24.     Millrock complied with the terms of the Millrock/HSMG Agreement.

25.     Notwithstanding Millrock's attempts to assist HSMG's alleged cash flow problem, in or about September 2022, HSMG or its subsidiaries stopped making lease payments under each of their lease agreements at the Surgical Centers.

26.     On November 30, 2022, I participated in a phone call with Josh Constantin and Brent Smith. I stated that HSMG was either the lessee or a guarantor of the lease payments and therefore liable on the leases. During the meeting, Mr. Constantin sought to negotiate a year of free rent for each of the surgical centers. I pushed back and indicated the TIC Owners would not be inclined to give free rent and were more likely

6

4869-9946-6312

to pursue the corporate guarantee against HSMG.  In response, Mr. Constantin told me, in effect: "That has not kicked in yet.  You need to tell the owners they need to work with me or I will empty the corporate shell and they will have nothing to come after. This is what I do, I am very good at it."

27.    During the Call, we discussed the Equipment Funds associated with the Draper Surgical Center, discussing Millcreek filing a UCC-1 against any equipment that had been purchased with the Equipment Funds.  In response, Constantin stated that he would do whatever it took to make sure that HSMG's assets, including equipment, were impossible to get to if Millrock intended to file UCC-1 filings on any equipment purchased with the Equipment Funds.  Constantin further stated during the call that HSMG's single purpose subsidiary entities were set up in such a way as to make it very difficult to recover assets.

28.    In December 2022, Millrock set up a zoom call between HSMG and the TIC Owners of the Draper and Keller Surgical Centers to discuss HSMG's obligations under the leases.

29.    During the call with the Draper TIC Owners (the "Draper Meeting"), Constantin stated that the Equipment Allowance was paid to him as a "development fee" or "project development income," and that Constantin could use as he sees fit. He also stated that any equipment purchased with the Equipment Allowance belonged to HSMG. Constantin further represented during the Draper Meeting that SARC-Draper, and not

7

HSMG, owes money to the TIC Owners. He also represented that HSMG is a minority investor in SARC-Draper. Constantin stated that some equipment was purchased, but that he didn't know what had specifically been purchased. Constantin refused to commit to putting the Equipment Funds in trust. When confronted about past problems with the SEC, Constantin admitted that he "lied under oath" in a deposition. Attached hereto as Ex. 14 are transcriptions of relevant portions of the meeting with the Draper TIC Owners which accurately represent the nature and content of the meeting.

30.    During the call with the Keller TIC Owners (the "Keller Meeting"), Constantin implied that HSH possesses and controls the Equipment Funds as "project development income," and that it can use it as it sees fit. Constantin also represented that any equipment purchased with the Equipment Funds belong to Constantin and/or one of the entities that Constantin controls. Constantin further implied during the Keller meeting that Equipment Funds were pooled with money from approximately forty other projects in a general strategic reserve account containing over $80M in cash or cash equivalents. Constantin stated that HSMG could not afford to pay rent owed on the Keller Surgical Center, and that if it did, it would bankrupt the company. Attached hereto as Ex. 15 are transcriptions of relevant portions of the meeting with the Keller TIC Owners which accurately represent the nature and content of the meeting.

31.    During the meetings with the TIC Owners, Constantine indicated that HSMG's contract with ADP provided that the FFE funds would be paid to HSMG as a

4869-9946-6312

development fee. Millrock was later provided a copy of the contract between ADP and HSMG, and while it does discuss a development fee, the fee is payable *to ADP*. There is no development fee payable to HSMG. Attached hereto as Ex. 16 is a copy of the agreement provided by HSMG. To date, HSMG has not delivered the Equipment, and has not returned, or accounted for, the Equipment Funds.

32.    On December 14, 2022, Millrock's attorney sent a Notice of Default and Acceleration of Debt (the "Notice of Default") to HSMG accelerating the amounts due under the Millrock/HSMG Agreement. Attached hereto as Ex. 17 is a copy of the Notice of Default.

33.    On or around February 14, 2023, HSMG filed a Form 8-K with the SEC indicating that Smith was removed as a member of the board effective immediately. As part of Smith's separation with the company, HSMG agreed to pay Landes Capital Management, LLC and Landes and Compagnie Trust Prive KB $93,933,345.48 in exchange for 1 million shares of HSMG. A copy of this Form 8-K is attached hereto as Exhibit 18.

34.    Based on the HSMG's most recent filing disclosing the same, the company had 92,076,638 shares outstanding, $659,194 in cash, $93,129,332 in total assets, and $14,484,751 in total liabilities. A copy of this Form 8-K is attached hereto as Exhibit 19.

35.    I have been informed that Landes Capital Management, LLC was named as a

9

4869-9946-6312

defendant in a lawsuit styled *Commodity Futures Trading Commission v. Financial Tree et al.*, case no. 2:20-cv-01184 in the United States District Court for the Eastern District of California. In this action, Financial Tree was found liable on claims of Commodity Option Fraud in Violation of 7 U.S.C. § 6c(b), Forex Fraud in violation of 7 U.S.C. § 6(b)(2)(A)-(C), among other claims. In this same action, Landes Capital Management, LLC was found liable on a claim of disgorgement for having received ill-gotten funds for which Landes did not provide legitimate services and to which Landes did not have a legitimate claim. Copies of the Complaint, Magistrate's Findings and Recommendations, and District Court Judge's Order adopting the Magistrate's Findings and Recommendations are included herewith as Exhibits 20, 21, and 22.

36.    I am unaware of any facts that suggest that the Equipment Funds are earnings or exempt from execution.

37.    Millrock is not seeking a writ of pre-judgment attachment to hinder, delay or defraud a creditor of the Defendants.

38.    Upon information and belief, Defendants are not residents of this state or qualified to do business here.

I declare under penalty of perjury the foregoing is true and correct.


Dated this day __7__ of March, 2023.


4869-9946-6312

10

By: _____

       Kevin G. Long

11

**EXHIBIT C**

**EXHIBIT C**

**EXHIBIT C**

Terry E. Welch (5819)
Bentley J. Tolk (6665)
Rodger M. Burge (8582)
C. Chase Wilde (17546)
**PARR BROWN GEE & LOVELESS**
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Telephone: (801) 532-7840
Facsimile: (801) 532-7750
twelch@parrbrown.com
btolk@parrbrown.com
rburge@parrbrown.com
cwilde@parrbrown.com

*Attorneys for Plaintiff Millrock Investment Fund 1, LLC*

---

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MILLROCK INVESTMENT FUND 1, LLC, | |
|      Plaintiff, | |
| v. | **DECLARATION OF BENTLEY J. TOLK** |
| HEALTHCARE SOLUTIONS MANAGEMENT GROUP, INC.; HEALTHCARE SOLUTIONS HOLDINGS INC.; LANDES CAPITAL MANAGEMENT, LLC; LANDES AND COMPAGNIE TRUST PRIVE KB; JOSHUA CONSTANTIN; JUSTIN SMITH; STUART MCMAHEN; and BLACK LABEL SERVICES, INC., | Case No. 2:23-CV-00157-RJS-DAO<br><br>Chief District Judge Robert J. Shelby<br><br>Magistrate Judge Daphne A. Oberg |
|      Defendants. | |

I, Bentley J. Tolk, declare as follows:

1.      I am over the age of 18, and if called to testify, could testify truthfully to the

matters stated herein.

2.       I am a shareholder with the law firm of Parr Brown Gee & Loveless, P.C. ("Parr Brown"), and Parr Brown and I represent Millrock Investment Fund 1, LLC ("Millrock") in the above-captioned matter.

3.       I make this declaration based upon personal knowledge and on the contents of public records and business records known to me to be obtained and/or maintained by Parr Brown in the ordinary course of business, and which I believe to be true.

4.       At my direction, Parr Brown obtained copies of certain forms that Healthcare Solutions Management Group, Inc. ("HSMG") filed with the Securities and Exchange Commission (the "SEC").

5.       One of those forms was a form 8-K that HSMG filed with the SEC on March 10, 2023 (the "Form 8-K"). A true and correct copy of that form 8-K (including the settlement agreements attached thereto) is attached hereto as Exhibit "1."

6.       According to the Form 8-K, HSMG's wholly owned subsidiary, Healthcare Solutions Holdings, Inc. ("HSG"), entered into "settlement agreements" on March 5, 2023 whereby it agreed to pay the following amounts: (1) $465,000 to Stuart McMahen ("McMahen"); and (2) $2,235,923 to Joshua Constantin ("Constantin"). (*See* Ex. 1.)

7.       Those agreements were entered into only three days after the March 2, 2023 filing date of the Complaint in this case. (*See id*.)

8.       Based on those agreements and on other facts in the possession of Millrock, Millrock brought voidable transfer claims against Constantin and McMahen in this case.

9.       Beginning in late April or May 2023, Parr Brown began preparing a petition for involuntary bankruptcy against HSMG in the United States Bankruptcy Court for the District of Delaware.

10.     On September 15, 2023, Millrock and other petitioning creditors filed a petition for involuntary bankruptcy against HSMG in the United States Bankruptcy Court for the District of Delaware. *See* Involuntary Petition, a true and correct copy of which is attached hereto as Exhibit "2."

11.     On December 19, 2023, the United States Bankruptcy Court for the District of Delaware opened HSMG's involuntary bankruptcy case ("HSMG's Bankruptcy Case") by filing an Order for Relief in an Involuntary Case, a true and correct copy of which is attached hereto as Exhibit "3."

12.     On March 15, 2024 (the same day on which Constantin and McMahen filed their Motion for Summary Judgment), this Court entered an Order staying all case deadlines in this case until May 15, 2024. *See* Order Granting Motion to Stay and Motion for Extension of Time (ECF 97).

13.     On June 20, 2024, this Court entered an order extending the stay in this case until July 31, 2024. *See* Memorandum Decision and Order Granting Motion to Extend Stay and other Deadlines (*See* ECF Nos. 99 and110.)

14.     On June 20, 2024, the United States Bankruptcy Court for the District of Delaware entered an Order dismissing HSMG's Bankruptcy Case because HSMG had not complied with the Bankruptcy Court's order compelling HSMG to file its schedule of assets and liabilities, its statement of financial affairs and its creditor matrix. *See* Order Dismissing Case, a true and correct copy of which is attached hereto as Exhibit "4."

15.     On June 21, 2024, Millrock filed a notice with this Court of the dismissal of HSMG's Bankruptcy Case. *See* Notice of (1) Dismissal of HSMG's Bankruptcy Case; and (2)

Millrock's Proposal to Meet and Confer Regarding Amended Case Deadlines and a Proposed Amended Scheduling Order (ECF 113.)

16.     Due to HSMG's bankruptcy proceedings, Millrock's concerns about the automatic stay, the possibility that the Chapter 7 trustee in HSMG's bankruptcy proceedings might take over Millrock's claims against Constantin and McMahen, and the fact that this case was stayed on two occasions, Millrock has not yet had the opportunity to conduct any substantial discovery in this case.

17.     On July 24, 2024, Millrock served its First Set of Interrogatories, Requests for Production of Documents, and Requests for Admission to Defendants Joshua Constantin and Stuart McMahen.

18.     Constantin and McMahen's responses to the Discovery Requests are due on August 26, 2024

19.     On August 7, 2024, Millrock served notices of deposition of Justin Smith for September 18, 2024; Stuart McMahen for September 24, 2024; and Joshua Constantin for September 25, 2024.

20.     Based on communications with Millrock and the facts presently available, it is anticipated that additional discovery may uncover additional evidence of the transfers that Millrock alleges HSMG (potentially through HSH) made to Constantin and McMahen.

21.     That evidence, however, is not currently available to Millrock, because it will likely be found in documents that are in the exclusive control of HSMG, Constantin, McMahen, Justin Smith, Jonathan Loutzenhiser, Emanuel Butera, banks, financial institutions and other third parties (e.g., bank records, communications, financial statements, etc.).

22.     In addition to the fact discovery it is already in the process of conducting,

Millrock anticipates that it will need to serve subpoenas for documents and depositions on

Jonathan Loutzenhiser, Emanual Butera, HSMG, the banks and other financial institutions that

Constantin and/or his related entities have used, banks and other financial institutions that

McMahen and/or his related entities have used, Constantin's related entities, McMahen's related

entities, and potential other third parties.

23.     Through said discovery, Millrock anticipates that it will learn, among other

things, (i) the identity of all business entities and trusts that McMahen and Constantin have an

ownership interest in, have been employed as an officer/director/manager of, or in which they are

a trustor/trustee/beneficiary; (ii) for those entities and trusts, the financial institutions at which

banking, investment, brokerage, and similar accounts are or have been maintained, together with

account numbers; and (iii) the corporate structure, including subsidiaries and affiliates, of HSMG

and HSH.

24.     The information obtained through that discovery may help confirm that

Constantin and McMahen received the transfers at issue, and where the money is currently

located.

25.     Millrock needs to conduct the foregoing discovery to confirm that the relevant

transactions occurred, in order to rebut the argument that the alleged transactions never took

place.

I declare under penalty of perjury that the foregoing is true and correct.

DATED August 7, 2024.


                                    /s/     Bentley J. Tolk_____
                                         Bentley J. Tolk

5

**EXHIBIT 1 TO BENTLEY DECLARATION**

# UNITED STATES
## SECURITIES AND EXCHANGE COMMISSION
### WASHINGTON, D.C. 20549

# FORM 8-K

### CURRENT REPORT
**Pursuant to Section 13 or 15(d) of the**
**Securities Exchange Act of 1934**

Date of Report (Date of earliest event reported): **March 5, 2023**

# HEALTHCARE SOLUTIONS MANAGEMENT GROUP, INC.

(Exact name of registrant as specified in its charter)

| **Delaware** | **333-147367** | **38-3767357** |
|---|---|---|
| (State or other jurisdiction of incorporation or organization) | (Commission File Number) | (IRS Employer Identification No.) |

**3 School St, Suite 303, Glen Cove NY 11542**
(Address of principal executive offices)

**(866) 668-2188**
(Registrant's telephone number, including area code)

**N/A**
(Former name or former address, if changed since last report)

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions (see General Instruction A.2. below):

☐ Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

☐ Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a -12)

☐ Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d -2(b))

☐ Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e -4(c))

Securities registered pursuant to Section 12(b) of the Act:

| **Title of each class** | **Trading Symbol(s)** | **Name of each exchange on which registered** |
|---|---|---|
| N/A | N/A | N/A |

Indicate by check mark whether the registrant is an emerging growth company as defined in Rule 405 of the Securities Act of 1933 (§230.405 of this chapter) or Rule 12b-2 of the Securities Exchange Act of 1934 (§240.12b-2 of this chapter).

Emerging growth company ☐

If an emerging growth company, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided pursuant to Section 13(a) of the Exchange Act. ☐

**Item 1.01. Entry Into a Material Definitive Agreement.**

*Settlement and Release Agreement with Stuart McMahen*

      On March 5, 2023, Healthcare Solutions Holdings, Inc. ("HSH") the wholly owned subsidiary of Healthcare Solutions Management Group, Inc. (the "Company") entered into a Settlement Agreement and Release (the "McMahen Agreement") with Stuart McMahen. Pursuant to the McMahen Agreement, HSH agreed to pay Mr. McMahen a total sum of $465,000 (the "Settlement Payment") no later than one (1) business day after Mr. McMahen delivers to HSH a signed copy of the McMahen Agreement, as HSH had fallen significantly behind in the payment of regular payroll, benefits and bonuses to Mr. McMahen and HSH's core business had been shut down due to the actions of certain corporate officers and other employees unrelated to Mr. McMahen.

      The McMahen Agreement also contains a mutual release whereby each HSH and Mr. McMahen, agreed to release the other party on behalf of themselves, their predecessors, successors, direct and indirect parent companies, direct and indirect subsidiary companies, companies under common control with either party, affiliates, and assigns, including past, present and future officers, directors, shareholders, interest holders, members, partners, attorneys, agents, employees, managers, representatives (the "Released Parties" and each a "Released Party") from all known and unknown charges, complaints, claims, grievances, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, penalties, fees, wages, medical costs, pain and suffering, mental anguish, emotional distress, expenses (including attorneys' fees and costs actually incurred) and punitive damages, of any nature whatsoever, known or unknown which either of the Released Parties has, or may have had against the other Released Party, arising from (i) HSH's falling behind in the payment of regular payroll, benefits and bonuses to Mr. McMahen (ii) HSH's core business being shut down due to the actions of certain corporate officers and other employees (iii) any agreement between the Released Parties (iv) any other matter between the Released Parties or (v) any claims under federal, state or local law, rule or regulation (the "Release"). However, the Release does not waive or release any claims arising after the effective date of the McMahen Agreement, including any claim for breach of the McMahen Agreement or any indemnification rights under the McMahen Agreement.

      Additionally, the McMahen Agreement also provides that HSH agreed to indemnify Mr. McMahen in connection with any action, suit or proceeding, whether civil, criminal, administrative or investigative (a "Proceeding") to which Mr. McMahen is made a party or threatened to be made a party, other than any Proceeding initiated by Mr. McMahen or HSH related to any contest or dispute with respect to the McMahen Agreement. Further, pursuant to the McMahen agreement the parties agreed that unless required to do so by legal process, each party will not make disparaging statements or representations, either directly or indirectly, whether orally or in writing to any person whatsoever about the other party, or the other party's spouse, attorneys, or representatives or affiliates.

      The foregoing description of the McMahen Agreement does not purport to be complete and is qualified in its entirety by reference to the Form of McMahen Agreement, which is filed as Exhibit 10.1 hereto and is incorporated by reference herein.

*Settlement and Release Agreement with Black Label Services, Inc.*

      On March 5, 2023, HSH entered into a Settlement Agreement and Release (the "BLS Agreement") with  Black Label Services, Inc. a Wyoming Corporation ("BLS"). Pursuant to the BLS Agreement, HSH agreed to pay BLS a total sum of $6,749,556 (the "Settlement Payment") no later than one (1) business day after BLS delivers to HSH a signed copy of the BLS Agreement, as HSH had fallen significantly behind in the payment of consulting fees to BLS and HSH's core business had been shut down due to the actions of certain corporate officers and other employees unrelated to BLS.

The BLS Agreement also contains a mutual release whereby each HSH and BLS, agreed to release the other party on behalf of themselves, their predecessors, successors, direct and indirect parent companies, direct and indirect subsidiary companies, companies under common control with either party, affiliates, and assigns, including past, present and future officers, directors, shareholders, interest holders, members, partners, attorneys, agents, employees, managers, representatives (the "Released Parties" and each a "Released Party") from all known and unknown charges, complaints, claims, grievances, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, penalties, fees, wages, medical costs, pain and suffering, mental anguish, emotional distress, expenses (including attorneys' fees and costs actually incurred) and punitive damages, of any nature whatsoever, known or unknown which either of the Released Parties has, or may have had against the other Released Party, arising from (i) HSH's falling behind in the payment of consulting fees to BLS (ii) HSH's core business being shut down due to the actions of certain corporate officers and other employees (iii) any agreement between the Released Parties (iv) any other matter between the Released Parties or (v) any claims under federal, state or local law, rule or regulation (the "Release"). However, the Release does not waive or release any claims arising after the effective date of the BLS Agreement, including any claim for breach of the BLS Agreement or any indemnification rights under the BLS Agreement.

Additionally, the BLS Agreement also provides that HSH agreed to indemnify BLS in connection with any action, suit or proceeding, whether civil, criminal, administrative or investigative (a "Proceeding") to which BLS is made a party or threatened to be made a party, other than any Proceeding initiated by BLS or HSH related to any contest or dispute with respect to the BLS Agreement. Further, pursuant to the BLS agreement the parties agreed that unless required to do so by legal process, each party will not make disparaging statements or representations, either directly or indirectly, whether orally or in writing to any person whatsoever about the other party, or the other party's spouse, attorneys, or representatives or affiliates.

The foregoing description of the BLS Agreement does not purport to be complete and is qualified in its entirety by reference to the Form of BLS Agreement, which is filed as Exhibit 10.2 hereto and is incorporated by reference herein.

### Settlement and Release Agreement with Joshua Constantin

On March 5, 2023, HSH entered into a Settlement Agreement and Release with Joshua Constantin (the "Constantin Agreement"). Pursuant to the Constantin Agreement, HSH agreed to pay Mr. Constantin a total sum of $2,235,923 (the "Settlement Payment") no later than one (1) business day after Mr. Constantin delivers to HSH a signed copy of the Constantin Agreement, as HSH had fallen significantly behind in the payment of regular payroll, benefits and bonuses to Mr. Constantin and HSH's core business had been shut down due to the actions of certain corporate officers and other employees unrelated to Mr. Constantin.

The Constantin Agreement also contains a mutual release whereby each HSH and Mr. Constantin, agreed to release the other party on behalf of themselves, their predecessors, successors, direct and indirect parent companies, direct and indirect subsidiary companies, companies under common control with either party, affiliates, and assigns, including past, present and future officers, directors, shareholders, interest holders, members, partners, attorneys, agents, employees, managers, representatives (the "Released Parties" and each a "Released Party") from all known and unknown charges, complaints, claims, grievances, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, penalties, fees, wages, medical costs, pain and suffering, mental anguish, emotional distress, expenses (including attorneys' fees and costs actually incurred) and punitive damages, of any nature whatsoever, known or unknown which either of the Released Parties has, or may have had against the other Released Party, arising from (i) HSH's falling behind in the payment of regular payroll, benefits and bonuses to Mr. Constantin (ii) HSH's core business being shut down due to the actions of certain corporate officers and other employees (iii) any agreement between the Released Parties (iv) any other matter between the Released Parties or (v) any claims under federal, state or local law, rule or regulation (the "Release"). However, the Release does not waive or release any claims arising after the effective date of the Constantin Agreement, including any claim for breach of the Constantin Agreement or any indemnification rights under the Constantin Agreement.

3

Additionally, the Constantin Agreement also provides that HSH agreed to indemnify Mr. Constantin in connection with any action, suit or proceeding, whether civil, criminal, administrative or investigative (a "Proceeding") to which Mr. Constantin is made a party or threatened to be made a party, other than any Proceeding initiated by Mr. Constantin or HSH related to any contest or dispute with respect to the Constantin Agreement. Further, pursuant to the Constantin agreement the parties agreed that unless required to do so by legal process, each party will not make disparaging statements or representations, either directly or indirectly, whether orally or in writing to any person whatsoever about the other party, or the other party's spouse, attorneys, or representatives or affiliates.

The foregoing description of the Constantin Agreement does not purport to be complete and is qualified in its entirety by reference to the Form of Constantin Agreement, which is filed as Exhibit 10.3 hereto and is incorporated by reference herein.

**Item 8.01 Other Events.**

As of January 2023, HSH's core business was shut down due to the actions of certain corporate officers and other employees. The Company is currently seeking a strategic partnership in an effort to relaunch HSH's medical clinics. However, there can be no assurance that the foregoing can occur as planned or at all.

**Item 9.01 - Financial Statement and Exhibits.**

**(d) Exhibits**

The following exhibits are filed with this report:

| Exhibit No. | Description |
|---|---|
| 10.1* | Form of Settlement Agreement and Release dated March 5, 2023 with Stuart McMahen. |
| 10.2* | Form of Settlement Agreement and Release dated March 5, 2023 with Black Label Services, Inc. |
| 10.3* | Form of Settlement Agreement and Release dated March 5, 2023 with Joshua Constantin. |
| 104* | Cover Page Interactive Data File (formatted as Inline XBRL) |

--------------------
\*    Filed herewith.

4

## SIGNATURES

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

**Healthcare Solutions Management Group, Inc**

Date: March 10, 2023

/s/ Jonathan Loutzenhiser
Jonathan Loutzenhiser
Interim Chief Executive Officer and Interim
Chief Financial Officer

5

# SETTLEMENT AGREEMENT AND RELEASE

This Confidential Settlement Agreement and Release (this "**Agreement**") is entered into as of March 5th, 2023 by and between (a) Joshua Constantin ("**EMPLOYEE**") and (b) Healthcare Solution Holdings, Inc., a Delaware Corporation (the "**EMPLOYER**"), on behalf of itself, its parents, subsidiaries, and other corporate affiliates, and each of their respective present and former employees, officers, directors, owners, shareholders, and agents , individually and in their official capacities (collectively referred to as the "**EMPLOYER GROUP**"). Collectively, EMPLOYEE and EMPLOYER shall be referred to as the "**Parties**".

## BACKGROUND

WHEREAS, The Employee has served the company in the capacity of Corporate Comptroller since the inception of the business in September of 2017

WHEREAS, The Employee was given a promotion to Head of Commercial Real-Estate on December 1st, 2021.

WHEREAS, The Employee in either capacities as Corporate Comptroller or Head of Commercial Real-Estate never served the company as a member of the executive team, officer, director, and/or major shareholder.

WHEREAS, The Employer has fallen significantly behind in the payment of regular payroll, medical benefits, and bonuses to the Employee.

WHEREAS, The Employer's core business has been shut down due to the actions of certain corporate officers and other employees that were in no way under the control of or related to the Employee.

WHEREAS, The Employee faced unwarranted and significant negative media attention on behalf of the Employer, that was both unfair and detrimental to his personal character.

WHEREAS, The medica attention faced by the Employee on behalf of the Employer, was directly caused by the actions of other corporate officers and employees that were in no way under the control of or related to the Employee.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and intending to be legally bound hereby, EMPLOYEE and EMPLOYER hereby agree as follows:

## AGREED TERMS

1.     <u>Payment by EMPLOYER</u>. EMPLOYER will pay EMPLOYEE the total sum of <u>Two Million Two Hundred Thirty-Five Thousand Nine Hundred and Twenty-Three Dollars 00/100 (US $2,235,923.00)</u> (the "**Settlement Payment**") as provided herein. The Settlement Payment shall be paid by Bank Wire Transfer not later than the next business days after counsel for EMPLOYEE delivers an executed copy of this Agreement to counsel for EMPLOYER. The EMPLOYER shall provide an executed copy of this Agreement to counsel for EMPLOYEE not later than the date that EMPLOYER must pay the Settlement Payment.

The Parties acknowledge and agree that they are solely responsible for paying any attorneys' fees and costs they incurred and that neither Party nor its attorney(s) will seek any award of attorneys' fees or costs from the other Party, except as provided herein.

2.      Taxes. EMPLOYEE shall be solely responsible for, and is legally bound to make payment of, any taxes determined to be due and owing (including penalties and interest related thereto) by it to any federal, state, local, or regional taxing authority as a result of the Settlement Payment. The EMPLOYEE understands that the EMPLOYER has not made, and it does not rely upon, any representations regarding the tax treatment of the sums paid pursuant to this Agreement. Moreover, EMPLOYEE agrees to indemnify and hold EMPLOYER harmless in the event that any governmental taxing authority asserts against EMPLOYER any claim for unpaid taxes, failure to withhold taxes, penalties, or interest based upon the payment of the Settlement Payment.

3.      Mutual Release.

(a)     The Parties, on behalf of themselves, their predecessors, successors, direct and indirect parent companies, direct and indirect subsidiary companies, companies under common control with any of the foregoing, affiliates, and assigns, and its and their past, present, and future officers, directors, shareholders, interest holders, members, partners, attorneys, agents, employees, managers, representatives, assigns, and successors in interest, and all persons acting by, through, under, or in concert with them, and each of them, hereby release and discharge the other Party, together with their predecessors, successors, direct and indirect parent companies, direct and indirect subsidiary companies, companies under common control with any of the foregoing, affiliates and assigns and its and their past, present, and future officers, directors, shareholders, interest holders, members, partners, attorneys, agents, employees, managers, representatives, assigns, and successors in interest, and all persons acting by, through, under, or in concert with them, and each of them, from all known and unknown charges, complaints, claims, grievances, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, penalties, fees, wages, medical costs, pain and suffering, mental anguish, emotional distress, expenses (including attorneys' fees and costs actually incurred), and punitive damages, of any nature whatsoever, known or unknown, which either Party has, or may have had, against the other Party, whether or not apparent or yet to be discovered, or which may hereafter develop, for any acts or omissions related to or arising from:

(i)     the Employee in either capacities, as Corporate Comptroller or Head of Commercial Real-Estate, never served the company as a member of the executive team, officer, director, and/or major shareholder. The Employer has fallen significantly behind in the payment of regular payroll, medical benefits, and bonuses to the Employee. The Employer's core business has been shut down due to the actions of certain corporate officers and other employees that were in no way under the control of or related to the Employee. The Employee also faced unwarranted and significant negative media attention on behalf of the Employer, that was both unfair and detrimental to his personal character. The medica attention that was faced by the Employee on behalf of the Employer, was directly caused by

2

the actions of other corporate officers and employees that were in no way under the control of or related to the Employee (the "**Dispute**").

      (ii)    an agreement between the Parties;

      (iii)   any other matter between the Parties; and/or

      (iv)   any claims under federal, state, or local law, rule, or regulation.

    (b)    This Agreement resolves any claim for relief that is, or could have been alleged, no matter how characterized, including, without limitation, compensatory damages, damages for breach of contract, bad faith damages, reliance damages, liquidated damages, damages for humiliation and embarrassment, punitive damages, costs, and attorneys' fees related to or arising from the Dispute.

    (c)    Notwithstanding the above, this mutual release does not waive or release: (i) any claims arising after the Effective Date of this Agreement, including any claim for breach of this Agreement; or (ii) any indemnification rights, as set forth in paragraph 7 below, the EMPLOYEE has against the EMPLOYER GROUP.

    4.    <u>No Outstanding or Known Future Claims/Causes of Action</u>. Each Party affirms that it has not filed with any governmental agency or court any type of action or report against the other Party, and currently knows of no existing act or omission by the other Party that may constitute a claim or liability excluded from the release in paragraph 3 above.

    (a)    The Employee has not observed, nor has any information pertaining to any member of the Employer, in any unlawful conduct relating to the business of the Employer. If any of these statements are not true, the must describe in detail all occurrences of such conduct in Exhibit A attached here to and incorporated into this document.

    (b)    If any of these statements are not true and are not disclosed in Exhibit A, the Executive cannot sign this Agreement and must notify the Employer immediately in writing of the statements that are not true.

    5.    <u>Acknowledgment of Settlement</u>. The Parties, as broadly described in paragraph 3 above, acknowledge that (a) the consideration set forth in this Agreement, which includes, but is not limited to, the Settlement Payment, is in full settlement of all claims or losses of whatsoever kind or character that they have, or may ever have had, against the other Party, as broadly described in paragraph 3 above, including by reason of the Dispute and (b) by signing this Agreement, and accepting the consideration provided herein and the benefits of it, they are giving up forever any right to seek further monetary or other relief from the other Party, as broadly described in paragraph 3 above, for any acts or omissions up to and including the Effective Date, as set forth in paragraph 3, including, without limitation, the Dispute.

    6.    <u>No Admission of Liability</u>. The Parties acknowledge that the Settlement Payment was agreed upon as a compromise and final settlement of disputed claims and that payment of the Settlement Payment is not, and may not be construed as, an admission of liability by EMPLOYER and is not to be construed as an admission that EMPLOYER engaged in any wrongful, tortious, or

3

unlawful activity. EMPLOYER specifically disclaims and denies (a) any liability to EMPLOYEE and (b) engaging in any wrongful, tortious, or unlawful activity.

7.    Indemnification. In the event that the EMPLOYEE is made a party or threatened to be made a party to any action, suit, or proceeding, whether civil, criminal, administrative, or investigative (a "**Proceeding**"), other than any Proceeding initiated by the EMPLOYEE or the EMPLOYER related to any contest or dispute between the EMPLOYEE and the EMPLOYER or any of its affiliates with respect to this Agreement or the EMPLOYEE's employment, by reason of the fact that the EMPLOYEE is or was a director or officer of the EMPLOYER, EMPLOYER GROUP, or any affiliate of the EMPLOYER, or is or was serving at the request of the EMPLOYER as a director, officer, member, employee, or agent of another corporation or a partnership, joint venture, trust, or other enterprise, the EMPLOYEE shall be indemnified and held harmless by the EMPLOYER from and against any liabilities, costs, claims, and expenses, including all costs and expenses incurred in defense of any Proceeding (including attorneys' fees). Costs and expenses incurred by the EMPLOYEE in defense of such Proceeding (including attorneys' fees) shall be paid by the EMPLOYER in advance of the final disposition of such litigation upon receipt by the EMPLOYER of: (i) a written request for payment; (ii) appropriate documentation evidencing the incurrence, amount, and nature of the costs and expenses for which payment is being sought; and (iii) an undertaking adequate under applicable law made by or on behalf of the EMPLOYEE to repay the amounts so paid if it shall ultimately be determined that the EMPLOYEE is not entitled to be indemnified by the EMPLOYER under this Agreement.

8.    EMPLOYER Representations. The EMPLOYER specifically represents, warrants, and confirms that the EMPLOYER:

(a)    has not filed any claims, complaints, or actions of any kind against the EMPLOYEE with any federal, state, or local court or government or administrative agency;

(b)    has not engaged in any unlawful conduct relating to the business of the EMPLOYER.

9.    EMPLOYEE Representations. The EMPLOYEE specifically represents, warrants, and confirms that the EMPLOYEE:

(a)    has not filed any claims, complaints, or actions of any kind against the EMPLOYER GROUP with any federal, state, or local court or government or administrative agency;

(b)    has not engaged in any unlawful conduct relating to the business of the EMPLOYER.

10.    Confidentiality of Agreement. The Parties expressly understand and agree that this Agreement and its contents (including, but not limited to, the fact of payment and the amounts to be paid hereunder) shall remain CONFIDENTIAL and shall not be disclosed to any third party whatsoever, except the Parties' counsel, accountants, financial advisors, tax professionals retained by them, any federal, state, or local governmental taxing or regulatory authority, and the Parties' management, officers, and Board of Directors and except as required by law or order of court. Any

4

person identified in the preceding sentence to whom information concerning this Agreement is disclosed is bound by this confidentiality provision and the disclosing party shall be liable for any breaches of confidentiality by persons to whom they have disclosed information about this Agreement in accordance with this paragraph. Nothing contained in this paragraph shall prevent any Party from stating that the Parties have "amicably resolved all differences," provided, however, that in so doing, the Parties shall not disclose the fact or amount of any payments made or to be made hereunder and shall not disclose any other terms of this Agreement or the settlement described herein. If any subpoena, order, or discovery request (the **"Document Request"**) is received by any of the Parties hereto calling for the production of the Agreement, such Party shall promptly notify the other Party hereto prior to any disclosure of same. In such case, the subpoenaed Party shall: (a) make available as soon as practicable (and in any event prior to disclosure), for inspection and copying, a copy of the Agreement it intends to produce pursuant to the Document Request unless such disclosure is otherwise prohibited by law; and (b) to the extent possible, not produce anything in response to the Document Request for at least ten (10) business days following such notice. If necessary, the subpoenaed Party shall take appropriate actions to resist production, as permitted by law, so as to allow the Parties to try to reach agreement on what shall be produced. This paragraph is a material part of this Agreement.

11.     Non-Disparagement. The Parties agree that, unless required to do so by legal process, both Parties and the EMPLOYER GROUP will not make any disparaging statements or representations, either directly or indirectly, whether orally or in writing, by word or gesture, to any person whatsoever, about the other Party or the other Party's

(a)     spouse, attorneys, or representatives;

or

(b)     affiliates, or any of its directors, officers, employees, attorneys, agents, or representatives.

For purposes of this paragraph, a disparaging statement or representation is any communication which, if publicized to another, would cause or tend to cause the recipient of the communication to question the business condition, integrity, competence, good character, or product quality of the person or entity to whom the communication relates.

12.     Agreement is Legally Binding. The Parties intend this Agreement to be legally binding upon and shall inure to the benefit of each of them and their respective successors, assigns, executors, administrators, heirs, and estates. Moreover, the persons and entities referred to in paragraph 3 above, but not a Party, are third-party beneficiaries of this Agreement.

13.     Entire Agreement. The recitals set forth at the beginning of this Agreement are incorporated by reference and made a part of this Agreement. This Agreement constitutes the entire agreement and understanding of the Parties and supersedes all prior negotiations and/or agreements, proposed or otherwise, written or oral, concerning the subject matter hereof. Furthermore, no modification of this Agreement shall be binding unless in writing and signed by each of the parties hereto.

5

14.    <u>New or Different Facts: No Effect</u>. Except as provided herein, this Agreement shall be, and remain, in effect despite any alleged breach of this Agreement or the discovery or existence of any new or additional fact, or any fact different from that which either Party now knows or believes to be true. Notwithstanding the foregoing, nothing in this Agreement shall be construed as, or constitute, a release of any Party's rights to enforce the terms of this Agreement.

15.    <u>Interpretation</u>. Should any provision of this Agreement be declared or be determined by any court to be illegal or invalid, the validity of the remaining parts, terms, or provisions shall not be affected thereby and said illegal or invalid part, term, or provision shall be deemed not to be a part of this Agreement. The headings within this Agreement are purely for convenience and are not to be used as an aid in interpretation. Moreover, this Agreement shall not be construed against either Party as the author or drafter of the Agreement.

16.    <u>Governing Law, Jurisdiction, and Venue</u>. This Agreement, whether sounding in contract, tort, or statute, for all purposes shall be governed by and construed in accordance with the laws of New York without regard to any conflicts of laws principles that would require the laws of any other jurisdiction to apply. Any action or proceeding by either of the Parties to enforce this Agreement shall be brought in any state or federal court located in the state of New York, county of Suffolk. The Parties hereby irrevocably submit to the exclusive jurisdiction of these courts and waive the defense of inconvenient forum to the maintenance of any action or proceeding in such venue.

17.    <u>Reliance on Own Counsel</u>. In entering into this Agreement, the Parties acknowledge that they have relied upon the legal advice of their respective attorneys, who are the attorneys of their own choosing, that such terms are fully understood and voluntarily accepted by them, and that, other than the consideration set forth herein, no promises or representations of any kind have been made to them by the other Party. The Parties represent and acknowledge that in executing this Agreement they did not rely, and have not relied, upon any representation or statement, whether oral or written, made by the other Party or by that other Party's agents, representatives, or attorneys with regard to the subject matter, basis, or effect of this Agreement or otherwise.

18.    <u>Counterparts</u>. This Agreement may be executed by the Parties in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

19.    <u>Authority to Execute Agreement</u>. By signing below, each Party warrants and represents that the person signing this Agreement on its behalf has authority to bind that Party and that the Party's execution of this Agreement is not in violation of any by-law, covenants, and/or other restrictions placed upon them by their respective entities.

20.    <u>Effective Date</u>. The terms of the Agreement will be effective when an executed copy of this Agreement is delivered to said counsel for EMPLOYEE as described in paragraph 1 above (the "**Effective Date**").

**READ THE FOREGOING DOCUMENT CAREFULLY. IT INCLUDES A RELEASE OF KNOWN AND UNKNOWN CLAIMS.**

6

[SIGNATURE PAGE FOLLOWS]

7

# SETTLEMENT AGREEMENT AND RELEASE

This Confidential Settlement Agreement and Release (this "**Agreement**") is entered into as of March 5th, 2023 by and between (a) Stuart McMahen ("**GENERAL COUNSEL**") and (b) Healthcare Solution Holdings, Inc., a Delaware Corporation (the "**EMPLOYER**"), on behalf of itself, its parents, subsidiaries, and other corporate affiliates, and each of their respective present and former GENERAL COUNSELs, officers, directors, owners, shareholders, and agents , individually and in their official capacities (collectively referred to as the "**EMPLOYER GROUP**"). Collectively, the GENERAL COUNSEL and EMPLOYER shall be referred to as the "**Parties**".

## BACKGROUND

WHEREAS, The GENERAL COUNSEL has served the company in the capacity of General Counsel since May of 2022

WHEREAS, The Employer has fallen significantly behind in the payment of regular payroll, medical benefits, and bonuses to the GENERAL COUNSEL.

WHEREAS, The Employer's core business has be shut down due to the actions of certain corporate officers and other employees that were in no way under the control of or related to the GENERAL COUNSEL.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and intending to be legally bound hereby, GENERAL COUNSEL and EMPLOYER hereby agree as follows:

## AGREED TERMS

1.　　Payment by EMPLOYER. EMPLOYER will pay GENERAL COUNSEL the total sum of Four Hundred and Sixty-Five Thousand Dollars 00/100 (US $465,000.00) (the "**Settlement Payment**") as provided herein. The Settlement Payment shall be paid by Bank Wire Transfer not later than one (1) business day after counsel for the GENERAL COUNSEL delivers an executed copy of this Agreement to counsel for EMPLOYER. The EMPLOYER shall provide an executed copy of this Agreement to counsel for GENERAL COUNSEL not later than the date that EMPLOYER must pay the Settlement Payment.

　　　　The Parties acknowledge and agree that they are solely responsible for paying any attorneys' fees and costs they incurred and that neither Party nor its attorney(s) will seek any award of attorneys' fees or costs from the other Party, except as provided herein.

2.　　Taxes. GENERAL COUNSEL shall be solely responsible for, and is legally bound to make payment of, any taxes determined to be due and owing (including

penalties and interest related thereto) by it to any federal, state, local, or regional taxing authority as a result of the Settlement Payment. GENERAL COUNSEL understands that EMPLOYER has not made, and it does not rely upon, any representations regarding the tax treatment of the sums paid pursuant to this Agreement. Moreover, GENERAL COUNSEL agrees to indemnify and hold EMPLOYER harmless in the event that any governmental taxing authority asserts against EMPLOYER any claim for unpaid taxes, failure to withhold taxes, penalties, or interest based upon the payment of the Settlement Payment.

3.    Mutual Release.

(a)    The Parties, on behalf of themselves, their predecessors, successors, direct and indirect parent companies, direct and indirect subsidiary companies, companies under common control with any of the foregoing, affiliates, and assigns, and its and their past, present, and future officers, directors, shareholders, interest holders, members, partners, attorneys, agents, employees, managers, representatives, assigns, and successors in interest, and all persons acting by, through, under, or in concert with them, and each of them, hereby release and discharge the other Party, together with their predecessors, successors, direct and indirect parent companies, direct and indirect subsidiary companies, companies under common control with any of the foregoing, affiliates and assigns and its and their past, present, and future officers, directors, shareholders, interest holders, members, partners, attorneys, agents, employees, managers, representatives, assigns, and successors in interest, and all persons acting by, through, under, or in concert with them, and each of them, from all known and unknown charges, complaints, claims, grievances, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, penalties, fees, wages, medical costs, pain and suffering, mental anguish, emotional distress, expenses (including attorneys' fees and costs actually incurred), and punitive damages, of any nature whatsoever, known or unknown, which either Party has, or may have had, against the other Party, whether or not apparent or yet to be discovered, or which may hereafter develop, for any acts or omissions related to or arising from:

(i)    the Employer has fallen significantly behind in the payment of regular payroll, medical benefits, and bonuses to the GENERAL COUNSEL. The Employer's core business has been shut down due to the actions of certain corporate officers and other employees that were in no way under the control of or related to the GENERAL COUNSEL. (the "**Dispute**");

(ii)    an agreement between the Parties;

(iii)    any other matter between the Parties; and/or

2

(iv)   any claims under federal, state, or local law, rule, or regulation.

(b)   This Agreement resolves any claim for relief that is, or could have been alleged, no matter how characterized, including, without limitation, compensatory damages, damages for breach of contract, bad faith damages, reliance damages, liquidated damages, damages for humiliation and embarrassment, punitive damages, costs, and attorneys' fees related to or arising from the Dispute.

(c)   Notwithstanding the above, this mutual release does not waive or release: (i) any claims arising after the Effective Date of this Agreement, including any claim for breach of this Agreement; or (ii) any indemnification rights, as set forth in paragraph 7 below, the GENERAL COUNSEL has against the EMPLOYER GROUP.

4.   No Outstanding or Known Future Claims/Causes of Action. Each Party affirms that it has not filed with any governmental agency or court any type of action or report against the other Party, and currently knows of no existing act or omission by the other Party that may constitute a claim or liability excluded from the release in paragraph 3 above.

(a)   The Employee has not observed, nor has any information pertaining to any member of the Employer, any unlawful conduct relating to the business of the Employer. If any of these statements are not true, the Employee must describe in detail all occurrences of such conduct in Exhibit A attached here to and incorporated into this document.

(b)   If any of these statements are not true and are not disclosed in Exhibit A, the Executive cannot sign this Agreement and must notify the Employer immediately in writing of the statements that are not true.

5.   Acknowledgment of Settlement. The Parties, as broadly described in paragraph 3 above, acknowledge that (a) the consideration set forth in this Agreement, which includes, but is not limited to, the Settlement Payment, is in full settlement of all claims or losses of whatsoever kind or character that they have, or may ever have had, against the other Party, as broadly described in paragraph 3 above, including by reason of the Dispute and (b) by signing this Agreement, and accepting the consideration provided herein and the benefits of it, they are giving up forever any right to seek further monetary or other relief from the other Party, as broadly described in paragraph 3 above, for any acts or omissions up to and including the Effective Date, as set forth in paragraph 3, including, without limitation, the Dispute.

6.   No Admission of Liability. The Parties acknowledge that the Settlement Payment was agreed upon as a compromise and final settlement of disputed claims and that

3

payment of the Settlement Payment is not, and may not be construed as, an admission of liability by EMPLOYER and is not to be construed as an admission that EMPLOYER engaged in any wrongful, tortious, or unlawful activity. EMPLOYER specifically disclaims and denies (a) any liability to GENERAL COUNSEL and (b) engaging in any wrongful, tortious, or unlawful activity.

7.      Indemnification. In the event that the GENERAL COUNSEL is made a party or threatened to be made a party to any action, suit, or proceeding, whether civil, criminal, administrative, or investigative (a "**Proceeding**"), other than any Proceeding initiated by the GENERAL COUNSEL or the EMPLOYER related to any contest or dispute between the GENERAL COUNSEL and the EMPLOYER or any of its affiliates with respect to this Agreement or the GENERAL COUNSEL's employment, by reason of the fact that the GENERAL COUNSEL is or was a director or officer of the EMPLOYER, EMPLOYER GROUP, or any affiliate of the EMPLOYER, or is or was serving at the request of the EMPLOYER as a director, officer, member, GENERAL COUNSEL, or agent of another corporation or a partnership, joint venture, trust, or other enterprise, the GENERAL COUNSEL shall be indemnified and held harmless by the EMPLOYER from and against any liabilities, costs, claims, and expenses, including all costs and expenses incurred in defense of any Proceeding (including attorneys' fees). Costs and expenses incurred by the GENERAL COUNSEL in defense of such Proceeding (including attorneys' fees) shall be paid by the EMPLOYER in advance of the final disposition of such litigation upon receipt by the EMPLOYER of: (i) a written request for payment; (ii) appropriate documentation evidencing the incurrence, amount, and nature of the costs and expenses for which payment is being sought; and (iii) an undertaking adequate under applicable law made by or on behalf of the GENERAL COUNSEL to repay the amounts so paid if it shall ultimately be determined that the GENERAL COUNSEL is not entitled to be indemnified by the EMPLOYER under this Agreement.

8.      EMPLOYER Representations. The EMPLOYER specifically represents, warrants, and confirms that the EMPLOYER:

        (a)      has not filed any claims, complaints, or actions of any kind against the GENERAL COUNSEL with any federal, state, or local court or government or administrative agency;

        (b)      has not engaged in any unlawful conduct relating to the business of the EMPLOYER.

9.      GENERAL COUNSEL Representations. The GENERAL COUNSEL specifically represents, warrants, and confirms that the GENERAL COUNSEL:

4

(a) has not filed any claims, complaints, or actions of any kind against the EMPLOYER GROUP with any federal, state, or local court or government or administrative agency;

(b) has not engaged in any unlawful conduct relating to the business of the EMPLOYER.

10. <u>Confidentiality of Agreement</u>. The Parties expressly understand and agree that this Agreement and its contents (including, but not limited to, the fact of payment and the amounts to be paid hereunder) shall remain CONFIDENTIAL and shall not be disclosed to any third party whatsoever, except the Parties' counsel, accountants, financial advisors, tax professionals retained by them, any federal, state, or local governmental taxing or regulatory authority, and the Parties' management, officers, and Board of Directors and except as required by law or order of court. Any person identified in the preceding sentence to whom information concerning this Agreement is disclosed is bound by this confidentiality provision and the disclosing party shall be liable for any breaches of confidentiality by persons to whom they have disclosed information about this Agreement in accordance with this paragraph. Nothing contained in this paragraph shall prevent any Party from stating that the Parties have "amicably resolved all differences," provided, however, that in so doing, the Parties shall not disclose the fact or amount of any payments made or to be made hereunder and shall not disclose any other terms of this Agreement or the settlement described herein. If any subpoena, order, or discovery request (the "**Document Request**") is received by any of the Parties hereto calling for the production of the Agreement, such Party shall promptly notify the other Party hereto prior to any disclosure of same. In such case, the subpoenaed Party shall: (a) make available as soon as practicable (and in any event prior to disclosure), for inspection and copying, a copy of the Agreement it intends to produce pursuant to the Document Request unless such disclosure is otherwise prohibited by law; and (b) to the extent possible, not produce anything in response to the Document Request for at least ten (10) business days following such notice. If necessary, the subpoenaed Party shall take appropriate actions to resist production, as permitted by law, so as to allow the Parties to try to reach agreement on what shall be produced. This paragraph is a material part of this Agreement.

11. <u>Non-Disparagement</u>. The Parties agree that, unless required to do so by legal process, both Parties and the EMPLOYER GROUP will not make any disparaging statements or representations, either directly or indirectly, whether orally or in writing, by word or gesture, to any person whatsoever, about the other Party or the other Party's

(a) spouse, attorneys, or representatives;

or

5

(b)    affiliates, or any of its directors, officers, GENERAL COUNSELs, attorneys, agents, or representatives.

For purposes of this paragraph, a disparaging statement or representation is any communication which, if publicized to another, would cause or tend to cause the recipient of the communication to question the business condition, integrity, competence, good character, or product quality of the person or entity to whom the communication relates.

12.    Agreement is Legally Binding. The Parties intend this Agreement to be legally binding upon and shall inure to the benefit of each of them and their respective successors, assigns, executors, administrators, heirs, and estates. Moreover, the persons and entities referred to in paragraph 3 above, but not a Party, are third-party beneficiaries of this Agreement.

13.    Entire Agreement. The recitals set forth at the beginning of this Agreement are incorporated by reference and made a part of this Agreement. This Agreement constitutes the entire agreement and understanding of the Parties and supersedes all prior negotiations and/or agreements, proposed or otherwise, written or oral, concerning the subject matter hereof. Furthermore, no modification of this Agreement shall be binding unless in writing and signed by each of the parties hereto.

14.    New or Different Facts: No Effect. Except as provided herein, this Agreement shall be, and remain, in effect despite any alleged breach of this Agreement or the discovery or existence of any new or additional fact, or any fact different from that which either Party now knows or believes to be true. Notwithstanding the foregoing, nothing in this Agreement shall be construed as, or constitute, a release of any Party's rights to enforce the terms of this Agreement.

15.    Interpretation. Should any provision of this Agreement be declared or be determined by any court to be illegal or invalid, the validity of the remaining parts, terms, or provisions shall not be affected thereby and said illegal or invalid part, term, or provision shall be deemed not to be a part of this Agreement. The headings within this Agreement are purely for convenience and are not to be used as an aid in interpretation. Moreover, this Agreement shall not be construed against either Party as the author or drafter of the Agreement.

16.    Governing Law, Jurisdiction, and Venue. This Agreement, whether sounding in contract, tort, or statute, for all purposes shall be governed by and construed in accordance with the laws of New York without regard to any conflicts of laws principles that would require the laws of any other jurisdiction to apply. Any action or proceeding by either of the Parties to enforce this Agreement shall be brought in any state or federal

6

court located in the state of New York, county of Suffolk. The Parties hereby irrevocably submit to the exclusive jurisdiction of these courts and waive the defense of inconvenient forum to the maintenance of any action or proceeding in such venue.

17.    Reliance on Own Counsel. In entering into this Agreement, the Parties acknowledge that they have relied upon the legal advice of their respective attorneys, who are the attorneys of their own choosing, that such terms are fully understood and voluntarily accepted by them, and that, other than the consideration set forth herein, no promises or representations of any kind have been made to them by the other Party. The Parties represent and acknowledge that in executing this Agreement they did not rely, and have not relied, upon any representation or statement, whether oral or written, made by the other Party or by that other Party's agents, representatives, or attorneys with regard to the subject matter, basis, or effect of this Agreement or otherwise.

18.    Counterparts. This Agreement may be executed by the Parties in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

19.    Authority to Execute Agreement. By signing below, each Party warrants and represents that the person signing this Agreement on its behalf has authority to bind that Party and that the Party's execution of this Agreement is not in violation of any by-law, covenants, and/or other restrictions placed upon them by their respective entities.

20.    Effective Date. The terms of the Agreement will be effective when an executed copy of this Agreement is delivered to said counsel for GENERAL COUNSEL as described in paragraph 1 above (the "**Effective Date**").

**READ THE FOREGOING DOCUMENT CAREFULLY. IT INCLUDES A RELEASE OF KNOWN AND UNKNOWN CLAIMS.**

[SIGNATURE PAGE FOLLOWS]

7

# EXHIBIT 2 TO BENTLEY DECLARATION

| Fill in this information to identify the case: |
| --- |
| United States Bankruptcy Court for the: |
| District of  Delaware |
| (State) |
| Case number (*if known*): _____ Chapter  7 |

☐ Check if this is an
amended filing

## Official Form 205

# Involuntary Petition Against a Non-Individual

**12/15**

Use this form to begin a bankruptcy case against a non-individual you allege to be a debtor subject to an involuntary case. If you want to begin a case against an individual, use the *Involuntary Petition Against an Individual* (Official Form 105). Be as complete and accurate as possible. If more space is needed, attach any additional sheets to this form. On the top of any additional pages, write debtor's name and case number (if known).

### Part 1:   Identify the Chapter of the Bankruptcy Code Under Which Petition Is Filed

**1. Chapter of the Bankruptcy Code**

*Check one:*

☒ Chapter 7
☐ Chapter 11

### Part 2:   Identify the Debtor

**2. Debtor's name**

  Healthcare Solutions Management Group, Inc.

**3. Other names you know the debtor has used in the last 8 years**

Include any assumed names, trade names, or *doing business as* names.

_____

_____

_____

**4. Debtor's federal Employer Identification Number (EIN)**

☐ Unknown

3  8  – 3 7 6      7  3   5 7
EIN

**5. Debtor's address**

**Principal place of business**

  26 Reynolds Street
Number        Street

_____

  Springhill _____     LA     71075
City                              State    ZIP Code

  Webster Parish
County

**Mailing address, if different**

_____
Number        Street

_____
P.O. Box

_____
City                              State    ZIP Code

**Location of principal assets, if different from principal place of business**

_____
Number        Street

_____
City                              State    ZIP Code

| Debtor | Healthcare Solutions Management Group, Inc. | Case number (if known) _____ |
|---|---|---|
| | Name | |

---

**6. Debtor's website** (URL)    N/A. Debtor apparently does not maintain a website at this time.

---

**7. Type of debtor**

☒ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))

☐ Partnership (excluding LLP)

☐ Other type of debtor. Specify: _____

---

**8. Type of debtor's business**

*Check one:*

☒ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

☐ None of the types of business listed.

☐ Unknown type of business.

---

**9. To the best of your knowledge, are any bankruptcy cases pending by or against any partner or affiliate of this debtor?**

☒ No

☐ Yes. Debtor_____ Relationship _____

District_____ Date filed_____ Case number, if known_____
                                        MM / DD / YYYY

Debtor_____ Relationship _____

District_____ Date filed_____ Case number, if known_____
                                        MM / DD / YYYY

---

**Part 3:    Report About the Case**

---

**10. Venue**

*Check one:*

☒ Over the last 180 days before the filing of this bankruptcy, the debtor had a domicile, principal place of business, or principal assets in this district longer than in any other district.

☐ A bankruptcy case concerning debtor's affiliates, general partner, or partnership is pending in this district.

---

**11. Allegations**

Each petitioner is eligible to file this petition under 11 U.S.C. § 303(b).

The debtor may be the subject of an involuntary case under 11 U.S.C. § 303(a).

*At least one box must be checked:*

☒ The debtor is generally not paying its debts as they become due, unless they are the subject of a bona fide dispute as to liability or amount.

☐ Within 120 days before the filing of this petition, a custodian, other than a trustee, receiver, or an agent appointed or authorized to take charge of less than substantially all of the property of the debtor for the purpose of enforcing a lien against such property, was appointed or took possession.

---

**12. Has there been a transfer of any claim against the debtor by or to any petitioner?**

☒ No

☐ Yes. Attach all documents that evidence the transfer and any statements required under Bankruptcy Rule 1003(a).

---

| Debtor | Healthcare Solutions Management Group, Inc. | Case number (if known) | |
|---|---|---|---|
| | Name | | |

| 13. **Each petitioner's claim** | Name of petitioner | Nature of petitioner's claim | Amount of the claim above the value of any lien |
|---|---|---|---|
| | Millrock Investment Fund 1, LLC | *** | $888,914 |
| | William T. Carrigan | *** | $32,718.05 |
| | RWDI Maplewood, L.P. | *** | $369,423.18 |
| | All American Storage, LLC | *** | $34,672.81 |
| | 934 Hollywood, L.L.C. | *** | $30,331.24 |
| | Happiness LLC | *** | $376,197.41 |
| | ACM Columbia LLC | *** | $148,905.24 |
| | Crawford Family Trust | *** | $190,376.13 |
| | Mark Machlis | *** | $63,893.62 |

*** *See,* for nature of each petitioner's claim, concurrently filed Motion of Petitioning Creditors for Order Directing Appointment of Interim Trustee Under Section 303(g) of the Bankruptcy Code

Total of petitioners' claims    $2,135,431.68

**If more space is needed to list petitioners, attach additional sheets. Write the alleged debtor's name and the case number, if known, at the top of each sheet. Following the format of this form, set out the information required in Parts 3 and 4 of the form for each additional petitioning creditor, the petitioner's claim, the petitioner's representative, and the petitioner's attorney. Include the statement under penalty of perjury set out in Part 4 of the form, followed by each additional petitioner's (or representative's) signature, along with the signature of the petitioner's attorney.**

## Part 4:    Request for Relief

**WARNING** -- Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

Petitioners request that an order for relief be entered against the debtor under the chapter of 11 U.S.C. specified in this petition. If a petitioning creditor is a corporation, attach the corporate ownership statement required by Bankruptcy Rule 1010(b). If any petitioner is a foreign representative appointed in a foreign proceeding, attach a certified copy of the order of the court granting recognition.

I have examined the information in this document and have a reasonable belief that the information is true and correct.

| Debtor | Healthcare Solutions Management Group, Inc. | Case number (if known) |
|---|---|---|
| | Name | |

**Petitioners or Petitioners' Representative**

**Name and mailing address of petitioner**

Millrock Investment Fund 1, LLC
Name

1064 S. North County Blvd, Suite 350
Number Street

Pleasant Grove          Utah          84062
City                    State         ZIP Code

**Name and mailing address of petitioner's representative, if any**

Kevin G. Long
Name

1064 S. North County Blvd, Suite 350
Number Street

Pleasant Grove          Utah          84062
City                    State         ZIP Code

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   09 / 07 / 2023
              MM / DD / YYYY

✖ /s/ Kevin G. Long, Manager
Signature of petitioner or representative, including representative's title

**Attorneys**

Christopher Viceconte
Printed name

Gibbons P.C.
Firm name, if any

300 Delaware Avenue, Suite 1015
Number Street

Wilmington          DE          19801-1671
City                State       ZIP Code

Contact phone 302-518-6300          Email CViceconte@gibbonslaw.com

Bar number    5568

State         Delaware

✖ /s/ Christopher Viceconte  (No. 5568)
Signature of attorney

Date signed    09 /15 / 2023
               MM / DD / YYYY

| Debtor | Healthcare Solutions Management Group, Inc. | Case number (if known) |
|---|---|---|
| | Name | |

**Name and mailing address of petitioner**

William T. Carrigan
Name

8091 S. Mountain Oaks Circle
Number Street

Cottonwood Heights     Utah     84121
City     State     ZIP Code

**Name and mailing address of petitioner's representative, if any**

_____
Name

_____
Number Street

_____
City     State     ZIP Code

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   09 / 11 / 2023
MM / DD / YYYY

✖ /s/ William T. Carrigan
Signature of petitioner or representative, including representative's title

**Attorneys**

Christopher Viceconte
Printed name

Gibbons P.C.
Firm name, if any

300 Delaware Avenue, Suite 1015
Number Street

Wilmington     DE     19801-1671
City     State     ZIP Code

Contact phone 302-518-6300    Email CViceconte@gibbonslaw.com

Bar number   5568

State     Delaware

✖ /s/ Christopher Viceconte  (No. 5568)
Signature of attorney

Date signed    09 / 15 / 2023
MM / DD / YYYY

---

**Name and mailing address of petitioner**

RWDI Maplewood, L.P.
Name

32932 Pacific Coast Hwy, 14-388
Number Street

Dana Point     California     92629
City     State     ZIP Code

**Name and mailing address of petitioner's representative, if any**

Scott McCarter
Name

32932 Pacific Coast Hwy, 14-388
Number Street

Dana Point     California     92629
City     State     ZIP Code

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   09 / 11 / 2023
MM / DD / YYYY

✖ /s/ Scott McCarter, Manager of G.P.
Signature of petitioner or representative, including representative's title

**Attorneys**

Christopher Viceconte
Printed name

Gibbons P.C.
Firm name, if any

300 Delaware Avenue, Suite 1015
Number Street

Wilmington     DE     19801-1671
City     State     ZIP Code

Contact phone 302-518-6300    Email CViceconte@gibbonslaw.com

Bar number   5568

State     Delaware

✖ /s/ Christopher Viceconte (No. 5568)
Signature of attorney

Date signed    09 / 15 / 2023
MM / DD / YYYY

| Debtor | Healthcare Solutions Management Group, Inc. | Case number (if known) |
|---|---|---|
| | Name | |

**Name and mailing address of petitioner**

All American Storage, LLC
Name

8091 S. Mountain Oaks Circle
Number Street

| Cottonwood Heights | Utah | 84121 |
|---|---|---|
| City | State | ZIP Code |

**Name and mailing address of petitioner's representative, if any**

William T. Carrigan
Name

8091 S. Mountain Oaks Circle
Number Street

| Cottonwood Heights | Utah | 84121 |
|---|---|---|
| City | State | ZIP Code |

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  09 / 11 / 2023
MM / DD / YYYY

✖  /s/ William T. Carrigan, Owner / Managing Member
Signature of petitioner or representative, including representative's title

**Attorneys**

Christopher Viceconte
Printed name

Gibbons P.C.
Firm name, if any

300 Delaware Avenue, Suite 1015
Number Street

| Wilmington | DE | 19801-1671 |
|---|---|---|
| City | State | ZIP Code |

Contact phone 302-518-6300    Email CViceconte@gibbonslaw.com

Bar number    5568

State    Delaware

✖  /s/ Christopher Viceconte  (No. 5568)
Signature of attorney

Date signed    09 / 15 / 2023
MM / DD / YYYY

---

**Name and mailing address of petitioner**

934 Hollywood, L.L.C.
Name

7613 S. Prospector Drive
Number Street

| Salt Lake City | Utah | 84121 |
|---|---|---|
| City | State | ZIP Code |

**Name and mailing address of petitioner's representative, if any**

Mark Machlis
Name

7613 S. Prospector Drive
Number Street

| Salt Lake City | Utah | 84121 |
|---|---|---|
| City | State | ZIP Code |

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  09 / 08 / 2023
MM / DD / YYYY

✖  /s/ Mark Machlis, Managing Member
Signature of petitioner or representative, including representative's title

**Attorneys**

Christopher Viceconte
Printed name

Gibbons P.C.
Firm name, if any

300 Delaware Avenue, Suite 1015
Number Street

| Wilmington | DE | 19801-1671 |
|---|---|---|
| City | State | ZIP Code |

Contact phone 302-518-6300    Email CViceconte@gibbonslaw.com

Bar number    5568

State    Delaware

✖  /s/ Christopher Viceconte (No. 5568)
Signature of attorney

Date signed    09 / 15 / 2023
MM / DD / YYYY

| Debtor | Healthcare Solutions Management Group, Inc. | Case number (if known) |
|---|---|---|
| | Name | |

**Name and mailing address of petitioner**

Happiness LLC
Name

3375 W. Mount Ellen Way, PC307
Number Street

| Taylorsville | Utah | 84129 |
|---|---|---|
| City | State | ZIP Code |

**Name and mailing address of petitioner's representative, if any**

Gabor Koltai
Name

3375 W. Mount Ellen Way, PC307
Number Street

| Taylorsville | Utah | 84129 |
|---|---|---|
| City | State | ZIP Code |

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   09 / 07 / 2023
              MM / DD / YYYY

✖ /s/ Gabor Koltai, Managing Owner
Signature of petitioner or representative, including representative's title

**Attorneys**

Christopher Viceconte
Printed name

Gibbons P.C.
Firm name, if any

300 Delaware Avenue, Suite 1015
Number Street

| Wilmington | DE | 19801-1671 |
|---|---|---|
| City | State | ZIP Code |

Contact phone 302-518-6300      Email CViceconte@gibbonslaw.com

Bar number     5568

State          Delaware

✖ /s/ Christopher Viceconte (No. 5568)
Signature of attorney

Date signed        09 / 15 / 2023
                   MM / DD / YYYY

---

**Name and mailing address of petitioner**

ACM Columbia LLC
Name

c/o Crown Properties, 1650 Murfreesboro Rd., Ste. 224
Number Street

| Franklin | TN | 37067-5080 |
|---|---|---|
| City | State | ZIP Code |

**Name and mailing address of petitioner's representative, if any**

Andrew Braine
Name

Crown Properties, 1650 Murfreesboro Rd., Ste. 224
Number Street

| Franklin | TN | 37067-5080 |
|---|---|---|
| City | State | ZIP Code |

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   09 / 13 / 2023
              MM / DD / YYYY

✖ /s/ Andrew Braine, President
Signature of petitioner or representative, including representative's title

**Attorneys**

Christopher Viceconte
Printed name

Gibbons P.C.
Firm name, if any

300 Delaware Avenue, Suite 1015
Number Street

| Wilmington | DE | 19801-1671 |
|---|---|---|
| City | State | ZIP Code |

Contact phone 302-518-6300      Email CViceconte@gibbonslaw.com

Bar number     5568

State          Delaware

✖ /s/ Christopher Viceconte (No. 5568)
Signature of attorney

Date signed        09 / 15 / 2023

                   MM / DD / YYYY

| Debtor | Healthcare Solutions Management Group, Inc. | Case number (if known) |
|---|---|---|
| | Name | |

**Name and mailing address of petitioner**

Crawford Family Trust
Name

9291 Darrow Drive
Number Street

Huntington Beach        CA        92646
City        State        ZIP Code

**Name and mailing address of petitioner's representative, if any**

J. Kirk Crawford
Name

9291 Darrow Drive
Number Street

Huntington Beach        CA        92646
City        State        ZIP Code

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    09 / 07 / 2023
MM / DD / YYYY

✖ /s/ J. Kirk Crawford, Trustee
Signature of petitioner or representative, including representative's title

**Attorneys**

Christopher Viceconte
Printed name

Gibbons P.C.
Firm name, if any

300 Delaware Avenue, Suite 1015
Number Street

Wilmington        DE        19801-1671
City        State        ZIP Code

Contact phone 302-518-6300        Email CViceconte@gibbonslaw.com

Bar number    5568

State        Delaware

✖ /s/ Christopher Viceconte (No. 5568)
Signature of attorney

Date signed    09 / 15 / 2023
MM / DD / YYYY

---

**Name and mailing address of petitioner**

Mark Machlis
Name

7613 S. Prospector Drive
Number Street

Salt Lake City        Utah        84121
City        State        ZIP Code

**Name and mailing address of petitioner's representative, if any**

N/A
Name

N/A
Number Street

N/A
City        State        ZIP Code

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    09 / 08 / 2023
MM / DD / YYYY

✖ /s/ Mark Machlis
Signature of petitioner or representative, including representative's title

**Attorneys**

Christopher Viceconte
Printed name

Gibbons P.C.
Firm name, if any

300 Delaware Avenue, Suite 1015
Number Street

Wilmington        DE        19801-1671
City        State        ZIP Code

Contact phone 302-518-6300        Email CViceconte@gibbonslaw.com

Bar number    5568

State        Delaware

✖ /s/ Christopher Viceconte (No. 5568)
Signature of attorney

Date signed    09 / 15 / 2023
MM / DD / YYYY

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| Healthcare Solutions Management Group, Inc., | Case No. |
| Involuntary Chapter 7 Debtor. | |

## CORPORATE OWNERSHIP STATEMENT

Pursuant to Rules 1010(b) and 7007.1 of the Federal Rules of Bankruptcy Procedure, Petitioning Creditor 934 Hollywood, L.L.C. ("934 Hollywood"), through its undersigned counsel, hereby discloses that (1) it does not have a parent corporation: and (2) there is no publicly held corporation that owns 10% or more of 934 Hollywood's membership interests.

Dated this 15th day of September, 2023.

GIBBONS P.C.

*/s/ Christopher Viceconte*
Christopher Viceconte (No. 5568)
300 Delaware Avenue, Suite 1015
Wilmington, Delaware 19801-1671
(302) 518-6322
cviceconte@gibbonslaw.com

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| Healthcare Solutions Management Group, Inc., | Case No. |
| Involuntary Chapter 7 Debtor. | |

## CORPORATE OWNERSHIP STATEMENT

Pursuant to Rules 1010(b) and 7007.1 of the Federal Rules of Bankruptcy Procedure,

Petitioning Creditor ACM Columbia LLC ("ACM Columbia"), through its undersigned counsel,

hereby discloses that (1) its parent corporation is Crown Properties, Incorporated; and (2) there is

no publicly held corporation that owns 10% or more of ACM Columbia's membership interests.

Dated this 15th day of September, 2023.

GIBBONS P.C.

*/s/ Christopher Viceconte*
Christopher Viceconte
300 Delaware Avenue, Suite 1015
Wilmington, Delaware 19801-1671
(302) 518-6322
cviceconte@gibbonslaw.com

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| Healthcare Solutions Management Group, Inc., | Case No. |
| Involuntary Chapter 7 Debtor. | |

## <u>CORPORATE OWNERSHIP STATEMENT</u>

Pursuant to Rules 1010(b) and 7007.1 of the Federal Rules of Bankruptcy Procedure, Petitioning Creditor All American Storage, LLC ("All American"), through its undersigned counsel, hereby discloses that (1) it does not have a parent corporation: and (2) there is no publicly held corporation that owns 10% or more of All American's membership interests.

Dated this 15th day of September, 2023.

GIBBONS P.C.

*/s/ Christopher Viceconte*
Christopher Viceconte (No. 5568)
300 Delaware Avenue, Suite 1015
Wilmington, Delaware 19801-1671
(302) 518-6322
cviceconte@gibbonslaw.com

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| Healthcare Solutions Management Group, Inc., | Case No. |
| Involuntary Chapter 7 Debtor. | |

## CORPORATE OWNERSHIP STATEMENT

Pursuant to Rules 1010(b) and 7007.1 of the Federal Rules of Bankruptcy Procedure, Petitioning Creditor Crawford Family Trust ("Crawford"), through its undersigned counsel, hereby discloses that (1) it does not have a parent corporation: and (2) there is no publicly held corporation that owns 10% or more of the ownership interests in Crawford.

Dated this 15th day of September, 2023.

GIBBONS P.C.

*/s/ Christopher Viceconte*
Christopher Viceconte (No. 5568)
300 Delaware Avenue, Suite 1015
Wilmington, Delaware 19801-1671
(302) 518-6322
cviceconte@gibbonslaw.com

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| Healthcare Solutions Management Group, Inc., | Case No. |
| Involuntary Chapter 7 Debtor. | |

## CORPORATE OWNERSHIP STATEMENT

Pursuant to Rules 1010(b) and 7007.1 of the Federal Rules of Bankruptcy Procedure, Petitioning Creditor Happiness LLC ("Happiness"), through its undersigned counsel, hereby discloses that (1) it does not have a parent corporation: and (2) there is no publicly held corporation that owns 10% or more of Happiness's membership interests.

Dated this 15th day of September, 2023.

GIBBONS P.C.

*/s/ Christopher Viceconte*
Christopher Viceconte (No. 5568)
300 Delaware Avenue, Suite 1015
Wilmington, Delaware 19801-1671
(302) 518-6322
cviceconte@gibbonslaw.com

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| Healthcare Solutions Management Group, Inc., | Case No. |
| Involuntary Chapter 7 Debtor. | |

## <u>CORPORATE OWNERSHIP STATEMENT</u>

Pursuant to Rules 1010(b) and 7007.1 of the Federal Rules of Bankruptcy Procedure,

Petitioning Creditor Millrock Investment Fund 1, LLC ("Millrock"), through its undersigned

counsel, hereby discloses that (1) it does not have a parent corporation: and (2) there is no

publicly held corporation that owns 10% or more of Millrock's membership interests.

Dated this 15th day of September, 2023.

GIBBONS P.C.

*/s/ Christopher Viceconte*
Christopher Viceconte (No. 5568)
300 Delaware Avenue, Suite 1015
Wilmington, Delaware 19801-1671
(302) 518-6322
cviceconte@gibbonslaw.com

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| Healthcare Solutions Management Group, Inc., | Case No. |
| Involuntary Chapter 7 Debtor. | |

## CORPORATE OWNERSHIP STATEMENT

Pursuant to Rules 1010(b) and 7007.1 of the Federal Rules of Bankruptcy Procedure,

Petitioning Creditor RWDI Maplewood, L.P. ("Maplewood"), through its undersigned counsel,

hereby discloses that (1) it does not have a parent corporation: and (2) there is no publicly held

corporation that owns 10% or more of Maplewood's interests.

Dated this 15th day of September, 2023.

GIBBONS P.C.

/s/ Christopher Viceconte
Christopher Viceconte (No. 5568)
300 Delaware Avenue, Suite 1015
Wilmington, Delaware 19801-1671
(302) 518-6322
cviceconte@gibbonslaw.com

# EXHIBIT 3 TO BENTLEY DECLARATION

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:

HEALTHCARE SOLUTIONS
MANAGEMENT GROUP, INC.,

                Involuntary Chapter 7 Debtor.

Chapter 7

Case No. 23-11458-JTD

**Re: D.I. 1**

<u>Involuntary Debtor's Last Known Address</u>: 26 Reynolds Street, Springhill, Louisiana 71075

<u>Involuntary Debtor's Tax-Identification (EIN) Number</u>: 38-3767357

## <u>ORDER FOR RELIEF IN AN INVOLUNTARY CASE</u>

        On consideration of the petition filed on September 15, 2023, against the above-named involuntary debtor [D.I. 1], an order for relief under chapter 7 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (the "<u>Bankruptcy Code</u>") be and hereby is **GRANTED**.

**Dated: December 19th, 2023**
**Wilmington, Delaware**

**JOHN T. DORSEY**
**UNITED STATES BANKRUPTCY JUDGE**

# EXHIBIT 4 TO BENTLEY DECLARATION

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| HEALTHCARE SOLUTIONS | ) | Case No. 23-11458 (JTD) |
| MANAGEMENT GROUP, INC., | ) | |
| | ) | |
| Debtor. | ) | **Re:  D.I. 34** |

## <u>ORDER DISMISSING CASE</u>

The Court entered an Order on June 3, 2024 (D.I. 34), compelling the Debtor to file its Schedules of Assets and Liabilities, Statement of Financial Affairs and Creditor Matrix within fourteen days.  As of this date, Debtor has not complied with the terms of the Court's order.

IT IS THEREFORE ORDERED the case is DISMISSED.


Dated:  June 20, 2024

_____
JOHN T. DORSEY, U.S.B.J.

# Notice Recipients

| | | |
|---|---|---|
| District/Off: 0311–1 | User: admin | Date Created: 6/20/2024 |
| Case: 23–11458–JTD | Form ID: pdfodc | Total: 28 |

**Recipients of Notice of Electronic Filing:**

| | | |
|---|---|---|
| ust | U.S. Trustee | USTPRegion03.WL.ECF@USDOJ.GOV |
| tr | David W. Carickhoff | carickhoff@chipmanbrown.com |
| aty | Bentley Tolk | btolk@parrbrown.com |
| aty | Christopher Vicecont e | cviceconte@gibbonslaw.com |
| aty | Dale E. Barney | dbarney@gibbonslaw.com |
| aty | David W. Carickhoff | carickhoff@chipmanbrown.com |
| aty | Katharina Earle | kearle@gibbonslaw.com |

TOTAL: 7

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**

| | |
|---|---|
| db | Healthcare Solutions Management Group, Inc.   26 Reynolds Street   Springhill, LA 71075 |
| cr | Millrock Investment Fund I, LLC   1064 S. North County Blvd.   Suite 350   Pleasant Grove, UT 84062 |
| cr | William T. Carrigan   8091 S. Mountain Oaks Circle   Cottonwood Heights, UT 84121 |
| cr | RWDI Maplewood L.P.   32932 Pacific Coast Hwy, 14–388   Dana Point, CA 92629 |
| cr | All American Storage, LLC   8091 S. Mountain Oaks Circle   Cottonwood Heights, UT 84121 |
| cr | 934 Hollywood, L.L.C.   7613 S. Prospector Drive   Salt Lake City, UT 84121 |
| cr | Happiness LLC   3375 W. Mount Ellen Way, PC307   Taylorsville, UT 84129 |
| cr | ACM Columbia LLC   c/o Crown Properties   1650 Murfreesboro Rd   Ste 224   Franklin, TN 37067–5080 |
| cr | Crawford Family Trust   9291 Darrow Drive   Huntington Beach, CA 92646 |
| cr | Mark Machlis   7613 S. Prospector Drive   Salt Lake City, UT 84121 |
| aty | Rick Rose   Parr Brown Gee & Loveless   101 South 200 East   Suite 700   Salt Lake City, UT 84111 |
| aty | Rick Rose   Parr Brown Gee & Loveless   101 South 200 East   Suite 700   Salt Lake City, UT 84111 UNITED STATES |
| aty | Terry E. Welch   Parr Brown Gee & Loveless   101 South 200 East   Suite 700   Salt Lake City, UT 84111 UNITED STATES |
| 18950978 | ACM Columbia LLC   1650 Murfreesboro Road   Suite 224   Franklin, TN 37067 |
| 18823862 | CAMS Realty, LLC, et al. (see attached judgment)   Mary Street / CAMS Realty   2015 W. Grove Pkwy, Suite J   Pleasant Grove, UT 84062 |
| 18823861 | Charles T. Coleman   Wright, Lindsey & Jennings   200 W. Capitol, Suite 2300   Little Rock, AR 72201 |
| 18971317 | Hilda Arline Devlin, et. al.   8680 Quail Ridge Drive   Nampa, ID 83686 |
| 18971098 | Millrock Investment Fund 1, LLC   Dale E.. Barney   Gibbons PC   One Gateway Center   Newark, NJ 07102–5310 |
| 18971094 | Nancy Mulick, personal representative, et. al.   91645 Overseas Highway   Tavernier, FL 33070 |
| 18950977 | R. Mark Donnell, Jr.   1650 Murfreesboro Road   Suite 224   Franklin, TN 37067 |
| 18976424 | Secure Self Storage,LLC by Jose & Teena Rementeria   543 Pierce Road   Medford, OR 97504 |

TOTAL: 21

**EXHIBIT D**

**EXHIBIT D**

**EXHIBIT D**

Terry E. Welch (5819)
Bentley J. Tolk (6665)
Rodger M. Burge (8582)
**PARR BROWN GEE & LOVELESS**
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Telephone: (801) 532-7840
Facsimile: (801) 532-7750
twelch@parrbrown.com
btolk@parrbrown.com
rburge@parrbrown.com

*Attorneys for Plaintiff Millrock Investment Fund 1, LLC*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MILLROCK INVESTMENT FUND 1, LLC, <br><br> Plaintiff, <br><br> v. <br><br> HEALTHCARE SOLUTIONS MANAGEMENT GROUP, INC.; HEALTHCARE SOLUTIONS HOLDINGS INC.; LANDES CAPITAL MANAGEMENT, LLC; LANDES AND COMPAGNIE TRUST PRIVE KB; JOSHUA CONSTANTIN; JUSTIN SMITH; STUART MCMAHEN; and BLACK LABEL SERVICES, INC., <br><br> Defendants. | **MILLROCK'S FIRST SET OF INTERROGATORIES, REQUESTS FOR PRODUCTION OF DOCUMENTS, AND REQUESTS FOR ADMISSION TO DEFENDANTS JOSHUA CONSTANTIN AND STUART MCMAHEN** <br><br> Case No. 2:23-CV-00157-RJS-DAO <br><br> Chief District Judge Robert J. Shelby <br><br> Magistrate Judge Daphne A. Oberg |

Plaintiff Millrock Investment Fund 1, LLC ("Millrock"), by and through its counsel of

record, hereby requests that Defendants Joshua Constantin ("Constantin") and Stuart McMahen

("McMahen") (collectively, "Defendants") fully respond to the following Interrogatories,

Requests for Production of Documents and Things, and Requests for Admission within thirty

(30) days after service hereof and produce for inspection and copying at the offices of Parr

Brown Gee & Loveless, 101 South 200 East, Suite 700, Salt Lake City, Utah 84111, each

document and thing identified or referred to in the Requests for Production of Documents and

Things. **Please note, for the requests for admission, a matter is admitted unless, within 30**

**days after being served, you serve on Millrock a written answer or objection addressed to**

**the matter and signed by you or your attorney.**

## INSTRUCTIONS

1.      These interrogatories, requests for production, and requests for admission are

continuing in nature and must be timely supplemented (a) with any information or documents

subsequently identified or obtained and (b) to reflect any change in circumstances that may

render Defendants' responses incomplete, inaccurate, or misleading in any way.

2.      All documents and electronically stored information (ESI) produced in response

to a request or interrogatory must not delete any metadata.

3.      You must provide all information that is available to you and under your control,

including information in the possession of your present or former attorneys, accountants,

representatives, agents, or other persons under your control or acting on your behalf. If any

responsive information is unavailable in the full detail requested, you must set forth the

information related to the subject matter of the request in such detail as is available, including a

description of the method by which you made any estimates or conclusions.

4.      For documents or items identified or produced in response to the requests,

organize the documents to make clear the request or interrogatory to which each document is

responsive.

5.      Unless otherwise noted, construe each request independently and not by reference

2

to any other request or interrogatory for the purpose of limitation.

6.      Use of the singular in any request includes the plural.

7.      Use of masculine, feminine, or neutral genders includes each gender, as appropriate in context.

8.      If you withhold any requested information, documents, or items based on the assertion of any privilege, then you must:

      a.   State the privilege relied upon and all facts giving rise to the purported privilege;

      b.   Describe fully the extent to which the privilege is being asserted; and

      c.   Identify the information, document, or item being withheld.

9.      If you assert any request is vague or ambiguous, please identify the vagueness or ambiguity you contend exists.

10.     All of the matters in each of the Requests for Admission will be deemed admitted unless you respond within 30 days after service of those Requests.

11.     The answer to each Request for Admission shall specifically admit or deny the matter or set forth in detail the reasons why you cannot truthfully admit or deny the matter. If objection is made to a Request for Admission, the reasons therefor shall be stated.

12.     A denial in response to a Request for Admission shall fairly meet the substance of the requested admission.

13.     In response to a Request for Admission, you may not give lack of information as a reason for failure to admit or deny unless you state that you have made reasonable inquiry and that the information known or reasonably available to you is insufficient to enable you to admit or deny.

14.     Even if you consider that a matter involving a Request for Admission presents a

3

genuine issue for trial, you may not, on that ground alone, object to the request.

## **<u>DEFINITIONS</u>**

1.      "Document" means any printed, typewritten or handwritten instrument of whatever character including information created and/or stored in electronic form and includes, without limitation, correspondence, email, memoranda, agreements, letters, hand or typewritten notes, computer printouts, computer tapes, computer discs, flash drives, thumb drives, microfilm, microfiche, tape recordings, photographs, video tapes, motion pictures, plats, diagrams, surveys, voicemail, recordings and any other items of similar nature, including originals and non-identical copies.

2.      "Identify" or "identity" means the following:

a.   With respect to a natural person, the person's full name, present employer, title, job description, business and home address and telephone numbers and his/her relationship to any or all of Defendants.

b.   With respect to a person other than a natural person, including any business entity, identify means to include the name, address, state of formation, type of legal entity and identity of a duly authorized representative.

c.   To identify a "document" means to state the document's title, date, author, addressees, recipients, subject matter and/or general nature, present location and custodian.  Documents should be identified whether or not they are currently in any or all of Defendants' custody or possession.

d.   To identify a communication means to state the date and time of the communication, the place where the communication was made, the parties to the communication, and content of the communication.

4

3.    "Communication" is a transmission from one person to another or in the presence of another, whether written, oral, telephonic, electronic or by any other means.

4.    "Person" and "You" means the plural as well as the singular and includes without limitation any natural person as well as any firm, corporation, unincorporated association, partnership or other form of legal entity unless the context clearly indicates otherwise.

5.    "Business Entity" means a business organization or entity, including, but not limited to, each and every corporation (subchapter "S" or "C"), nonprofit corporation, professional corporation, business development corporation, business trust, cooperative association, real estate investment trust, partnership, limited partnership, limited liability company, sole proprietorship, joint venture, and similar organization or entity.

6.    "HSMG" means Healthcare Solutions Management Group, Inc.

7.    "HSH" means Healthcare Solutions Holdings, Inc.

8.    "Alleged Transfers" means the transfers that Millrock has alleged, in the Second Amended Complaint, took place from HSMG/HSH to Constantin and McMahen that are the basis for Millrock's voidable transfer claims. Specifically, the alleged transfer of $2,235,923 to Constantin and $465,000 to McMahen.

9.    "Settlement Agreements" means the purported settlement agreements between HSH and Constantin and HSH and McMahen, which are evidenced by exhibits B and E of Constantin and McMahen's Motion for Summary Judgment. *See* ECF No. 96.

## INTERROGATORIES

**INTERROGATORY NO. 1:**  Identify each and every Business Entity (as defined above) in which you have (or have had) an ownership interest in, whether said ownership interest is or was held directly or indirectly by you, from January 1, 2018 through the present.

**INTERROGATORY NO. 2:** Identify each and every Business Entity (as defined above) in which you have acted, served, or been employed as an officer, director, legal counsel, manager, managing member, or managing partner, from January 1, 2018 through the present, regardless of any ownership interest (or lack thereof) therein.

**INTERROGATORY NO. 3:** For each Business Entity (as defined above) identified in your responses to Interrogatories Nos. 1 and 2, identify all financial institutions at which bank accounts (savings, deposit, checking, CDs, etc.) are or have been maintained since January 1, 2018 through the present, and identify the account numbers for each such account.

**INTERROGATORY NO. 4:** Identify each and every bank account (savings, deposit, checking, CD, etc.), investment account, brokerage account, and similar account, including the name of the financial institution or investment firm where it is maintained and the account number, that you have or have had access or control over, directly or indirectly, from January 1 2014 to the present.

**INTERROGATORY NO. 5:** Identify each and every trust in which you are a trustor/grantor, trustee or beneficiary.

**INTERROGATORY NO. 6:** For each trust identified in your response to Interrogatory No. 5, identify all financial institutions at which bank accounts (savings, deposit, checking, CDs, etc.) are or have been maintained since January 1, 2018 through the present, and identify the account numbers for each such account.

**INTERROGATORY NO. 7:** List all jobs, positions, titles and roles you have had with defendant Healthcare Solutions Management, Inc., and the dates you served or were employed for each such position, title, or role.

**INTERROGATORY NO. 8:** List all jobs, positions, titles and roles you have had with

6

defendant Healthcare Solutions Holdings Inc., and the dates you served or were employed for each such position.

**INTERROGATORY NO. 9:** For each Request for Admission for which your response is anything other than an unqualified admission, provide a reasonable description of the facts supporting your response.

**INTERROGATORY NO. 10:** Identify each subsidiary of HSMG, and each Business Entity that HSMG exercised substantial control over, including HSH, at any time from January 1, 2018 through the present.

**INTERROGATORY NO. 11:** Identify each subsidiary of HSH, and each Business Entity that HSH exercised substantial control over, at any time from January 1, 2018 through the present.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

Please produce the following:

**REQUEST FOR PRODUCTION NO. 1:** Produce HSMG's general ledgers, profit and loss statements, income statements, balance sheets, cash flow statements, annual audited financials, and annual reports from January 1, 2018 through the present.

**REQUEST FOR PRODUCTION NO. 2:** Produce HSH's general ledgers, profit and loss statements, income statements, balance sheets, cash flow statements, annual audited financials, and annual reports from January 1, 2018 through the present.

**REQUEST FOR PRODUCTION NO. 3:** Produce the general ledgers, profit and loss statements, income statements, balance sheets, cash flow statements, annual audited financials, and annual reports from January 1, 2018 through the present for each of the Business Entities identified in Interrogatory No. 1.

**REQUEST FOR PRODUCTION NO. 4:**  Produce the general ledgers, profit and loss statements, income statements, balance sheets, cash flow statements, annual audited financials, and annual reports from January 1, 2018 through the present for each the Business Entities identified in Interrogatory No. 2.

**REQUEST FOR PRODUCTION NO. 5:**  Produce the general ledgers, profit and loss statements, income statements, balance sheets, cash flow statements, annual audited financials, and annual reports from January 1, 2018 through the present for each of the Business Entities identified in Interrogatory Nos. 10 and 11.

**REQUEST FOR PRODUCTION NO. 6:**  Produce all statements and account records of any kind from January 1, 2018 through the present for each account identified in Interrogatory No. 4.

**REQUEST FOR PRODUCTION NO. 7:**  Produce all of HSMG and HSH's meeting minutes and resolutions – including all drafts, revised drafts, and final versions – from January 1, 2018 through the present.

**REQUEST FOR PRODUCTION NO. 8:**  Produce all correspondence, communications or Documents of any kind between HSMG and Constantin, and/or between HSH and Constantin, regarding the Alleged Transfers and Settlement Agreements.

**REQUEST FOR PRODUCTION NO. 9:**  Produce all correspondence, communications or Documents of any kind between HSMG and McMahen, and/or between HSH and McMahen, regarding the Alleged Transfers and Settlement Agreements.

**REQUEST FOR PRODUCTION NO. 10:** Produce all correspondence,

communications, or Documents of any kind between HSMG and/or HSH, on the one hand, and

Emannuel Butera and/or American Development Partners ("ADP"), on the other.

**REQUEST FOR PRODUCTION NO. 11:** Produce all correspondence,

communications, or Documents of any kind between Constantin, on the one hand, and Emannuel

Butera and/or ADP, on the other.

**REQUEST FOR PRODUCTION NO. 12:** Produce all correspondence,

communications, or Documents of any kind between McMahen, on the one hand, and Emannuel

Butera and/or ADP, on the other.

## REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1:** Admit Constantin had substantial control over

HSMG when Constantin and McMahen secured judgments against HSMG and HSH. (*See*

Exhibit H of Constantin and McMahen's Motion for Summary Judgment.)

**REQUEST FOR ADMISSION NO. 2:** Admit Constantin had substantial control over

HSH when Constantin and McMahen secured judgments against HSMG and HSH. (*See* Exhibit

H of Constantin and McMahen's Motion for Summary Judgment.)

DATED this 25 July 2024.

PARR BROWN GEE & LOVELESS

By: /s/ Bentley J. Tolk
      Terry E. Welch
      Bentley J. Tolk
      Rodger M. Burge
      *Attorneys for Plaintiff Millrock Investment Fund 1, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 25, 2024, I caused to be served a true and correct copy of the foregoing

**MILLROCK'S FIRST SET OF INTERROGATORIES, REQUESTS FOR PRODUCTION**

**OF DOCUMENTS, AND REQUESTS FOR ADMISSION TO DEFENDANTS JOSHUA**

**CONSTANTIN AND STUART MCMAHEN** via email on the following:

Keith Woodwell
kmw@clydesnow.com
**Clyde Snow & Sessions**
201 South Main Street, #2200
Salt Lake City, Utah 84111

Justin Smith
1779 CUMBERLAND RD
CLEVELAND HEIGHTS, OH 44118
(240) 242-7709
justin.landes@gmail.com

By: /s/Chase Wilde
*Attorney*

**EXHIBIT E**

**EXHIBIT E**

**EXHIBIT E**

Terry E. Welch (5819)
Bentley J. Tolk (6665)
Rodger M. Burge (8582)
C. Chase Wilde (17546)
**PARR BROWN GEE & LOVELESS**
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Telephone: (801) 532-7840
Facsimile: (801) 532-7750
twelch@parrbrown.com
btolk@parrbrown.com
rburge@parrbrown.com
cwilde@parrbrown.com

*Attorneys for Plaintiff Millrock Investment Fund 1, LLC*

---

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MILLROCK INVESTMENT FUND 1, LLC,<br>        Plaintiff,<br><br>v.<br><br>HEALTHCARE SOLUTIONS MANAGEMENT GROUP, INC.; HEALTHCARE SOLUTIONS HOLDINGS INC.; LANDES CAPITAL MANAGEMENT, LLC; LANDES AND COMPAGNIE TRUST PRIVE KB; JOSHUA CONSTANTIN; JUSTIN SMITH; STUART MCMAHEN; and BLACK LABEL SERVICES, INC.,<br><br>        Defendants. | **NOTICE OF DEPOSITION OF JUSTIN SMITH**<br><br>Case No. 2:23-CV-00157-RJS-DAO<br><br>Chief District Judge Robert J. Shelby<br><br>Magistrate Judge Daphne A. Oberg |

**Notice for: Justin Smith**
**1779 CUMBERLAND RD**
**CLEVELAND HEIGHTS, OH 44118**

Please take notice that, pursuant to Federal Rule of Civil Procedure 30, Plaintiff Millrock Investment Fund 1, LLC ("Millrock"), by and through its counsel of record, will take the deposition of Defendant Justin Smith on September 18, 2024, at 9:00 a.m., at 1375 East Ninth Street, One Cleveland Center, 29th Floor, Cleveland, Ohio 44114.

The deposition will be taken upon oral examination before a certified court reporter or other person authorized by law to take depositions and may be continued from day to day until completed. The deposition will be recorded by stenographic, audio, and audiovisual means.

DATED 7 August 2024.

PARR BROWN GEE & LOVELESS

By: /s/ Christian C. Wilde
        Terry E. Welch
        Bentley J. Tolk
        Rodger M. Burge
        Christian C. Wilde

*Attorneys for Plaintiff Millrock Investment Fund 1, LLC*

2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 7 August 2024, I caused a true and correct copy of the

foregoing **NOTICE OF DEPOSITION OF JUSTIN SMITH** to be served via email, on the

following:

Keith Woodwell
kmw@clydesnow.com
**Clyde Snow & Sessions**
201 South Main Street, #2200
Salt Lake City, Utah 84111

Justin Smith
1779 CUMBERLAND RD
CLEVELAND HEIGHTS, OH 44118
(240) 242-7709
justin.landes@gmail.com

By:  /s/ Christian C. Wilde
*Attorney*

Terry E. Welch (5819)
Bentley J. Tolk (6665)
Rodger M. Burge (8582)
C. Chase Wilde (17546)
**PARR BROWN GEE & LOVELESS**
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Telephone: (801) 532-7840
Facsimile: (801) 532-7750
twelch@parrbrown.com
btolk@parrbrown.com
rburge@parrbrown.com
cwilde@parrbrown.com

*Attorneys for Plaintiff Millrock Investment Fund 1, LLC*

---

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MILLROCK INVESTMENT FUND 1, LLC,<br>   Plaintiff,<br><br>v.<br><br>HEALTHCARE SOLUTIONS MANAGEMENT GROUP, INC.; HEALTHCARE SOLUTIONS HOLDINGS INC.; LANDES CAPITAL MANAGEMENT, LLC; LANDES AND COMPAGNIE TRUST PRIVE KB; JOSHUA CONSTANTIN; JUSTIN SMITH; STUART MCMAHEN; and BLACK LABEL SERVICES, INC.,<br><br>   Defendants. | **NOTICE OF DEPOSITION OF JOSHUA CONSTANTIN**<br><br>Case No. 2:23-CV-00157-RJS-DAO<br><br>Chief District Judge Robert J. Shelby<br><br>Magistrate Judge Daphne A. Oberg |

**Notice for: Joshua Constantin**
**238 Solomon Drive**
**Slidell, LA 70458**

　　　Please take notice that, pursuant to Federal Rule of Civil Procedure 30, Plaintiff Millrock

Investment Fund 1, LLC ("Millrock"), by and through its counsel of record, will take the

deposition of Defendant Joshua Constantin on September 25, at 9:00 a.m. at Hancock Whitney Center 701 Poydras Street, Suite 5000, New Orleans, Louisiana 70139.

The deposition will be taken upon oral examination before a certified court reporter or other person authorized by law to take depositions and may be continued from day to day until completed. The deposition will be recorded by stenographic, audio, and audiovisual means.

DATED 7 August 2024.

PARR BROWN GEE & LOVELESS

By: /s/ Chase Wilde
        Terry E. Welch
        Bentley J. Tolk
        Rodger M. Burge
        C. Chase Wilde

*Attorneys for Plaintiff Millrock Investment Fund 1, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 7 August 2024, I caused a true and correct copy of the

foregoing **NOTICE OF DEPOSITION OF JOSH CONSTANTIN** to be served via U.S. Mail,

on the following:

Keith Woodwell
<u>kmw@clydesnow.com</u>
**Clyde Snow & Sessions**
201 South Main Street, #2200
Salt Lake City, Utah 84111

Justin Smith
1779 CUMBERLAND RD
CLEVELAND HEIGHTS, OH 44118
(240) 242-7709
justin.landes@gmail.com

By: _/s/ Chase Wilde_
*Attorney*

Terry E. Welch (5819)
Bentley J. Tolk (6665)
Rodger M. Burge (8582)
C. Chase Wilde (17546)
**PARR BROWN GEE & LOVELESS**
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Telephone: (801) 532-7840
Facsimile: (801) 532-7750
twelch@parrbrown.com
btolk@parrbrown.com
rburge@parrbrown.com
cwilde@parrbrown.com

*Attorneys for Plaintiff Millrock Investment Fund 1, LLC*

---

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MILLROCK INVESTMENT FUND 1, LLC,<br>    Plaintiff,<br><br>v.<br><br>HEALTHCARE SOLUTIONS<br>MANAGEMENT GROUP, INC.;<br>HEALTHCARE SOLUTIONS HOLDINGS<br>INC.; LANDES CAPITAL MANAGEMENT,<br>LLC; LANDES AND COMPAGNIE TRUST<br>PRIVE KB; JOSHUA CONSTANTIN;<br>JUSTIN SMITH; STUART MCMAHEN; and<br>BLACK LABEL SERVICES, INC.,<br><br>    Defendants. | **NOTICE OF DEPOSITION OF<br>STUART MCMAHEN**<br><br>Case No. 2:23-CV-00157-RJS-DAO<br><br>Chief District Judge Robert J. Shelby<br><br>Magistrate Judge Daphne A. Oberg |

**Notice for: Stuart McMahen**
**26 Reynolds Street**
**Springhill, LA 71075**

     Please take notice that, pursuant to Federal Rule of Civil Procedure 30, Plaintiff Millrock

Investment Fund 1, LLC ("Millrock"), by and through its counsel of record, will take the

deposition of Defendant Stuart McMahen on September 24, at 9:00 a.m. at Hancock Whitney Center 701 Poydras Street, Suite 5000, New Orleans, Louisiana 70139.

The deposition will be taken upon oral examination before a certified court reporter or other person authorized by law to take depositions and may be continued from day to day until completed. The deposition will be recorded by stenographic, audio, and audiovisual means.

DATED 7 August 2024.

Parr Brown Gee & Loveless

By: /s/ Chase Wilde
       Terry E. Welch
       Bentley J. Tolk
       Rodger M. Burge
       C. Chase Wilde

*Attorneys for Plaintiff Millrock Investment Fund 1, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 7 August 2024, I caused a true and correct copy of the

foregoing **NOTICE OF DEPOSITION OF STUART MCMAHEN** to be served via U.S. Mail,

on the following:

Keith Woodwell
kmw@clydesnow.com
**Clyde Snow & Sessions**
201 South Main Street, #2200
Salt Lake City, Utah 84111

Justin Smith
1779 CUMBERLAND RD
CLEVELAND HEIGHTS, OH 44118
(240) 242-7709
justin.landes@gmail.com

By: /s/ Chase Wilde
*Attorney*

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of August 2024, I caused to be served a true and correct copy of the foregoing **MOTION TO DEFER OR DENY DEFENDANTS JOSHUA CONSTANTIN AND STUART MCMAHEN'S MOTION FOR SUMMARY JUDGMENT** via email on the following:

Keith Woodwell
kmw@clydesnow.com
**Clyde Snow & Sessions**
201 South Main Street, #2200
Salt Lake City, Utah 84111

Justin Smith
1779 Cumberland Rd
Cleveland Heights, OH 44118
240.242.7709
Justin.landes@gmail.com

_/s/ Chase Wilde_____