Terry E. Welch (5819) twelch@parrbrown.com
Bentley J. Tolk (6665) btolk@parrbrown.com
Rodger M. Burge (8582) rburge@parrbrown.com
C. Chase Wilde (17546) cwilde@parrbrown.com
**PARR BROWN GEE & LOVELESS**
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Telephone: (801) 532-7840
Facsimile: (801) 532-7750

*Attorneys for Plaintiff Millrock Investment Fund 1, LLC*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

---

| | |
|---|---|
| MILLROCK INVESTMENT FUND 1, LLC, | **OPPOSITION TO DEFENDANTS JOSHUA CONSTANTIN AND STUART MCMAHEN'S MOTION FOR SUMMARY JUDGMENT** |
| Plaintiff, | |
| v. | **(ORAL ARGUMENT REQUESTED)** |
| HEALTHCARE SOLUTIONS MANAGEMENT GROUP, INC.; HEALTHCARE SOLUTIONS HOLDINGS INC.; LANDES CAPITAL MANAGEMENT, LLC; LANDES AND COMPAGNIE TRUST PRIVE KB; JOSHUA CONSTANTIN; JUSTIN SMITH; STUART MCMAHEN; and BLACK LABEL SERVICES, INC., | Case No. 2:23-CV-00157-RJS-DAO

Chief District Judge Robert J. Shelby

Magistrate Judge Daphne A. Oberg |
| Defendants. | |

Plaintiff Millrock Investment Fund 1, LLC ("Millrock") hereby files this Opposition to

Joshua Constantin and Stuart McMahen's Motion for Summary Judgment.[1]

---

[1] Millrock filed a Rule 56(d) motion, which is pending. (*See* ECF No. 123.) Millrock files this Opposition out of an abundance of caution to comply with the current deadline to respond to the Motion in the event that Millrock's Rule 56(d) motion is denied. If the Rule 56(d) motion is granted, Millrock requests leave to supplement this Opposition after the close of fact discovery.

## INTRODUCTION

Defendant Healthcare Solutions Management Group, Inc. ("HSMG"), which is controlled by defendants Josh Constantin and Stuart McMahen, owes Millrock millions of dollars. But to avoid paying Millrock and to prevent Millrock from collecting, HSMG transferred millions of dollars to Constantin and McMahen. As a result, Millrock brought this lawsuit against the named defendants and brought claims of voidable transfer against Constantin and McMahen.

Constantin and McMahen argue in their Summary Judgment Motion that they are entitled to summary judgment as to the voidable transfers claims against them because Millrock has not produced any evidence of the alleged transfers. But there are two major problems with the Motion.

First, it is premature because discovery has not closed yet. Even assuming that Millrock had not produced any evidence of the alleged transfers, it has until early next year to discover facts evidencing that the alleged transfers took place and the facts surrounding the transfers.

Second, even though Millrock has not had a fair opportunity yet to conduct discovery, there is evidence in the record already of the alleged transfers. A publicly filed form 8-K states that one of HSMG's subsidiaries entered into supposed "settlement agreements" with McMahen and Constantin just days after Millrock brought this suit in which the subsidiary agreed to transfer to McMahen and Constantin large sums of money—the exact amounts of the alleged transfers. In fact, the two settlement agreements referenced in the form are also in the record. And those agreements, which are signed by McMahen and Constantin, confirm that HSMG's subsidiary agreed to make the alleged transfers. It is true that the Motion is supported by *some* evidence that suggests that the alleged transfers may not have happened. But Constantin and McMahen are not entitled to summary judgment just because they have produced some evidence in their favor, especially in light of the other evidence in the record that both suggest that the transfers happened

and calls into question the evidence produced by Constantin and McMahen. At best, they have created a genuine dispute as to whether the alleged transfers took place.

Because Millrock still has plenty of time to conduct discovery, and because there are genuine disputes of material facts based on the limited record already, Constantin and McMahen have not met their high burden of showing that they are entitled to summary judgment.

## BACKGROUND

In the operative complaint in this matter (the "Second Amended Complaint"), Millrock named multiple defendants, including HSMG, Constantin, and McMahen. The thrust of the Second Amended Complaint is that HSMG owes Millrock millions of dollars. But instead of paying Millrock, HSMG transferred that money to several individuals in multiple transfers to avoid paying Millrock and ensuring that it had no assets for Millrock to come after. Specifically, Millrock alleges that HSMG transferred $2,235,923 to Constantin via its subsidiary HSH and transferred $465,000 to McMahen through the same subsidiary.

Millrock alleges those specific numbers because it discovered filings that HSH had made with the SEC that represent that HSH entered into supposed settlement agreements with Constantin and McMahen for those amounts around the same time that this lawsuit commenced. (*See* ECF No. 96 ("Appendix to Motion"), exhibit B.) Also, before Millrock commenced this suit, Constantin had a phone call with two representatives of Millrock and told them that he would do whatever it took to make sure that Millrock could not get at HSMG's assets and explained that HSMG's single purpose subsidiary entities were set up for the sole purpose of making it difficult to recover assets.

As a result of the supposed settlement agreements and Constantin's comments, Millrock brought claims of voidable transfer against Constantin and McMahen. Constantin and McMahen answered the Second Amended Complaint and then filed their Motion for summary judgment and

Appendix to the Motion.

On the same day that Constantin and McMahen filed their Motion, this Court stayed this case for two months "in light of the HSMG's bankruptcy case" to "help clarify the status of the claims in this case." (ECF No. 97.) After that stay, this Court stayed this case again. (*See* ECF No. 110.) During the second stay, however, the bankruptcy proceeding was dismissed. As a result, this Court lifted the stay on June 24, 2024 and ordered the parties to file a proposed amended scheduling order and briefing deadlines for pending motions within fourteen days. (*See* ECF No. 114.)

Consistent with that order, the parties filed a stipulated motion with a proposed order that set the close of fact discovery as January 17, 2025. (*See* ECF No. 115-1.) The Court granted the proposed order and set the close of fact discovery for January 17, 2025. (ECF No. 116.)

With fact discovery opened, and the stay lifted, Millrock served discovery requests on Constantin and McMahen on July 25, 2024 and has noticed depositions for Constantin, McMahen, and defendant Justin Smith for dates in September 2024. Because discovery does not close in this matter until January 17, 2025, and because of the pending Discovery Requests and upcoming depositions, Millrock filed a rule 56(d) motion to defer the Motion until after the close of fact discovery.

<u>**RESPONSE TO CONSTANTIN AND MCMAHEN' STATEMENT OF UNDISPUTED MATERIAL FACTS**</u>

Millrock disputes the following alleged undisputed material facts set forth in the Motion:

6. In or about late 2022 and through early 2023, HSMG was struggling financially and was on the brink of going out of business. Indeed, as of January 2023, HSH's – the wholly-owned subsidiary of HSMG – core business was shut down. *See* Constantin Declaration, ¶ 15 attached to Appendix of Evidence in Support of Joshua Constantin and Stuart McMahen's Motion for Summary Judgment ("Appendix") as **Exhibit A**.; *See* HSMG March 5, 2023 Form 8-K attached to Appendix as **Exhibit B**.

Millrock disputes this "fact" because the evidence Constantin and McMahen cite in support of this fact is self-serving, and Millrock has served discovery requests, which are pending, that will reveal relevant evidence as to whether this fact is accurate. (*See* Appendix to Opposition, Ex. C (the "Discovery Requests"), Interrogatory #s 5, 6, 11 and Requests for Production #s 1–7.)

> 7. As a result of the company's decline, HSMG was struggling to retain employees and a number of top-level executives were resigning, including Justin Smith, Dr. Joseph Asuncion, Dr. Richard Muckerman, Blake Moorman, Dr. Richard F. Wittock, and Dr. Abdullah Arshad. *See* HSMG March 15, 2023 Form 8-K attached to Appendix as **Exhibit C**; *See* HSMG December 27, 2022 Form 8-K attached to Appendix as **Exhibit D**.

Millrock disputes this "fact" because the evidence Constantin and McMahen cite in support of this fact is self-serving, and Millrock has served discovery requests, which are pending, that will reveal relevant evidence as to whether the facts asserted in this paragraph are accurate. (Appendix to Opposition, Discovery Requests, Interrogatory #s 5, 6, 11 and Requests for Production #s 1–12.)

> 8. Due to HSH's core business shutting down and HSH falling significantly behind in the payment of regular payroll, medical benefits, and bonuses to Constantin and McMahen, on March 5, 2023, HSH entered into separate Settlement Agreements with Constantin and McMahen respectively, which were negotiated by Jonathan Loutzenhiser on HSH's behalf. *See* HSMG March 5, 2023 Form 8-K attached to Appendix as **Exhibit B**; *See* Constantin Settlement Agreement attached to Appendix as **Exhibit E**; *See* McMahen Settlement Agreement attached to Appendix as **Exhibit F**.

Millrock disputes this "fact" because the evidence Constantin and McMahen cite in support of this fact is self-serving and incomplete, and Millrock has served discovery requests, which are pending, that will reveal relevant evidence as to whether the facts asserted in this paragraph are accurate. (Appendix to Opposition, Discovery Requests, Interrogatory #s 5, 6, 11 and Requests for Production #s 1–12.) Moreover, Constantin's own statements that he would do whatever it took to

keep Millrock from getting at HSMG's assets and that HSMG's subsidiaries, such as HSH, were created to make it difficult for creditors to collect debts suggest that the real reason HSH entered into the settlement agreements with Constantin and McMahen was to move or hide money and keep Millrock from collecting on a debt. (*See* Appendix to Opposition, Ex. A ("Long Declaration"), ¶¶ 26–27; *see also id.*, Ex. B ("Smith Declaration"), ¶¶ 4–5.)

13. It is undisputed that the March 5, 2023 Form 8-K and the Defendants' Settlement Agreements merely reference an agreement to pay, but do not state that Defendants were actually paid.

Millrock disputes this "fact" because the SEC statement does more than merely reference Constantin and McMahen' Settlement Agreements. It states specific terms of those agreements, such as how much Constantin and McMahen are to be paid and when the agreements were entered into. (*See* Appendix to Motion, exhibit B.)

14. Constantin was never paid the $2,235,923 Settlement Payment. *See* Constantin Declaration, ¶¶ 21, 27 attached to Appendix as **Exhibit A**.

Millrock disputes this "fact" because the evidence Constantin and McMahen cite in support of this fact is self-serving and incomplete, and Millrock has made discovery requests, which are currently pending, that will reveal relevant evidence as to whether the facts asserted in this paragraph are accurate. (*See, generally*, Appendix to Opposition, Discovery Requests.) Even absent the pending discovery, the Constantin Settlement Agreement and McMahen Settlement Agreement is evidence that the alleged transfers took place. (*See* Appendix to Motion, exhibits E and F.) Moreover, Constantin's own statements that he would do whatever it took to keep Millrock from getting at HSMG's assets and that HSMG's subsidiaries, such as HSH, were created to make it difficult for creditors to collect debts is evidence that the transfers took place and that Constantin and McMahen took steps to hide the fact that the transfers took place. (*See* Appendix to Opposition, Long Declaration, ¶¶ 26–27; *see also id.*, Smith Declaration, ¶¶ 4–5.)

15. McMahen was never paid the $465,000 Settlement Payment. *See* McMahen Declaration, ¶¶ 11, 16 attached to Appendix as **Exhibit G.**

Millrock disputes this "fact" because the evidence Constantin and McMahen cite in support of this fact is self-serving and incomplete, and Millrock has made discovery requests, which are currently pending, that will reveal relevant evidence as to whether the facts asserted in this paragraph are accurate. (*See, generally*, Appendix to Opposition, Discovery Requests.) Even absent the pending discovery, the Constantin Settlement Agreement and McMahen Settlement Agreement is evidence that the alleged transfers took place. (*See* Appendix to Motion, exhibits E and F.) Moreover, Constantin's own statements that he would do whatever it took to keep Millrock from getting at HSMG's assets and that HSMG's subsidiaries, such as HSH, were created to make it difficult for creditors to collect debts is evidence that the transfers took place and that Constantin and McMahen took steps to hide the fact that the transfers took place. (*See* Appendix to Opposition, Long Declaration, ¶¶ 26–27; *see also id*., Smith Declaration, ¶¶ 4–5.)

16. It was for this exact reason that on March 6, 2023, Defendants obtained judgments against HSMG for the nonpayment of their $2,235,923 and $465,000 Settlement Payments respectively. Defendants would not have obtained judgments against HSMG had they actually been paid. *See* Constantin and McMahen Judgements attached to Appendix as **Exhibit H**; *See* HSMG March 15, 2023 Form 8-K attached to Appendix as **Exhibit C**.

Millrock disputes this "fact" because the evidence Constantin and McMahen cite in support of this fact is self-serving and incomplete, and Millrock has made discovery requests, which are currently pending, that will reveal relevant evidence as to whether the facts asserted in this paragraph are accurate. (*See, generally*, Appendix to Opposition, Discovery Requests.) Even absent the pending discovery, there is evidence in the record that the referenced judgments are likely a smokescreen to hide the fact that the alleged transfers took place. (*See* Appendix to Opposition, Long Declaration, ¶¶ 26–27; *see also id*., Smith Declaration, ¶¶ 4–5; *see also id*.,

exhibit D ("Tolk Declaration"), at exhibits 4–7 (showing that Constantin has the know-how and means to commit fraudulent behavior to hide the alleged transfer).)

    17. Given HSMG's insolvency, Constantin and McMahen were precluded from collecting on their judgments. *See* Constantin Declaration, ¶ 24 attached to Appendix as **Exhibit A**; *See* McMahen Declaration, ¶ 15 attached to Appendix as **Exhibit G.**

    Millrock disputes this "fact" because the evidence Constantin and McMahen cite in support of this fact is self-serving and incomplete, and Millrock has made discovery requests, which are currently pending, that will reveal relevant evidence as to whether the facts asserted in this paragraph are accurate. (*See, generally*, Appendix to Opposition, Discovery Requests.) Even absent the pending discovery, there is evidence in the record that the referenced judgments are likely a smokescreen to hide the fact that the alleged transfers took place. (*See* Appendix to Opposition, Long Declaration, ¶¶ 26–27; *see also id*., Smith Declaration, ¶¶ 4–5; *see also id*., Tolk Declaration, at exhibits 4–7 (showing that Constantin has the know-how and means to commit fraudulent behavior to hide the alleged transfer).)

    18. On March 15, 2023, Constantin agreed to be appointed as HSMG's Interim Chief Executive Officer, Interim Chief Financial Officer and sole member of the Board of Directors in hopes of collecting outstanding debts owed to HSMG, which could be used to pay Constantin the $2,235,923 that he was owed. *See* HSMG March 15, 2023 Form 8-K attached to Appendix as **Exhibit C**; *See* Constantin Declaration, ¶ 25 attached to Appendix as **Exhibit A**.

    Millrock disputes this "fact," specifically the reason why Constantin served as HSMG's CEO and sole board member because the evidence Constantin and McMahen cite in support of this fact is self-serving and incomplete, and Millrock has made discovery requests, which are currently pending, that will reveal relevant evidence as to whether the facts asserted in this paragraph are accurate. (*See, generally*, Appendix to Opposition, Discovery Requests.) Even absent the pending discovery, there is evidence in the record that Constantin and McMahen

intended to hide evidence of the alleged transfers. (*See* Appendix to Opposition, Long Declaration, ¶¶ 26–27; *see also id.*, Smith Declaration, ¶¶ 4–5; *see also id.*, Tolk Declaration, at exhibits 1–4 (showing that Constantin has the know-how and means to commit fraudulent behavior to hide the alleged transfer).)

> 19. Constantin never collected any outstanding debts owed to HSMG and officially resigned on or about November 6, 2023. *See* Constantin Declaration, ¶ 26 attached to Appendix as **Exhibit A**.

Millrock disputes this "fact" because the evidence Constantin and McMahen cite in support of this fact is self-serving and incomplete, and Millrock has made discovery requests, which are currently pending, that will reveal relevant evidence as to whether the facts asserted in this paragraph are accurate. (*See, generally*, Appendix to Opposition, Discovery Requests.) Even absent the pending discovery, there is evidence in the record that Constantin and McMahen intended to hide evidence of the alleged transfers. (*See* Appendix to Opposition, Long Declaration, ¶¶ 26–27; *see also id.*, Smith Declaration, ¶¶ 4–5; *see also id.*, Tolk Declaration, at exhibits 4–7 (showing that Constantin has the know-how and means to commit fraudulent behavior to hide the alleged transfer).)

> 25. Millrock has cited no evidence that the alleged transfers were made to Constantin and the Complaint contains no specific factual allegations (how, when, where, who) to support the conclusory statement that the "transfers were made".

Millrock disputes this "fact" because even though discovery is ongoing, there is evidence already in the record that suggests the alleged transfers took place and that Constantin and McMahen took steps to hide the transfers. (*See* Appendix to Opposition, Long Declaration, ¶¶ 26–27; *see also id.*, Smith Declaration, ¶¶ 4–5; *see also id.*, Tolk Declaration, at exhibits 4–7 (showing that Constantin has the know-how and means to commit fraudulent behavior to hide the alleged transfer); *see also* Appendix to Motion, exhibits B, E, and F.)

26. Millrock has cited no evidence that the alleged transfers were made to McMahen and the Complaint contains no specific factual allegations (how, when, where, who) to support the conclusory statement that the "transfers were made".

Millrock disputes this "fact" because even though discovery is ongoing, there exists already evidence in the record that suggests the alleged transfers took place and that Constantin and McMahen took steps to hide the transfers. (*See* Appendix to Motion, exhibits B, E, and F (showing Constantin and McMahen entered into agreements to receive the exact amount alleged in Millrock's voidable transfer claims ); *see also* Appendix to Opposition, Long Declaration, ¶¶ 26–27(showing Constantin stated he would take steps to keep Millrock from collecting a debt from HSMG/HSH and that he took steps already to ensure that, such as creating subsidiaries for HSMG for the sole purpose of moving and hiding assets); *see also id*., Smith Declaration, ¶¶ 4–5; *see also id*., Tolk Declaration, at exhibits 1–4 (showing that Constantin has the know-how and means to commit fraudulent behavior to hide the alleged transfer).)

27. To the contrary, all relevant documentation including the March 5, 2023 Form 8-K, the March 15, 2023 Form 8-K, the Defendants' Settlement Agreements, the Defendants' judgements, the Defendants' declarations, and HSH's bank records, directly contradicts the allegations in the Complaint and demonstrates that the money owed to Constantin and McMahen pursuant to the settlement agreements was never paid.

Millrock disputes this "fact" because even though discovery is ongoing, there exists already evidence in the record that suggests the alleged transfers took place and that Constantin and McMahen took steps to hide the transfers. (*See* Appendix to Motion, exhibits B, E, and F (showing Constantin and McMahen entered into agreements to receive the exact amount alleged in Millrock's voidable transfer claims ); *see also* Appendix to Opposition, Long Declaration, ¶¶ 26–27 (showing Constantin stated he would take steps to keep Millrock from collecting a debt from HSMG/HSH and that he took steps already to ensure that, such as creating subsidiaries for HSMG for the sole purpose of moving and hiding assets); *see also id*., Smith Declaration, ¶¶ 4–5; *see also*

*id.*, Tolk Declaration, at exhibits 4–7 (showing that Constantin has the know-how and means to commit fraudulent behavior to hide the alleged transfer).)

28. On or about October 12, 2023, Defendants produced HSH's bank records, which they provided to Millrock, verifying that no such transfers to Constantin and McMahen ever took place. *See* HSH bank records attached to Appendix as **Exhibit I**.

Millrock disputes this "fact" because even assuming that the produced documents are accurate, it is still disputed whether the alleged transfers took place because there is evidence in the record that Constantin and McMahen intended to hide the fact that the transfers took place. (*See* Appendix to Motion, exhibits B, E, and F (showing Constantin and McMahen entered into agreements to receive the exact amount alleged in Millrock's voidable transfer claims ); *see also* Appendix to Opposition, Long Declaration, ¶¶ 26–27 (showing Constantin stated he would take steps to keep Millrock from collecting a debt from HSMG/HSH and that he took steps already to ensure that, such as creating subsidiaries for HSMG for the sole purpose of moving and hiding assets); *see also id.*, Smith Declaration, ¶¶ 4–5; *see also id.*, Tolk Declaration, at exhibits 4–7 (showing that Constantin has the know-how and means to commit fraudulent behavior to hide the alleged transfer).)

## STATEMENT OF ADDITIONAL MATERIAL FACTS

1.    On or about March 5, 2023, HSMG filed a form 8-K (the "Form 8-K") with the Securities and Exchange Commission (the "SEC"). (*See* Appendix to Motion, Exhibit B, at 1.)

2.    According to the Form 8-K, HSMG's wholly owned subsidiary, Healthcare Solutions Holdings, Inc. ("HSH"), entered into "settlement agreements" on March 5, 2023 whereby it agreed to pay the following amounts: (1) $465,000 to Stuart McMahen ("McMahen"); and (2) $2,235,923 to Joshua Constantin ("Constantin"). (*See* Appendix to Motion, at Exhibits B, E, and F.)

11

3.      Those settlement agreements were entered into soon after the March 2, 2023 filing date of the Complaint in this case. (*See* Appendix to Motion, at Exhibits B, E, and F.)

4.      Based on those agreements and on other facts in the possession of Millrock, Millrock brought voidable transfer claims against Constantin and McMahen in this case. (*See* Appendix to Opposition, Tolk Declaration, at ¶ 4.)

5.      Beginning in late April or May 2023, Parr Brown Gee & Loveless (Millrock's outside counsel in this case) began preparing a petition for involuntary bankruptcy against HSMG in the United States Bankruptcy Court for the District of Delaware. (*See* Appendix to Opposition, Tolk Declaration, at ¶ 5.)

6.      On September 15, 2023, Millrock and other petitioning creditors filed a petition for involuntary bankruptcy against HSMG in the United States Bankruptcy Court for the District of Delaware. (*See* Appendix to Opposition, Tolk Declaration, at ¶ 6, and Ex. 1 thereto.)

7.      On December 19, 2023, the United States Bankruptcy Court for the District of Delaware opened HSMG's involuntary bankruptcy case ("HSMG's Bankruptcy Case") by filing an Order for Relief in an Involuntary Case. (*See* Appendix to Opposition, Tolk Declaration, at ¶ 7, and Ex. 2 thereto.)

8.      On March 15, 2024 (the same day Constantin and McMahen filed their Motion for Summary Judgment), this Court entered an Order staying all case deadlines in this case until May 15, 2024. (*See* Appendix to Opposition, Tolk Declaration, at ¶ 8; *see also* ECF No. 97.)

9.      On June 20, 2024, this Court entered an order extending the stay in this case until July 31, 2024. (*See* Appendix to Opposition, Tolk Declaration, at ¶ 9; *see also* ECF No. 110.)

10.     On June 20, 2024, the United States Bankruptcy Court for the District of Delaware entered an Order dismissing HSMG's Bankruptcy Case because HSMG had not

complied with the Bankruptcy Court's order compelling HSMG to file its schedule of assets and liabilities, its statement of financial affairs and its creditor matrix. (*See* Appendix to Opposition, Tolk Declaration, at ¶ 10, and Ex. 3 thereto.)

11.    On June 21, 2024, Millrock filed a notice with this Court of the dismissal of HSMG's Bankruptcy Case. (*See* Appendix to Opposition, Tolk Declaration, at ¶ 11; *see also* ECF No. 113.)

12.    Due to HSMG's bankruptcy proceedings, Millrock's concerns about the automatic stay, the possibility that the Chapter 7 trustee in HSMG's bankruptcy proceedings might take over Millrock's claims against Constantin and McMahen, and the fact that this case was stayed on two occasions, Millrock has not yet had the opportunity to conduct any substantial discovery in this case. (*See* Appendix to Opposition, Tolk Declaration, at ¶ 12.)

13.    On July 25, 2024, Millrock served its First Set of Interrogatories, Requests for Production of Documents, and Requests for Admission to Defendants Joshua Constantin and Stuart McMahen (the "Discovery Requests"). (*See* Appendix to Opposition, Exhibit C.)

14.    Constantin and McMahen's responses to the Discovery Requests are due on August 26, 2024. (*See* Appendix to Opposition, Tolk Declaration, at ¶ 14.)

15.    On August 7, 2024, Millrock served notices of deposition of Justin Smith for September 18, 2024; Stuart McMahen for September 24, 2024; and Joshua Constantin for September 25, 2024. (*See* Appendix to Opposition, Tolk Declaration, at ¶ 15; *see also id.*, Exhibit C.)

16.    Based on communications with Millrock and the facts presently available, it is anticipated that discovery may uncover additional evidence of the transfers that Millrock alleges

HSMG (potentially through HSH) made to Constantin and McMahen. (*See* Appendix to Opposition, Tolk Declaration, at ¶ 16.)

17.     That evidence, however, is not currently available to Millrock, because it will likely be found in documents that are in the exclusive control of HSMG, Constantin, McMahen, Justin Smith, Jonathan Loutzenhiser, Emanuel Butera, and other third parties (e.g., bank records, communications, financial statements, etc.). (*See* Appendix to Opposition, Tolk Declaration, at ¶ 17.)

18.     In addition to the fact discovery it is already in the process of conducting, Millrock anticipates that it will need to serve subpoenas for documents and depositions on Jonathan Loutzenhiser, Emanual Butera, HSMG, the banks and other financial institutions that Constantin and/or his related entities have used, banks and other financial institutions that McMahen and/or his related entities have used, Constantin's related entities, McMahen's related entities, and potential other third parties. (*See* Appendix to Opposition, Tolk Declaration, at ¶ 18.)

19.     Through said discovery, Millrock anticipates that it will learn, among other things, (i) the identity of all business entities and trusts that McMahen and Constantin have an ownership interest in, have been employed as an officer/director/manager of, or in which they are a trustor/trustee/beneficiary; (ii) for those entities and trusts, the financial institutions at which banking, investment, brokerage, and similar accounts are or have been maintained, together with account numbers; and (iii) the corporate structure, including subsidiaries and affiliates, of HSMG and HSH. (*See* Appendix to Opposition, Tolk Declaration, at ¶ 19.)

20.    The information obtained through that discovery may help confirm that Constantin and McMahen received the transfers at issue, and where the money is currently located. (*See* Appendix to Opposition, Tolk Declaration, at ¶ 20.)

21.    Millrock needs to conduct the foregoing discovery to confirm that the relevant transactions occurred, in order to rebut the argument that the alleged transactions never took place. (*See* Appendix to Opposition, Tolk Declaration, at ¶ 21.)

22.    On August 7, 2024, Millrock filed a Rule 56(d) Motion to Defer or Deny Defendants Joshua Constantin and Stuart McMahen's Motion for Summary Judgment. (ECF No. 123 (the "Rule 56(d) Motion").)

23.    Pursuant to the Rule 56(d) Motion, Millrock moved the Court under Rule 56(d) of the Federal Rules of Civil Procedure to deny or defer to Motion so as to allow Millrock to take specified fact discovery.

24.    Through the research of one of the associates in my law firm, Parr Brown Gee & Loveless became aware of a case from the United States District Court, Southern District of New York, *Securities and Exchange Commission v. Constantin, et al.*, Case No. 1:11-cv-04642-MHD (the "*SEC v. Constantin* Case"), in which the U.S. Securities and Exchange Commission (the "SEC") brought an action against Constantin alleging, among things, that Constantin had "misappropriated client funds" and "knowingly prepared false account statements to cover up [his] fraud . . . ." (*See* Appendix to Opposition, Tolk Declaration, at ¶ 22.)

25.    In the *SEC v. Constantin* Case, the court granted summary judgment against Constantin, and Constantin did not oppose the motion for summary judgment. (*See* Appendix to Opposition, Tolk Declaration, at ¶ 23, and exs. 4–7 thereto.)

26.    The Court also stated the following in connection with granting summary judgment in the *SEC v. Constantin* Case:

a.    "The litany of misrepresentations that Solomon and Constantin made to their clients is striking." (*Id.*, ex. 4 (the "SEC Memo Order"), at 39.)

b.    "After several clients had invested funds with Windham for purposes of purchasing stock in Leeward, Constantin diverted those funds to his own purposes. He apparently diverted $643,000.00 of client funds to Constantin Resource, which he used to pay personal and business expenses…." (SEC Memo Order, at 40.)

c.    "In addition, both Solomon and Constantin provided clients with misleading documents to cover up the fraudulent nature of their investment scheme. In the case of Balaban, Solomon and Constantin prepared monthly account statements that misleadingly represented Leeward holdings that Balaban did not actually have. [quotation omitted.] The account statements also set forth fictitious account values, which misled Balaban concerning the true value of his investment through Windham. [quotation omitted]. Similarly, in the case of Mier, Constantin produced a fake promissory note in an effort to convince Mier that his investment in Leeward was secure when, in fact, it was not." (SEC Memo Order, at 41.)

d.    "Taken as a whole, defendants' efforts to lure clients to Windham through false promises about expected returns on investment and about Windham's professional experience; Constantin's misappropriation of client funds, which he diverted to Constantin Resource, DAC, and Windham; Solomon's and Constantin's efforts to mislead clients about their actual account holdings with, among other things,

phony account statements; and their distribution of Leeward Group Holdings stock to clients in random amounts not proportionate with clients' respective investments in Leeward, in an apparent effort to cover up defendants' misconduct, all suggest the existence of a wide-sweeping fraudulent investment scheme." (SEC Memo Order, at 43.)

e.  "It is apparent from the record that Constantin and Solomon each acted knowingly and intentionally to mislead and defraud their clients." (SEC Memo Order, at 45.)

f.  "As to Constantin's state of mind, we find that the circumstantial evidence strongly suggests that he acted intentionally to defraud Windham's clients. In particular, we note that he directed Solomon to send clients account statements that he knew did not reflect clients' true investment holdings, that he manufactured a fake promissory note to send to Mier, that he told Mier that Leeward's book value was more than seven times the value that he knew it to be, and that he diverted client funds to his own use; all of this lends support to the conclusion that Constantin acted knowingly." (SEC Memo Order, at 47.)

g.  "In sum, we conclude that it is beyond triable dispute that [Constantin and the other named defendants] are primarily liable for securities fraud under § 17(a) of the Securities Act, and under § 10(b) of the Exchange Act and SEC Rule 10b–5." (SEC Memo Order, at 48.)

27.    Finally, in the Final Judgment in the *SEC v. Constantin* Case, the court enjoined Constantin from violating "Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b); SEC Rule 10b-5, 17 C.F.R. § 240.10b-5; and Section 17 (a) of the Securities Act of 1933, 15 U.S.C. § 77q(a)." (*See* Appendix to Opposition, Tolk Declaration, at ¶ 25, and ex. 6 thereto.)

28.     During a phone call among Constantin, Kevin Long and Brent Smith on November 30, 2022 (the "November 30 Call"), Constantin stated, in effect: "You need to tell the owners they need to work with me or I will empty the corporate shell and they will have nothing to come after. This is what I do, I am very good at it." (*See* Appendix to Opposition, Long Declaration, at ¶ 26; *see also id*., Smith Declaration, at ¶ 4.)

29.     Kevin Long has stated in a declaration that during the November 30 Call, "Constantin stated that he would do whatever it took to make sure that HSMG's assets, including equipment, were impossible to get to if Millrock intended to file UCC-1 filings on any equipment purchased with the Equipment Funds. Constantin further stated during the call that HSMG's single purpose subsidiary entities were set up in such a way as to make it very difficult to recover assets." (*See* Appendix to Opposition, Long Declaration, at ¶ 27.)

30.     Brent Smith has stated in a declaration that during the November 30 Call, Constantin stated, in effect: "You need to tell the owners they need to work with me or I will empty the corporate shell and they will have nothing to come after. This is what I do, I am very good at it." (*See* Appendix to Opposition, Smith Declaration, at ¶ 4.)

31.     Brent Smith also stated in his declaration that during the November 30 Call, "Constantin stated that he would do whatever it took to make sure that HSMG's assets, including equipment, were impossible to get to if Millrock intended to file UCC-1 filings on any equipment purchased with the Equipment Funds. Constantin further stated during the call that HSMG's single purpose subsidiary entities were set up in such a way as to make it very difficult to recover assets." (*See* Appendix to Opposition, Smith Declaration, at ¶ 5.)

32.    Constantin and McMahen exercised substantial control over HSMG and HSH. (*See* Constantin and McMahen' Statement of Undisputed Facts, ¶ 18 (stating Constantin acted as HSMG's CEO and sole member of its Board of Directors).)

## ARGUMENT

When adjudicating a motion for summary judgment, "the moving party bears the ultimate burden of establishing its right to summary judgment as a matter of law." *Trainor v. Apollo Metal Specialties, Inc*., 318 F.3d 976, 982 (10th Cir. 2002). Courts may grant summary judgment only when the moving party shows "that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law." *Trainor v. Apollo Metal Specialties, Inc*., 318 F.3d 976, 982 (10th Cir. 2002). The party opposing summary judgment has no burden of proof and need only "set forth specific facts showing the presence of a genuine issue of material fact" to defeat a motion for summary judgment. *Trainor v. Apollo Metal Specialties, Inc*., 318 F.3d 976, 982 (10th Cir. 2002).

That requirement may also be met, however, "where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Zurich Am. Ins. Co. v. Ascent Constr*., Inc., No. 1:20-CV-00089-DBB, 2022 WL 280779, at *1 (D. Utah Jan. 31, 2022) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 n.5 (1986)). In other words, courts may deny a motion for summary judgment as premature if fact discovery has not closed and the parties still need to develop the factual record to determine whether there is a genuine issue of material fact. *See Zurich Am. Ins. Co. v. Ascent Constr., Inc.*, No. 1:20-CV-00089-DBB, 2022 WL 280779, at *2 (D. Utah Jan. 31, 2022). Finally, when reviewing the record, courts must "view the evidence in the light most favorable" to the nonmoving party. *Trainor v. Apollo Metal Specialties, Inc*., 318 F.3d 976, 982 (10th Cir. 2002).

The Motion should be denied because it is premature, and because there are genuine issues

or disputes of material fact regarding whether HSMG/HSH transferred money to Constantin and McMahen. In addition, Constantin and McMahen's request for attorney's fees should be denied.

**I.    The Motion Should be Denied as Premature Because the Parties Need to Further Develop the Factual Record During the Next Five Months of Fact Discovery.**

Courts have "discretion to resolve a motion for summary judgment before the close of discovery if there is no genuine issue of material fact." *Zurich Am. Ins. Co. v. Ascent Constr., Inc.*, No. 1:20-CV-00089-DBB, 2022 WL 280779, at *1 (D. Utah Jan. 31, 2022). However, deciding a motion for summary judgment *before* the close of fact discovery is not favored, because doing so "would effectively prevent the parties from developing the factual record, thereby undermining the court's ability to accurately determine whether there is 'no genuine issue of material fact' on the relevant issues." *Zurich Am. Ins. Co. v. Ascent Constr., Inc*., No. 1:20-CV-00089-DBB, 2022 WL 280779, at *2 (D. Utah Jan. 31, 2022); *see also Guymon v. Litsey*, No. 2:18-CV-00850-DB-DBP, 2020 WL 5947500, at *2 (D. Utah Sept. 14, 2020) ("Although a party may move for summary judgment prior to the conclusion of discovery, courts often deny motions for summary judgment or motions for judgment on the pleadings as premature when no discovery has been conducted."). The Motion is premature because fact discovery has just begun in this case.

Shortly after commencing this suit, Parr Brown began preparing a petition for involuntary bankruptcy against HSMG in the United States Bankruptcy Court for the District of Delaware. (*See* Appendix to Opposition, Tolk Declaration, at ¶ 5.) On September 15, 2023, Millrock and other petitioning creditors filed a petition for involuntary bankruptcy against HSMG in the U.S. Bankruptcy Court for the District of Delaware. (*See* Appendix to Opposition, Tolk Declaration, at ¶ 6.) On December 19, 2023, the U.S. Bankruptcy Court for the District of Delaware opened HSMG's Bankruptcy Case. (*See* Appendix to Opposition, Tolk Declaration, at ¶ 7.) Thus, from late April or May 2023 through December 19, 2023, Millrock anticipated that the automatic stay

from HSMG's Bankruptcy Case might affect this case, and that the chapter 7 Trustee in HSMG's Bankruptcy Case might take over and pursue the same claims that Millrock was pursuing in this case. For those reasons, Millrock initially held off on pursuing fact discovery in this case.

In light of HSMG's Bankruptcy Case, this Court entered two Orders staying all deadlines in this case from March 15, 2024 (the date on which Constantin and McMahen filed the Motion) until July 31, 2024. (*See* Appendix to Opposition, Tolk Declaration, at ¶¶ 8-9; *see also* ECF Nos. 97 110.) On June 20, 2024, the Bankruptcy Court in Delaware dismissed HSMG's Bankruptcy Case after HSMG failed to comply with a court order. (*See* Appendix to Opposition, Tolk Declaration, at ¶ 10.) Pursuant to a stipulated motion, the Court entered an order on July 9, 2024 setting a January 17, 2025 fact discovery cutoff in his case. (*See* ECF No. 116.)

On July 24, 2024, Millrock served the Discovery Requests; Constantin and McMahen's responses to the Discovery Requests are due on August 26, 2024. (*See* Appendix to Opposition, at Tolk Declaration, at ¶¶ 13-14.) Millrock has also noticed depositions of Justin Smith for September 18, 2024; McMahen for September 24, 2024; and Constantin for September 25, 2024. (*See* Appendix to Opposition, Tolk Declaration, at ¶¶ 15.) Millrock has until January 17, 2025 to complete its fact discovery, and Millrock needs that time to further develop the factual record (in addition to the Constantin and McMahen settlement agreements and the March 5, 2023 Form 8-K that are attached to the Appendix of Evidence in Support of Defendants Joshua Constantin and Stuart McMahen's Motion for Summary Judgment as Exhibits B, E and F) that the alleged transfers took place. The responses to the Discovery Requests, and the depositions of Constantin, McMahen and Smith, will provide further evidence on the issue of whether the alleged transfers took place. If the Court were to decide the Motion before Millrock has been able to finish conducting fact discovery, then the Court's ability to accurately determine whether a genuine dispute exists would

be diminished.

However, if the Court were to deny the Motion, it could adjudicate the Motion (or a renewed motion for summary judgment) after fact discovery with the benefit of having a more developed factual record from the responses to the pending Discovery Requests, the transcripts of the depositions of Justin Smith, Constantin and McMahen, documents obtained via subpoena from third parties, and transcripts of the depositions of third parties. In its Rule 56(d) Motion, Millrock outlined the discovery that it intends and needs to take in connection with the Motion.

The facts surrounding the alleged transfers are in the exclusive control of Constantin, McMahen and third parties, and Millrock has not had the opportunity yet to discover those facts in light of HSMG's Bankruptcy, the stays of this case, and the other issues outlined above. *See Adams*, 30 F.4th 943, 968–69 (10th Cir. 2021) (explaining that "sufficient time for discovery is especially important when relevant facts are exclusively in control of the opposing party"). Although Constantin and McMahen argue that the alleged transfers are not reflected in HSH's bank records, Millrock has not yet had the opportunity to depose Constantin and McMahen about those records, to obtain HSMG's bank records, to obtain the bank records of entities related to Constantin and McMahen, or to obtain Constantin and McMahen's personal bank and financial records.

Assuming that the alleged transfers took place, they are probably reflected in HSMG's financial records, the personal financial records of Constantin and McMahen, and/or the financial records of entities related to Constantin and McMahen. Also, Constantin communicated to Kevin Long and Brent Smith that he would "empty the corporate shell" so that the owners would "have nothing to come after," that creating such a situation is what Constantin does, that he is "very good at it," and that HSMG's subsidiaries were "set up in such a way as to make it very difficult to

recover assets." (*See* Appendix to Opposition, Long Declaration, at ¶¶ 26-27; *see also id.*, Smith Declaration, at ¶¶ 4-5.) In other words, Constantin intended to use HSH and other subsidiaries as shell companies to move and hide assets to make it difficult for creditors like Millrock to recover legitimate debts. Thus, it is likely that Constantin has taken steps to hide facts evidencing the alleged transfer, particularly in light of the findings and judgment in the *SEC v. Constantin* Case. (*See* Appendix to Opposition, Tolk Declaration., at ¶¶ 22-25.)

In addition to the financial records of HSMG and the personal financial records of Constantin and McMahen, there are potentially additional records from "shell" entities that evidence the alleged transfers.

In summary, Millrock requests that it be given the opportunity to use the time between now and January 17, 2025 to conduct discovery (which it has already begun in the form of the Discovery Requests and the three depositions that have been noticed) into whether the alleged transfers took place. The Motion is premature and should be denied for that reason without prejudice.

## II.    The Motion Should Also be Denied Because a Genuine Dispute of Material Fact Exists—Whether the Alleged Transfers Took Place.

Even with the limited record before the Court, long before the close of fact discovery, genuine disputes of material facts exist in connection with the Motion. It is settled that when adjudicating a motion for summary judgment, courts must "construe the factual record and reasonable inferences therefrom in the light most favorable to the nonmovant." *Janny v. Gamez*, 8 F.4th 883, 899 (10th Cir. 2021) (cleaned up); *see also Christoffersen v. United Parcel Serv., Inc.*, 747 F.3d 1223, 1227 (10th Cir. 2014). And when viewing the evidence in a light most favorable to the nonmoving party, evidence is sufficient to defeat a motion for summary judgment if *any* reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In other words, if the nonmovant points to any evidence to rebut a

motion for summary judgment, then a court may grant the motion only if "considering the record as a whole," no reasonable jury could find in favor of the nonmoving party. *Green v. Padilla*, 697 F. Supp. 3d 1115, 1173 (D.N.M. 2023).

Here, Constantin and McMahen argue that there is no evidence that the alleged transfers took place. (Motion, at 11.) However, the SEC filings and the Settlement Agreements constitute evidence that the alleged transfers took place. (*See* Appendix to Motion, exhibits B, E, and F.)

The SEC filings state that HSH entered into a settlement agreement with McMahen in which "HSH agreed to pay Mr. McMahen a total sum of $465,000." (Appendix to Motion, exhibit B.) The SEC filings also state that HSH entered into a similar agreement with Constantin in which "HSH agreed to pay Mr. Constantin a total sum of $2,235,923." (*Id.*) That alone is enough to create a genuine dispute as to whether HSMG/HSH transferred money to Constantin and McMahen.

And the Settlement Agreements confirm that HSH/HSMG agreed to make the alleged transfers to Constantin and McMahen. (Appendix to Motion, exhibits E and F.) Indeed, the agreements are signed by HSH, McMahen, and Constantin. (*See id.*) Thus, the record contains evidence that the alleged transfers were agreed upon and that the parties to the agreements executed the agreements and, at the very least, intended to make the alleged transfers. Constantin and McMahen do not dispute this. (Motion, at 10.) Instead, Constantin and McMahen point to three pieces of evidence they believe suggest that the alleged transfers never actually occurred.

First, Constantin and McMahen point to declarations from themselves, in which Constantin and McMahen assert they never received the alleged transfers. (*See* Appendix to Motion, exhibits A and G.) But those declarations do not entitle Constantin and McMahen to summary judgment, because they are self-serving and because Millrock has produced conflicting declarations that suggest that Constantin took steps to keep Millrock from collecting a legitimate debt from HSMG.

*Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) ("Material factual disputes cannot be resolved at summary judgment based on conflicting affidavits."); *see also*, Appendix to Opposition, Long Declaration and Smith Declaration). If a self-serving declaration were enough to entitle a party to summary judgment, then almost no plaintiff could ever survive summary judgment.

Second, Constantin and McMahen point to HSH's bank records and assert that the produced bank records do not evidence the alleged transfers. (*See* Appendix to Motion, exhibit I.) But it is not clear whether the produced records are complete. Indeed, HSH could have made the transfers in a way that would not be reflected in its bank records, or HSH may have accounts with other, undisclosed banking institutions. And it is possible that the transfer did not come from HSH but instead came from HSMG or one of its other subsidiaries. Notably, Constantin and McMahen have not produced their own personal financial records to show that they never received the alleged transfers. Instead, Constantin and McMahen have conveniently produced bank records from only one party, HSH; that may be some evidence that HSH did not make the alleged transfers. But it is not conclusive evidence that Constantin and McMahen did not receive the alleged transfers.

Third, Constantin and McMahen point to the judgments they obtained against HSMG and HSH and argue that they would not have obtained the judgments had they received the alleged transfers. (*See* Appendix to Motion, exhibit H.) Those judgments do not constitute conclusive evidence that Constantin and McMahen never received the alleged transfers, and those judgments are highly suspect in light of Constantin's comments on the November 30 Call and the findings of the court in the *SEC v. Constantin* Case. (*See* Appendix to Opposition, Tolk Declaration, exs. 4–7.)

The record raises significant questions about Constantin's credibility. (*See, e.g.*, Appendix

to Opposition, Tolk Declaration, ex. 5 ("SEC Memo Order 2").) For example, one court has already found that Constantin has previously received more than one million dollars of "ill-gotten gains" from clients and transferred that money to various entities in several different transactions. (*See* SEC Memo Order 2, at 2–3.) Constantin had a "close relationship" with those entities, much like he does here with HSMG and HSH. (*Id.* at 7.) The court described Constantin's conduct as a "pattern of fraudulent misconduct" and that Constantin's "fraud" was "sweeping [in] nature." (*Id.* at 9.) Constantin is involved in similar sweeping fraudulent conduct here.

Indeed, Constantin himself told Mr. Long that he would do whatever it took to keep Millrock from collecting a debt from HSMG/HSH. (*See* Appendix to Opposition, Long Declaration, at ¶ 27.) Constantin even went so far as to admit that the very reason for HSH and other subsidiaries' existence was to make it difficult for creditors like Millrock to collect debts. (*See id.*)

Moreover, Constantin and McMahen exercised substantial control over HSMG and HSH. Indeed, McMahen served as HSH's general counsel, (*see* Appendix to Motion, exhibit G, at ¶ 3), and Constantin co-founded HSH and served as HSH's comptroller and lead supervisor, (*see* Appendix to Motion, exhibit A, at ¶¶ 3–4). Constantin also served as HSMG's CEO and sole member of its board of directors. (*See* Constantin and McMahen' Statement of Undisputed Facts, at ¶ 18.) It would, therefore, not be difficult for Constantin and McMahen to use HSMG or HSH as shells to move money around, obscure evidence of the alleged transfers, and obtain a bogus judgment against the very entities they control to cover their tracks.

Even if a fact finder ultimately finds that Constantin and McMahen's evidence is more persuasive than Millrock's, that is not the standard for summary judgment. Instead, to be entitled to summary judgment, Constantin and McMahen must show that no reasonable jury, based on the

record as a whole and viewed in a light most favorable to Millrock, could find that the alleged transfers took place. Constantin and McMahen have not met their high burden.

When the record is viewed as a whole, in a light most favorable to Millrock, a reasonable jury could find that Constantin and McMahen received the alleged transfers, lied in their declarations, and obtained the judgments in an effort to hide the fact that they received the alleged transfers. The Court should, therefore, deny the Motion.

### III.    The Court Should Deny Constantin and McMahen's Request for Fees Because Millrock's Claims Have Merit and Were Brought in Good Faith.

Because the Motion should be denied, it follows that Constantin and McMahen should not be awarded their fees. Constantin and McMahen ask for attorney fees under Utah Code section 78B-5-825. But fees may be awarded under that section only if (1) the claims brought were without merit and (2) the claims were not asserted in good faith. *See* Utah Code. § 78B-5-825. Constantin and McMahen fail to meet both elements even if their Motion is ultimately granted.

(1) <u>Millrock's claims against Constantin and McMahen have merit because they have a basis in law and fact.</u>

Millrock's claims have merit for the reasons stated herein. Namely, there is a genuine dispute of whether the alleged transfers took place. Specifically, the SEC filings and Settlement Agreements strongly suggest that the alleged transfers took place. And although Constantin and McMahen have pointed to some evidence that suggests the alleged transfers never actually occurred, such evidence is far from conclusive. In sum, Millrock's claims do not lack a basis in law, and there is, at the very least, some basis in fact too, even on the limited record before discovery is complete. For those reasons, Constantin and McMahen are not entitled to fees even if the Motion is granted. *See Rocky Ford Irrigation Co. v. Kents Lake Reservoir Co*., 2020 UT 47, ¶ 77, 469 P.3d 1003, 1022 (explaining claims may be without merit if the "claim lacks a basis in law

or fact" (cleaned up)).

    (2) <u>Millrock's claims were asserted in good faith because Millrock did not bring the claims with bad intent.</u>

Even if there was no basis in law or fact for Millrock's claims, they were asserted in good faith because Millrock has an honest belief in the propriety of the activities in question, no intent to take unconscionable advantage of others, and no intent to, or knowledge of the fact that the activities in question will hinder, delay, or defraud others. *See In re Discipline of Sonnenreich*, 2004 UT 3, ¶ 48, 86 P.3d 712, 726.

Constantin and McMahen argue that the claims were not asserted in good faith, because, according to them, Millrock has produced no evidence that the alleged transfers took place and because Millrock declined to drop the claims after they shared their belief with Millrock that there is no evidence of the alleged transfers. (*See* Motion, at 13–15.) There are at least three problems with that argument.

First, this argument conflates the "two distinct elements" — (1) merit and (2) good faith. The second element, "implicates fact-intensive questions about the losing party's subjective intent." *Id*. at ¶ 77 (cleaned up). Claims that are brought without merit, i.e. claims brought with no basis in fact or law, are not automatically brought in bad faith. *In re Discipline of Sonnenreich, 2004 UT 3, ¶ 49, 86 P.3d 712, 726* ("the mere fact that an action is meritless does not necessarily mean that the action is also brought in bad faith"). Here, Constantin and McMahen do not allege, let alone provide proof, that Millrock had bad intent in bringing its claims. *Id*. at ¶ 48 (explaining claims may be brought in bad faith if brought with (1) without an honest belief in the propriety of the activities in question; (2) intent to take unconscionable advantage of others; and (3) intent to, or knowledge of the fact that the activities in question will hinder, delay, or defraud others).

Second, the argument is untrue. As has been stated ad nauseum, there *is* evidence that the alleged transfers took place and that Constantin took steps to conceal the transfers (the SEC Filings, the Settlement Agreements, Kevin Long's Declaration, etc.).

Third, if fees could be awarded to a defendant simply because they asked the plaintiff to dismiss claims based on the belief that the evidence did not support the claims, then fees could be awarded to *every* defendant that was awarded summary judgment. But that is obviously not the intent behind Utah Code section 78B-5-825. *See In re Discipline of Sonnenreich*, 2004 UT 3, ¶ 46, 86 P.3d 712, 725 (explaining the section of Utah Code under which courts may award fees for meritless and bad faith claims is meant to be "narrowly drawn and not meant to be applied to all prevailing parties in all civil suits" (cleaned up)).

Constantin and McMahen's request for attorney's fees should, therefore, be denied.

## CONCLUSION

For the foregoing reasons, Millrock respectfully requests that the Court deny the Motion and deny Constantin and McMahen's request for attorney's fees.

## REQUEST FOR ORAL ARGUMENT

Pursuant to DUCivR 7-1(g), Millrock respectfully requests oral argument on this Motion. Good cause exists for holding oral argument because (1) the Motion is a dispositive motion that seeks a dismissal of all claims against Constantin and McMahen, along with an award of attorney's fees and costs; and (2) HSMG's Bankruptcy Case and the stays in this case prevented Millrock for a time from taking fact discovery, and Millrock has just begun taking fact discovery.

DATED August 8, 2024.

PARR BROWN GEE & LOVELESS

By: /s/ Chase Wilde

Terry E. Welch
Bentley J. Tolk
Rodger M. Burge
C. Chase Wilde

*Attorneys for Plaintiff Millrock Investment Fund 1, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on 8 August 2024, I caused to be served a true and correct copy of

the foregoing **OPPOSITION TO DEFENDANTS JOSHUA CONSTANTIN AND STUART**

**MCMAHEN'S MOTION FOR SUMMARY JUDGMENT** via email on the following:

Keith Woodwell
kmw@clydesnow.com
**Clyde Snow & Sessions**
201 South Main Street, #2200
Salt Lake City, Utah 84111

Justin Smith
1779 Cumberland Rd
Cleveland Heights, OH 44118
240.242.7709
Justin.landes@gmail.com

                                             __ /s/ Chase Wilde __
                                             *Attorney*