Terry E. Welch (5819)
Bentley J. Tolk (6665)
Rodger M. Burge (8582)
C. Chase Wilde (17546)
**PARR BROWN GEE & LOVELESS**
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Telephone: (801) 532-7840
Facsimile: (801) 532-7750
twelch@parrbrown.com
btolk@parrbrown.com
rburge@parrbrown.com
cwilde@parrbrown.com

*Attorneys for Plaintiff Millrock Investment Fund 1, LLC*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| MILLROCK INVESTMENT FUND 1, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>HEALTHCARE SOLUTIONS MANAGEMENT GROUP, INC.; HEALTHCARE SOLUTIONS HOLDINGS INC.; LANDES CAPITAL MANAGEMENT, LLC; LANDES AND COMPAGNIE TRUST PRIVE KB; JOSHUA CONSTANTIN; JUSTIN SMITH; STUART MCMAHEN; and BLACK LABEL SERVICES, INC.,<br><br>    Defendants. | **OPPOSITION TO MOTION TO DISMISS DEFENDANT JUSTIN SMITH**<br><br>**(Hearing Requested)**<br><br>Case No. 2:23-CV-00157-RJS-DAO<br><br>Chief District Judge Robert J. Shelby<br><br>Magistrate Judge Daphne A. Oberg |

Plaintiff Millrock Investment Fund 1, LLC ("Millrock") respectfully submits this Opposition to Motion to Dismiss Defendant Justin Smith (Doc. No. 75 the "Motion").

## **INTRODUCTION**

Millrock entered into an agreement with Healthcare Solutions Management Group, Inc. ("HSMG") relating to commercial properties. For a time, Justin Smith ("Smith") served as the CEO of HSMG. As alleged in the Second Amended Complaint, HSMG owes Millrock millions of dollars.

Millrock prepared to assert claims to collect damages caused by HSMG and the other Defendants in this case. After learning about the pending lawsuit, HSMG transferred more than 90 million dollars to entities owned by Smith in exchange for HSMG stock that was essentially worthless. As to Smith, Millrock alleges that the transfer between him and HSMG is voidable because it was done with the intent to hinder, delay, or defraud Millrock. Millrock also brought an alter ego claim against Smith, alleging that the entities that received the large sums of money from HSMG are, in reality, facades that Smith uses for his own personal interests, specifically, for siphoning funds to himself.

Smith filed an answer to the complaint and appeared personally for a scheduling conference, and he has actively participated in this case. Then, almost two months after answering the complaint, Smith filed the Motion to dismiss the complaint as it pertains to him. In the Motion, Smith makes three main arguments: (i) that the Court lacks subject-matter jurisdiction; (ii) that the Court lacks personal jurisdiction over him; and (iii) that Millrock has failed to state a claim upon which relief can be granted because the evidence does not support Millrock's claims.

Contrary to Smith's arguments, this Court has diversity subject-matter jurisdiction because each Defendant is diverse from Millrock and the amount in controversy exceeds $75,000. Also, Smith waived any argument he might have had that this Court lacks personal jurisdiction over him, because Smith filed an answer to the complaint in which he failed to raise the personal jurisdiction

defense, and he has actively litigated this matter. Smith's failure to state a claim argument fails because it improperly asks the Court to consider and weigh evidence in the context of a motion to dismiss. Moreover, Millrock has alleged facts sufficient to support both of its claims against Smith at this early stage of the litigation. Smith's Motion must be denied.

## **FACTS**

1.  Millrock filed a Second Amended Complaint against Smith and the other Defendants. (*See* Doc. No. 28 the "Second Amended Complaint".)

2.  In the Second Amended Complaint, Millrock alleges that this Court has diversity subject-matter jurisdiction under 28 U.S.C. § 13332(a)(1) because the amount in controversy exceeds $75,000 and the parties are citizens of different states. (*Id.* ¶ 10.)

3.  Millrock also alleges that this Court has personal jurisdiction over Smith under Utah Code Ann. § 78B-3-205 because he transacted business or caused injury within the State of Utah. (*Id.* ¶ 11.)

4.  Millrock brings two claims against Smith—voidable transfer and alter ego. (*Id.* ¶¶ 106–130.)

5.  Specifically, Millrock alleges that Defendant HSMG is indebted to Millrock for millions of dollars in amounts owed under various commercial leases, for costs in developing various commercial properties, and loan agreements. (*See, e.g., id.* ¶¶ 16, 17, 21, 37, 39, 43, 45, 50, 59, 67.)

6.  Millrock alleges further that HSMG made multiple transfers to various entities, some of which are controlled by Smith, shortly after being notified of this lawsuit. (*Id.* ¶¶ 77–79, 107–112.)

7.  For example, Millrock alleges that HSMG transferred $93,933,345.48 to Landes

Capital Management, LLC and Landes and Compagnie Trust Prive KB, which are controlled by Smith, in exchange for one million shares of HSMG. (*Id.* ¶ 107.)

8. Millrock alleges that this transfer is voidable because it was made with intent to defraud Millrock. (*See, e.g.,* i*d.* ¶ 109.)

9. Specifically, Millrock alleges that the transfer is voidable because it was made to entities controlled by Smith, who was the outgoing CEO of HSMG, in exchange for shares that had little to no real value. (*Id.* ¶¶ 109–110.)[1]

10. Millrock further alleges that those entities, Landes Capital and Compagnie, "have failed to observe corporate formalities, are undercapitalized, and lack corporate records." (*Id.* ¶ 128.)

11. Millrock alleges that Smith used those entities as an alter ego because they are "a façade for his personal operations, to siphon funds to himself, and/or to promote fraud or injustice by siphoning funds away from HSMG to avoid its obligations" to Millrock. (*Id.* ¶ 129.)[2]

12. On November 22, 2023, Smith filed an Answer to the Second Amended Complaint. (*See* Doc. No. 67 "Smith's Answer".)

13. In general, Smith denies Millrock's allegations. He also lists twelve affirmative defenses in his Answer. (*See* Smith's Answer, at 16–18.)

14. Smith does not list lack of personal jurisdiction in his affirmative defenses. (*See id.*)

15. In addition to Smith's Answer, Smith has made ten other filings in this matter and

---

[1] Rather than repeat each of Millrock's allegations pertaining to its voidable transfer claim, it simply states that Millrock made specific allegations that support its voidable transfer claim. (*See* Second Amended Complaint ¶¶ 106–120.)

[2] Again, instead of repeating each of Millrock's allegations pertaining to its claim for alter ego, it simply states that Millrock made specific allegations that support its alter ego claim. (*See id.* at ¶¶ 121–130).

appeared personally for a scheduling conference with the Court. (*See* Doc Nos. 27, 68, 69, 74, 75, 80, 87, 88, 89, 98, and 103.)

16. Nearly two months after Smith answered the Second Amended Complaint, he filed his Motion to Dismiss. (*See* Motion.)

17. Fact discovery for this matter does not close until January 17, 2025. (*See* Doc No. 116.)

18. Millrock has already noticed Smith's deposition in this case for September 18, 2024, and anticipates serving written discovery requests on Smith sometime during the week of August 19, 2024.

## **ARGUMENT**[3]

Smith argues that the Second Amended Complaint should be dismissed as to him because (i) this Court lacks subject matter jurisdiction over this matter; (ii) this Court lacks personal jurisdiction over him; and (iii) Millrock has failed to state a claim against him upon which relief can be granted.[4] All of Smith's arguments lack merit and must be rejected.

### I. The Court Has Diversity Subject-Matter Jurisdiction Over the Claims in This Matter.

Federal district courts have diversity subject-matter jurisdiction when two conditions are met: (i) complete diversity among parties; and (ii) the matter in controversy exceeds $75,000. *Grynberg v. Kinder Morgan Energy Partners, L.P.*, 805 F.3d 901, 905 (10th Cir. 2015). The first condition is met when no plaintiff is a citizen of the same state as any defendant. *Id*. The second

---

[3] Although Smith is a pro se litigant, a litigant's pro se status "does not excuse the obligation of any litigant to comply with the fundamental requirements of the Federal Rules of Civil and Appellate Procedure." *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994). For that reason, Smith's failures to follow the Federal Rules of Civil Procedure, which are highlighted in this Opposition, prove just as fatal to his arguments as they would to any other litigant.

[4] Smith purports to bring the Motion pursuant to "Rule 12(b)(1) and 12(b)(6)[.]" (Motion, at 1). But the body of the Motion appears to make an argument under Rule 12(b)(2) as well. (*See, e.g., id*. at 4 (arguing that "[t]his court lacks personal jurisdiction over Defendant Justin Smith")).

condition is met when a plaintiff alleges "in good faith" that its alleged damages exceed $75,000. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014).

Although Smith states that he brings his Motion "[p]ursuant to Rule 12(b)(1)", lack of subject-matter jurisdiction (Motion, at 1), he does not elaborate on how or why this Court does not have subject-matter jurisdiction over this matter. Indeed, he fails to reference or address subject-matter jurisdiction anywhere in the Motion. Smith has thus failed to set forth or address any actual challenge to this Court's subject-matter jurisdiction.

Moreover, based on the face of the Second Amended Complaint (and as set forth in Millrock's Response to March 13, 2023 Order to Show Cause, Doc. No. 29), this Court has diversity jurisdiction over this matter because Millrock made sufficient allegations to establish both conditions for diversity jurisdiction. Specifically, Millrock alleges that each Defendant is a citizen from a state other than Utah, Arizona, and Virginia, which are the citizen states of Millrock's members. Millrock also alleges in good faith that the amount in controversy is in the millions of dollars, which far exceeds $75,000. And no Defendant has challenged his/its alleged citizenship or the alleged amount in controversy. The Court may, therefore, accept as true the allegations made in the Second Amended Complaint as they relate to diversity jurisdiction. *See Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (explaining that a facial attack to subject-matter jurisdiction "challenges … jurisdiction without disputing the facts alleged in the complaint, and it requires the court to consider the allegations of the complaint as true" (cleaned up)). AS a result, the Court has subject-matter jurisdiction over this matter because every Defendant is diverse from Millrock, and the amount in controversy exceeds $75,000.

II.     **The Court Has Consent and Specific Personal Jurisdiction Over Smith.**

A defendant wishing to challenge a court's personal jurisdiction over them must do so in a

pre-answer motion or in the answer. *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202 (10th Cir. 1986). If a defendant answers a complaint before arguing that the court lacks personal jurisdiction, then the defendant forever waives any argument for lack of personal jurisdiction. Fed. R. Civ. P. 12(h)(1)(B). A defendant may also waive the personal defense of lack of personal jurisdiction "by voluntary appearance." *Williams*, 802 F.2d 1200, 1202.

Smith waived any argument that this Court lacks personal jurisdiction over him by (1) filing his Answer to the Second Amended Complaint without raising lack of personal jurisdiction as an affirmative defense and (2) by voluntarily appearing in this case. Indeed, Smith has actively participated in this matter since March 15, 2023, when he personally appeared and participated in a scheduling conference held before Judge Robert J. Shelby. (*See* Doc. No. 27.) Smith has thus consented to this Court's personal jurisdiction by making a voluntary appearance, filing an answer to the Second Amended Complaint, and by making ten additional filings. *See Williams*, 802 F.2d 1200, 1202 ("Once waived, lack of personal jurisdiction may not be raised by the court.").

Even if the Court could consider the merits of Smith's lack of personal jurisdiction argument, that argument would still fail. Millrock's allegation that Smith received a voidable transfer, and the fact that Millrock's citizenship is in Utah, is enough to give this Court specific personal jurisdiction over Smith. *See, e.g.*, *In re Akbari–Shahmirzadi*, 2016 WL 6783245, at *3 (Bankr. D.N.M. Nov. 14, 2016) (finding that courts have personal jurisdiction to hear fraudulent transfer cases under the *Calder* analysis, even when the transfer is the only contact between the debtor and the foreign transferee); *see also In re Chase & Sanborn Corp.*, 835 F.2d 1341 (11th Cir.1988), *reversed on other grounds*, 492 U.S. 33 (1989); *Mullins v. Testamerica, Inc.*, 564 F.3d 386, 402 (5th Cir. 2009); *Gambone v. Lite Rock Drywall*, 288 Fed. Appx. 9, 13–14 (3d Cir. 2008). This is because Smith's alleged tortious conduct caused harm inside the state of Utah. *See* Fed. R.

7

Civ. P. 4(k) (explaining that a federal district court's personal jurisdiction stretches as far as the state courts in which the federal court sits); *see also* Utah Code Ann. § 78B-3-205(3) (West 2008) (explaining that nonresidents are subject to the jurisdiction of Utah courts if they cause injury in the state through tortious conduct).

In summary, Smith has waived any challenge to personal jurisdiction, and the Court has personal jurisdiction over him in this case anyway. Millrock has previously briefed the Court on why and how it has personal jurisdiction over Smith in this case and subject-matter jurisdiction over the issues, and Millrock also reincorporates herein the arguments made in that filing. (*See* Millrock's Response to March 13, 2023 Order to Show Cause – Doc. No. 29.)

### III. Millrock Has Alleged Plausible Facts to State Claims for Voidable Transfer and Alter Ego Against Smith.

Lastly, Smith argues that the claims against him should be dismissed because Millrock has supposedly failed to state a claim against him upon which relief may be granted. That argument appears to be based on Smith's belief that he cannot be held personally liable, because he was supposedly acting as a representative and on behalf of separate entities that are distinct from him personally.[5] Smith acknowledges that the law allows for piercing the corporate veil, but he argues that Millrock's "allegations fail to meet" the elements for piercing the corporate veil. Smith's arguments, however, improperly disregard the legal standards for motions to dismiss.

When adjudicating motions to dismiss under Rule 12(b)(6), courts "accept all well-pled allegations in the complaint as true and view them in the light most favorable to the nonmoving party." *Davis-Warren Auctioneers, J.V. v. F.D.I.C.*, 215 F.3d 1159, 1161 (10th Cir. 2000). Courts

---

[5] *See* Motion at 3 (arguing that Smith was "the Interim CEO of [HSMG]" and acting "on behalf of [HSMG]" when he executed the leases at issue); *see also id.* at 7 (arguing that Smith "acted within his role as President of Landes and Compagnie Trust Prive Kommanditbolag when he entered into a separation Agreement with HSMG").

do not weigh evidence or potential evidence when adjudicating a 12(b)(6) motion. *In re NPS Pharms., Inc. Sec. Litig.*, No. 206-CV-00570, 2007 WL 1976589, at *2 (D. Utah July 3, 2007). If a court does consider "matters outside the pleadings," then it must treat the motion as a motion for summary judgment. *Id*. "A 12(b)(6) motion should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Davis-Warren Auctioneers, J.V.*, 215 F.3d 1159, 1161 (cleaned up).

The Motion improperly asks the Court to consider evidence outside of the pleadings and to weigh evidence. For example, Smith argues that Millrock's claims are supposedly "without merit" and "not supported by sufficient evidence and should be dismissed." (Motion, at 2–3.) Smith also argues that Millrock "must demonstrate, by clear and convincing evidence" the elements necessary to pierce the corporate veil. (Motion, at 7.) Smith further argues that Millrock "has failed to present any evidence, let alone clear and convincing evidence, to meet this burden." (Motion, at 7.) Finally, Smith attaches five documents (as appendices) to the Motion as evidence for the Court to consider in support of his motion to dismiss.

Smith's arguments and evidence are improper in the context of a motion to dismiss. They would make more sense in a motion for summary judgment. But the Court has not elected or notified Millrock that it intends to treat the Motion as a motion for summary judgment. And Smith did not give any indication in his Motion that it could alternatively be treated as a motion for summary judgment; it is titled "Motion to Dismiss"; it was brought pursuant to Rule 12, not Rule 56; and it correctly states that "the Court may only consider the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint and matters about which the Court may take judicial notice." (Motion, at 3 (cleaned up).) As a result, the Motion must be adjudicated as a motion to dismiss. *Marquez v. Cable One*, Inc., 463 F.3d 1118, 1121

(10th Cir. 2006) (explaining that unless a motion to dismiss is styled in the alternative as a motion for summary judgment, then a court must provide notice of its intent to convert a Rule 12(b)(6) motion into a motion for summary judgment); *see also* Fed. R. Civ. P. 56(g) (explaining that courts must give "notice and a reasonable time" for a nonmovant to respond before granting summary judgment).

Besides, as the Court pointed out just a few days ago, this lawsuit is in its "early stages." (Doc. No. 126, at 4.) Indeed, fact discovery does not close until next year. For those reasons, it would make little sense to convert the Motion to a motion for summary judgment even if Smith had styled the Motion as a motion for summary judgment in the alternative.

The Court, therefore, cannot weigh evidence or consider the documents attached to the Motion when adjudicating the Motion. Instead, the Court must accept as true all of Millrock's well-pled allegations and may consider only the pleadings and documents attached to the Second Amended Complaint. And when viewed though that lens, the Second Amended Complaint easily survives the Motion because Millrock has alleged plausible facts to support both claims against Smith— voidable transfer and alter ego.

A transfer is voidable by a creditor if (i) the debtor made the transfer with intent to hinder, delay, or defraud any creditor of the debtor, or (ii) if the transfer is made without receiving a reasonably equivalent value in exchange for the transfer, and the debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction. Utah Code Ann. § 25-6-202 (West 2017). Millrock has alleged plausible facts to support that HSMG made transfers to entities controlled by Smith to defraud Millrock.

Specifically, Millrock alleges in the Second Amended Complaint that HSMG transferred

millions of dollars to entities controlled by Smith in exchange for worthless shares of HSMG. (*See, e.g.,* Second Amended Complaint, ¶¶ 74–79, 106–112.) In sum, Millrock alleges that the transfer is voidable because HSMG had incurred substantial debts owed to Millrock, HSMG had been threatened with a lawsuit to collect those debts, HSMG made the transfers so that HSMG would not have assets necessary to pay debts owed to Millrock, and the transfer was not for reasonably equivalent value. (*See id*.) Taken as true, Millrock's allegations for voidable transfer easily survive the Motion.

As for Millrock's alter ego claim, a plaintiff may pierce the corporate veil under an alter ego theory when (1) there is unity of interest and ownership such that the separate personalities of the corporation and the individual no longer exist, and (2) the observance of the corporate form would sanction a fraud or promote injustice, or an inequitable result would follow. *See Greco v. Subgallagher Inv. Tr.*, No. 220CV00610JNPCMR, 2021 WL 5579279, at *2 (D. Utah Nov. 29, 2021). To survive a motion to dismiss, a nonmovant "need not conclusively prove alter ego liability at the pleading stage of the litigation[.]" *Id*. at *3. Instead, a nonmovant need only allege "plausible" facts supporting each element of alter ego liability. *Id*. Here, Millrock has done that.

Specifically, Millrock alleges that Smith is the sole member of Landes Capital and Compagnie, has ownership interest in those companies, and otherwise controls them. (*See, e.g*., Second Amended Complaint, ¶¶ 6, 7, 122, 124.) Millrock also alleges that Smith has voting and dispositive control over Landes Capital and Compagnie. (*Id*. ¶ 126.) Millrock has, therefore, alleged plausible facts to support the first element of an alter ego claim, that is, that Smith, Landes Capital, and Compagnie have a unity of interest so that the supposed separate personalities of the three no longer exist.

Millrock also alleges that Landes Capital and Compagnie "have failed to observe corporate

11

formalities." (*Id*. ¶ 128.). Specifically, Millrock alleges that the companies are undercapitalized and lack corporate records. (*Id*.) Millrock alleges further that Smith used the entities as a façade for his personal operations. (*Id*. ¶ 129.) Specifically, Millrock alleges that Smith used the entities to siphon "assets stated to be valued at $93,933,345.48" to himself to defraud Millrock and keep it from collecting a legitimate debt. (*Id*., at ¶¶ 127, 129.) Taken as true, these are plausible facts to support the second element of an alter ego claim, that is, observing the corporate forms of Landes Capital and Compagnie would sanction the alleged fraud on Millrock and lead to the inequitable result of keeping Millrock from collecting a legitimate debt.

Even if the Court determined that the facts alleged by Millrock provided only "thin support" for its claims against Smith, that is enough to survive the Motion. *See Subgallagher Inv. Tr.*, No. 220CV00610JNPCMR, 2021 WL 5579279, at *3 (explaining that "thin support" for an alter ego claim is enough to meet the "threshold pleading requirement"). And the facts alleged in the Second Amended Complaint are more than thin.

Indeed, Millrock's alleged facts are more than bare recitations of elements of the causes of action at issue. Millrock alleges how much, down to the very cents, the voidable transfers were ($93,933,345.48); it alleges approximately when the transfers were made (February 14, 2023); it alleges who the transfers were made to (Smith); it alleges the entities that were used to siphon the transfers to Smith (Landes Capital and Compagnie); and it alleges that transfers were done to defraud Millrock. (*See, e.g*., Second Amended Complaint, ¶¶ 74, 75, 106–112.) Smith argues that Millrock has not presented sufficient evidence to support its claims, but Millrock is not required to provide *any* evidence at this early stage of the litigation; it need only make well-pled allegations that show that discovery may reveal facts to support its claims.[6] And Millrock has pled sufficient

---

[6] If the Court were to decide to treat the Motion as a motion for summary judgment, Millrock would first be entitled to reasonable notice so that it could, at the very least, have time to provide

facts to support both of its claims against Smith, especially considering Millrock has yet to engage in meaningful discovery. As a result, the Motion should be denied.

## **CONCLUSION**

For the foregoing reasons, Millrock respectfully requests that the Court deny the Motion.

DATED August 13, 2024.

                                                PARR BROWN GEE & LOVELESS

                                                By: /s/ Chase Wilde
                                                     Terry E. Welch
                                                     Bentley J. Tolk
                                                     Rodger M. Burge
                                                     C. Chase Wilde

                                              *Attorneys for Plaintiff Millrock Investment Fund 1, LLC*

---

competing declarations and a formal response (including without limitation a separate Rule 56(d) motion) to a motion for summary judgment. *See Marquez v. Cable One, Inc.*, 463 F.3d 1118, 1121 (10th Cir. 2006); *see also* Fed. R. Civ. P. 56(d). Thus, if the Court were to opt to treat the Motion as a motion for summary judgment, Millrock would request reasonable, advance notice of such a decision. Millrock has already noticed Smith's deposition in this case for September 18, 2024, Stuart McMahen's deposition for September 24, 2024, and Joshua Constantin's deposition for September 25, 2024. Millrock has also served written discovery requests on Mr. McMahan and Mr. Constantin, and Millrock anticipates serving written discovery requests on Smith sometime during the week of August 19, 2024. Millrock also plans to serve multiple subpoenas for documents and depositions, all of which would be important to Millrock's response if the Motion were to be treated as a motion for summary judgment.

## CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2024, I caused to be served a true and correct copy of the foregoing **OPPOSITION TO MOTION TO DISMISS DEFENDANT JUSTIN SMITH** via the CM/ECF, which automatically provided notice to all counsel of record. On the same date, I also served a copy of the foregoing on Defendant Justin Smith via email:

Justin Smith
1779 CUMBERLAND RD
CLEVELAND HEIGHTS, OH 44118
(240) 242-7709
Email: justin.landes@gmail.com

                                                       /s/ Chase Wilde