IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| MILLROCK INVESTMENT FUND 1, LLC, <br><br> Plaintiff, <br><br> v. <br><br> HEALTHCARE SOLUTIONS MANAGEMENT GROUP, INC., et al., <br><br> Defendants. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT JUSTIN SMITH'S MOTION TO DISMISS <br><br> Case No. 2:23-cv-00157-RJS-DAO <br><br> Chief District Judge Robert J. Shelby <br><br> Magistrate Judge Daphne A. Oberg |

Now before the court is Defendant Justin Smith's Motion to Dismiss.[1] For the reasons explained below, the court DENIES Smith's Motion.[2]

## BACKGROUND

The court takes the following facts from Plaintiff Millrock Investment Fund 1, LLC's (Millrock) Complaint.[3] Millrock alleges improper transfers of money by an entity that was simultaneously in default on various loan and lease agreements.

Millrock is an investment and development fund that buys and sells commercial properties.[4] Defendant Healthcare Solutions Management Group, Inc. (HSMG), a publicly traded company, entered into a multi-unit development agreement with American Development Partners (ADP) to construct ambulatory surgical centers and advance care medical centers

---

[1] Dkt. 75, *Motion to Dismiss Defendant Justin Smith* (*Motion to Dismiss*).

[2] Pursuant to DUCivR 7-1(g), the court finds oral argument is not necessary for this motion and decides it on the papers.

[3] Dkt. 28, *Second Amended Complaint and Jury Demand* (*Complaint*).

[4] *Id.* ¶ 15.

throughout the country.[5]  Millrock, through a partnership with ADP, purchased several commercial properties that would serve as sites for the advanced care centers and surgical centers.[6]  HSMG and its affiliates entered into long-term leases for these facilities as tenants to operate urgent care centers.[7]

One such long-term lease involved a surgical center in Draper, Utah (Draper Lease).[8]  ADP entered into this lease as the landlord, with SARC by HSI – DRAPER, UT Inc. as the tenant.[9]  Defendant Justin Smith—then HSMG's CEO—signed for both SARC by HSI – DRAPER, UT Inc. as the lessee and for HSMG as the guarantor.[10]

Similarly, another long-term lease involved a surgical center in Keller, Texas (Keller Lease).[11]  Millrock entered into this lease as the landlord, with SARC by HSI – KELLAR, TX Inc. as the tenant.[12]  Defendant Justin Smith signed for both SARC by HSI – KELLAR, TX Inc. as the lessee and for HSMG as the guarantor.[13]  According to Millrock, neither tenant—SARC by HSI – DRAPER, UT Inc. nor SARC by HSI – KELLAR, TX Inc.—exists.[14]

ADP assigned the Draper Lease to Millrock, who subsequently assigned both leases to certain investors as tenants-in-common.[15]  In connection with development of the surgical centers, Millrock was required to pay ADP $2.55 million for the Draper project and $2.55

---

[5] *Id.* ¶¶ 16, 73.

[6] *Id.* ¶¶ 18–20.

[7] *Id.* ¶¶ 19, 21.

[8] *Id.* ¶¶ 20, 22–23.

[9] *Id.* ¶ 23.

[10] *Id.* ¶¶ 23, 25.

[11] *Id.* ¶¶ 20, 22, 31.

[12] *Id.* ¶ 31.

[13] *Id.* ¶¶ 31, 33.

[14] *Id.* ¶¶ 24, 32.

[15] *Id.* ¶¶ 28–30, 36.

million for the Keller project as an equipment allowance (Equipment Allowance).[16] ADP would submit draw requests for the Equipment Allowance throughout the development projects and then immediately transfer the withdrawn funds to HSMG to purchase the necessary equipment for each facility.[17] HSMG was to provide equipment specifications to contractors but failed to provide the specifications and otherwise failed to complete both projects.[18]

Millrock eventually withheld the funds for the last Equipment Allowance draw for both projects.[19] In light of HSMG's failure to comply with lease obligations to open and operate the medical facilities, Millrock and HSMG entered into a Loan Agreement and Promissory Note (Loan Agreement)—executed by Smith—in which Millrock loaned HSMG $350,000 to cover lease payments.[20] HSMG subsequently defaulted on the Loan Agreement by ceasing to make lease payments, among other contractual breaches.[21] Millrock also became aware that HSMG failed to use its Equipment Allowance as required—for equipment furniture, fixtures, and equipment purchases only.[22] On one occasion, while Millrock and ADP officials discussed HSMG's late rents for various properties with Defendant Joshua Constantin—the comptroller/head of commercial real estate for HSMG—threatened to "empty the corporate shell" so that the lease assignees would "have nothing to come after."[23]

---

[16] *Id.* ¶ 37.

[17] *Id.*

[18] *Id.* ¶¶ 41.

[19] *Id.* ¶¶ 40–41.

[20] *Id.* ¶¶ 42–45, 49–50.

[21] *Id.* ¶¶ 59, 66.

[22] *Id.* ¶¶ 38, 61–64.

[23] *Id.* ¶¶ 61, 77.

Two months after Millrock mailed a Notice of Default and Acceleration of Debt to HSMG, HSMG filed a Form 8-K with the SEC indicating that Smith was removed as a member of the board effective immediately.[24] As part of Smith's termination, HSMG agreed to pay Landes Capital Management, LLC (Landes) and Landes and Compagnie Trust Prive KB (Compagnie) $93,933,345.48 in exchange for 1 million shares of HSMG.[25] At that time, Smith had voting and dispositive control over the shares of both Landes and Compagnie.[26] Landes had in the past been found liable for disgorgement for having received "ill-gotten funds" for which Landes did not provide legitimate services.[27] According to the 8-K filing, the company had 92,076,638 shares outstanding, $659,194 in cash, $93,129,332 in total assets, and $14,484,751 in total liabilities.[28] Around this same time, news reports indicated one of HSMG's affiliate brands had failed to pay employee wages.[29]

Millrock named Smith two causes of action: Voidable Transfer and Alter Ego.[30] Presently before the court is Smith's Motion to Dismiss under Rules 12(b)(1), (2), and (6). This motion is fully briefed and ripe for review.[31]

---

[24] *Id.* ¶¶ 65, 74.

[25] *Id.* ¶ 6–7, 74.

[26] *Id.* ¶¶ 125–26.

[27] *Id.* ¶ 76.

[28] *Id.* ¶ 75.

[29] *Id.* ¶ 70.

[30] *Id.* ¶¶ 106–30.

[31] *Motion to Dismiss*; Dkt. 127, *Opposition to Motion to Dismiss Defendant Justin Smith* (*Opposition*). No Reply was filed within 14 days after service of the Opposition as required by DUCivR 7-1(4)(A)(iv).

## LEGAL STANDARD

The court is mindful that Smith proceeds pro se. Pro se litigants are held to less stringent standards than parties formally represented by lawyers, and their filings are "to be liberally construed."[32] However, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant" to salvage his claims.[33]

Smith requests the claims against him be dismissed for "failure to state a claim for relief," lack of personal jurisdiction, and lack of standing.[34] In the Tenth Circuit, a standing challenge is generally considered an attack on the court's subject matter jurisdiction and reviewed under Rule 12(b)(1).[35] Article III of the U.S. Constitution restricts federal court adjudication to actual cases or controversies.[36] To satisfy Article III's standing requirements, a plaintiff must show an "injury in fact," causation, and redressability.[37] "The party invoking federal jurisdiction bears the burden of establishing these elements."[38] A party never waives its ability to challenge subject matter jurisdiction,[39] but a challenge to personal jurisdiction is waived if not raised at the first opportunity in a responsive pleading.[40]

---

[32] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted).

[33] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[34] *Motion to Dismiss* at 1.

[35] *See Hill v. Vanderbilt Capital Advisors, LLC*, 702 F.3d 1220, 1224–25 (10th Cir. 2012).

[36] *See Utah v. Babbitt*, 137 F.3d 1193, 1201 (10th Cir. 1998).

[37] *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

[38] *Lujan*, 504 U.S. at 561 (citation omitted).

[39] Fed. R. Civ. P. 12(h)(3).

[40] Fed. R. Civ. P. 12(h)(1)(B); *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202 (10th Cir. 1986).

A motion to dismiss for failure to state a claim "tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."[41] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[42] A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[43] This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[44] A complaint need not set forth detailed factual allegations, yet "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action'" is insufficient.[45]

## ANALYSIS

Smith appears to seek dismissal from this case by arguing 1) Millrock lacks standing to sue; 2) this court lacks personal jurisdiction over him; and 3) Millrock fails to state a claim. None of these arguments have merit.

### 1. Millrock Has Standing to Sue Smith.

Smith invokes rule 12(b)(1) and argues Millrock's claims should be dismissed for "lack of standing" in his opening introduction paragraph before his "Memorandum of Points and Authorities."[46] However, Smith does not mention subject matter jurisdiction, standing, nor the

---

[41] Fed. R. Civ. P. 12(b)(6); *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994) (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991)).

[42] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[43] *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556).

[44] *Id.* at 679 (citation omitted).

[45] *Id.* at 678 (quoting *Bell Atl. Corp.*, 550 U.S. at 555).

[46] *Motion to Dismiss* at 1.

three components of standing anywhere else in his motion.[47] In any case, none of Smith's arguments undermine Millrock's claim it suffered an injury-in-fact, Smith caused the injury, and this court may grant relief for the injury. Millrock alleges it suffered a financial injury, that Smith was a party to a voidable transfer of money that caused the injury, and that this court can redress the injury by awarding money damages.[48] Millrock therefore has standing to sue.

### 2. Smith Waived His Personal Jurisdiction Challenge.

Smith waived his ability to challenge personal jurisdiction by filing an answer to Millrock's Second Amended Complaint without raising lack of personal jurisdiction as an affirmative defense.[49] Accordingly, Smith's challenge to personal jurisdiction is misplaced.

### 3. Millrock Properly Stated Claims for Voidable Transfer and Alter Ego Against Smith.

Under Utah law, a transfer is voidable by a creditor if (i) the debtor made the transfer with intent to hinder, delay, or defraud any creditor of the debtor, or (ii) if the transfer is made without receiving a reasonably equivalent value in exchange for the transfer, and the debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.[50] Furthermore, a plaintiff may pierce the corporate veil under an alter ego theory when (1) there is unity of interest and ownership such that the separate personalities of the corporation and the individual no longer exist, and (2) "the observance of the corporate form would sanction a fraud or promote injustice,

---

[47] *See Friends of the Earth, Inc.*, 528 U.S. at 180–81 (identifying the three requirements of standing as injury in fact, causation, and redressability); *see generally, Motion to Dismiss*.

[48] *See generally, Motion to Dismiss*.

[49] *See* Dkt. 67, *Answer to Second Amended Complaint*; Fed. R. Civ. P. 12(b)(2), 12(h)(1)(B)(ii).

[50] Utah Code Ann. § 25-6-202(1).

or an inequitable result would follow."[51] This court has found even "thin support" for an alter ego claim is enough to meet the "threshold pleading requirement."[52]

Smith argues Millrock has no basis for attributing personal liability to him for the actions he took as HSMG's CEO.[53] Smith appears to acknowledge that, in some instances, a court may pierce the corporate veil to hold an officer personally liable for their acts or omissions undertaken as agents of the corporation.[54] But Smith misstates Millrock's burden under Rule 12 by insisting Millrock has failed to produce "clear and convincing" evidence to support its veil-piercing claim.[55] At this stage of the proceeding, Millrock needs only to offer sufficient factual allegations that, accepted as true, give rise to a reasonable inference the asserted claims are plausible.[56] Millrock has done so for both claims against Smith.

Here, as to the voidable transfer claim, Millrock pleaded facts suggesting 1) HSMG agents deliberately manifested an intention to prevent Millrock from recovering on its lease and loan agreements;[57] 2) Smith signed Lease Agreements on behalf of entities that did not exist;[58] 3) Smith's eventual separation from HSMG involved a substantial sum of money transferred from HSMG to entities purportedly controlled by Smith for disproportionate consideration during a time when HSMG was potentially approaching insolvency, as evidenced by loan defaults, the failure of an HSMG affiliate to pay wages, and HSMG's mismanagement of Equipment

---

[51] *Jones & Trevor Mktg., Inc. v. Lowry*, 284 P.3d 630, 635 (Utah 2012) (citation omitted).

[52] *Greco v. Subgallagher Inv. Tr.*, No. 220-CV-00610-JNP-CMR, 2021 WL 5579279, at *3 (D. Utah Nov. 29, 2021).

[53] *Motion to Dismiss* at 3, 7–8.

[54] *Id.*

[55] *Id.* at 7.

[56] *See Iqbal*, 556 U.S. at 678.

[57] *Complaint* ¶ 61.

[58] *Id.* ¶¶ 23–24, 31–32.

Allowances;[59] and 4) one entity receiving the transfer was previously found liable on a claim for disgorgement for having received ill-gotten funds for which the entity did not provide legitimate services.[60] Accordingly, the court concludes it can reasonably infer at the Rule 12 stage that HSMG's capital transfer to entities controlled by Smith are voidable based on either an "intent to defraud" theory or a "disproportionate value" theory.

With respect to the alter ego claim, Millrock alleges that Smith is the sole member of Landes and Compagnie, has ownership interests in the entities, and otherwise controls them.[61] Moreover, Millrock alleges $93,933,345.48 was siphoned to Smith through these entities for the purpose of defrauding Millrock so that HSMG could avoid its debts.[62] The same facts giving rise to the inference the transfer was voidable also support the inference that observing corporate formalities with respect to HSMG "would sanction a fraud" giving rise to an alter ego claim.[63]

Finally, Smith also improperly asks this court to consider evidence attached to his Motion purporting to reflect HSMG's indebtedness to him and to argue Landes and Compagnie undertook certain corporate formalities.[64] However, as Smith's own Motion acknowledges, this court "may only consider the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint and matters about which the Court may take judicial notice."[65] In Smith's Motion, he neither asserts that his exhibits are incorporated by reference in Millrock's Complaint nor that this court may take judicial notice of particular facts contained

---

[59] *Id.* ¶¶ 38, 59, 61–65, 70, 74–77, 126.

[60] *Id.* ¶ 76.

[61] *Complaint* ¶¶ 122–126.

[62] *Id.* ¶¶ 127, 129.

[63] *Jones*, 284 P.3d at 635.

[64] *Motion to Dismiss* at 2–3, 7.

[65] *Id.* at 3.

therein. However, even if the court were to consider them, the fact that 1) HSMG affiliates borrowed money from Smith and 2) that Landes and Compagnie held Board of Directors Meetings in 2023 and have bylaws do not undermine this court's inferences drawn from Millrock's Complaint that it plausibly stated claims for Voidable Transfer and Alter Ego against Smith.

## CONCLUSION

For the foregoing reasons, Defendant Justin Smith's Motion to Dismiss is DENIED.[66]

SO ORDERED this 25th day of November 2024.

BY THE COURT:

ROBERT J. SHELBY
Chief United States District Judge

---

[66] Dkt. 75.